Constance Van Kley
Rylee Sommers-Flanagan
Niki Zupanic
  Upper Seven Law
  P.O. Box 31
  Helena, MT 59624
  (406) 306-0330
  constance@uppersevenlaw.com
  rylee@uppersevenlaw.com
  niki@uppersevenlaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA; ADRIA JAWORT; RACHEL CORCORAN; MONTANA BOOK COMPANY; IMAGINE BREWING COMPANY, LLC d/b/a IMAGINE NATION BREWING COMPANY; BUMBLEBEE AERIAL FITNESS; THE WESTERN MONTANA COMMUNITY CENTER; THE GREAT FALLS LGBTQ+ CENTER; and THE MYRNA LOY, | Cause No. <u>CV-23-50-BU-BMM</u> |
| *Plaintiffs*, | **Complaint** |
| vs. | |
| AUSTIN KNUDSEN; ELSIE ARNTZEN; and J.P. GALLAGHER, | |
| *Defendants*. | |

## INTRODUCTION

1.     During the 2023 Legislative Session, the Montana Legislature passed the nation's first ban on "drag story hours"—a breathtakingly ambiguous and overbroad bill, motivated by anti-LGBTQ+ animus.

2.     House Bill 359 ("HB 359") prohibits drag performers from leading story hours in schools and libraries, which is an unconstitutional content- and viewpoint-based restriction on free speech.  Ex. 1, HB 359, Mont. Leg., 68th Sess. (2023).  But that's not all: the bill bans reading to a child in a library in a superhero costume, conducting classroom activities dressed as Ms. Frizzle, inviting a Disney princess impersonator into the classroom, and staging a production of Shakespeare's *As You Like It*.  These restrictions apply regardless of a person's gender identity and sex.  *See* Tori Otten, The New Republic, *Montana's New Anti-Drag Law Is So Vaguely Worded It Could Target Dolly Parton* (May 24, 2023).[1]

3.     Additionally, HB 359 limits First Amendment activities of artists, businesses, and entities that receive state funds.  Displaying or

---

[1] *Available at* https://newrepublic.com/post/172959/montana-anti-drag-law-vaguely-worded-target-dolly-parton

disseminating obscene materials and performances has long been illegal in Montana.  Mont. Code Ann. § 45-8-201.  HB 359 creates new, confusing restrictions on "sexually oriented performances"—with a definition that, *inter alia*: allows the display of human cleavage but not prosthetic cleavage; restricts "stripping," regardless of whether nudity results; and may—this is unclear—prevent allowing minors to view "any <u>simulation</u> of sexual activity, . . . salacious dancing, [or] any lewd or lascivious <u>depiction</u> or <u>description</u> of human genitals."  Unlike the preexisting obscenity statute, HB 359 does not incorporate the *Miller* test—the classic definition of obscenity—which safeguards artistic expression, political speech, and science.  Worse still, an entity that receives *any* state funds—e.g., any art museum or independent theater—cannot display a live or prerecorded performance with essentially any sexual content, regardless of artistic merit and even if the audience is limited to adults.

4.    HB 359's penalty provisions are as confusing as they are draconian.  Everyone involved in putting on a "drag" (read: costumed) story hour or so-called "sexually oriented performance" can be sued within <u>ten years</u> of the event by a minor who attends the performance— even if the minor and their guardian consented at the time—with

statutory damages and attorney's fees assured to the plaintiff.  If the person who violates HB 359 is a library, school, teacher, school or library administrator, "entity that receives <u>any</u> form of funding from the state," or employee of such an entity, they <u>shall</u> be fined $5,000.  Moreover, teachers and other school personnel will be suspended for a year; upon a second offense, they will lose their certificates.  And if the violator is a business that serves alcohol, it will be fined between $1,000 and $10,000 per violation and ultimately lose its business license.

5.    HB 359 is a Frankenstein's monster that manages to pull together the worst of prior versions of the bill and incorporate all of the constitutional problems in drag bans recently struck down elsewhere. HB 359 is calculated to target the LGBTQ+ community, but the bill overshoots this sinister mark.  HB 359 threatens teachers, artists, small businesses, and cultural and scientific institutions with criminal and professional sanctions.

## JURISDICTION AND VENUE

6.    Plaintiffs bring this action under 42 U.S.C. § 1983.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise

under the Constitution and laws of the United States and involve the assertion of a deprivation, under color of state law, of a right under the Constitution of the United States.

7.   This Court has personal jurisdiction over Defendant Austin Knudsen.  Defendant Knudsen resides in and maintains his office in Montana.  He is sued in his official capacity.

8.   This Court has personal jurisdiction over Defendant Elsie Arntzen.  Defendant Arntzen resides in and maintains her office in Montana.  She is sued in her official capacity.

9.   This Court has personal jurisdiction over Defendant J.P. Gallagher.  Defendant Gallagher resides in and maintains his office in Montana.  He is sued in his individual and official capacity.

10.   Venue is proper in the Butte Division of the District of Montana because Butte, Montana, is home to Defendant Gallagher and the Office of the Chief Executive of the City-County of Butte-Silver Bow. 28 U.S.C. § 1391; D. Mont. L.R. 3.2(b).

11.   Venue is also proper in the Butte Division because a substantial part of the events giving rise to these claims occurred in Butte, Montana.

## PARTIES

### A. Individual Plaintiffs

12.     Adria Jawort is a resident of Billings, Montana.  Jawort is a transgender woman, a member of the Northern Cheyenne Tribe, and a published author.   She regularly speaks to libraries and other organizations across the State of Montana about Two-Spirit and transgender issues.

13.     Rachel Corcoran is a resident of Billings, Montana.  Corcoran is a teacher in Billings Public Schools.  While teaching, she has dressed up as fictional and historic male and female characters to connect with students, enhance learning, and build community.  For example, she has dressed as a crazy cat lady, the rapper Eazy-E, Tina Turner, Waldo (of *Where's Waldo?* fame), Lilo (from *Lilo & Stitch*), and Princess Bubblegum (from *Adventure Time*).  While in gendered costumes, she reads to students and engages in learning activities at school.  By the terms of HB 359, she is a "drag queen" or "drag king" participating in "drag story hour" at such times.  Thus, she faces criminal penalties, lawsuits, and revocation of her teaching certificate.

**B. Business and Nonprofit Plaintiffs**

14.     The Imperial Sovereign Court of the State of Montana ("the Imperial Court") is a Montana-based nonprofit membership organization founded in 1993 that works to educate and advocate for LGBTQ+ individuals and allies through the production of community-based drag performances.  The Imperial Court's drag performances explore multiple gender expressions in an entertaining and educational atmosphere and aim to create a safe and welcoming environment.  The Imperial Court also provides an LGBTQ+ scholarship and holds events to raise money for other Montana charities.  Since the Legislature passed HB 359, the Imperial Court has had multiple performances cancelled or modified by partner organizations, and it anticipates that HB 359 will have a profound debilitating effect on its ability to pursue its mission.

15.     Montana Book Company is an independent LGBTQ+ owned bookstore in Helena, Montana.   Founded in 1978, Montana Book Company is a book retailer and event space that hosts readings and performances.  In aiming to create an open and inclusive community space for marginalized populations in Montana, Montana Book Company has hosted and plans to continue to host author readings and age-

appropriate drag events open to the public.  Montana Book Company has received state funds and leases space from an entity that has received state funds.

16.   Imagine Brewing Company, LLC, d/b/a Imagine Nation Brewing Company ("Imagine Nation"), is a brewery and community center located in Missoula, Montana.  Imagine Nation has hosted and plans to again host all-ages drag shows and drag story hours, during which it sells alcoholic beverages.  Imagine Nation has not received state funds but intends to apply for such funds when available.   Imagine Nation has entered into a lease-to-own agreement with the building's owners, the former proprietors of the business, who received state funds in connection with the business.  Imagine Nation has a lending library on-site.

17.   BumbleBee Aerial Fitness ("BumbleBee") is a fitness studio located in Helena, Montana.   BumbleBee teaches aerial arts and choreography to students ages 14 and older, and pole fitness to students ages 18 and up.  BumbleBee's instructors and students perform before live audiences.   Bumblebee has had events canceled due to concerns about HB 359.

18.    Founded in 1999, The Western Montana Community Center ("the Center") is Western Montana's LGBTQ+ community center, located in Missoula, Montana.  The Center offers community events, health and public safety support, and space for LGBTQ+ individuals, groups, and communities to meet and provide programming.  The Center recently produced Missoula Pride, an annual event that celebrates the LGBTQ+ community through storytelling, dancing, a parade, and drag performances.

19.    The Great Falls LGBTQ+ Center aims to enhance and sustain the health and well-being of the LGBTQ+ community through activities, programs, and services.  It organizes events for all audiences featuring drag performances, including Pride.

20.    The Myrna Loy is an independent nonprofit arts and culture center established in 1976.  The Myrna Loy operates a movie theater and live performance venue in Helena, Montana, provides arts education experiences to thousands of students annually, and awards grants to Montana artists.  The Myrna Loy leases a former jail building from Lewis and Clark County, having transformed it into a performance space and movie theater more than 30 years ago.  The Myrna Loy often presents

films and live performances with artistic and educational merit that it reasonably believes may violate HB 359.

## C. Defendants

21.   J.P. Gallagher is the Chief Executive of the City-County of Butte-Silver Bow, Montana.   Gallagher decided to cancel Plaintiff Jawort's lecture at the Butte-Silver Bow Library.

22.   Austin Knudsen is the Attorney General for the State of Montana.   Knudsen oversees the enforcement of the State's criminal laws.   HB 359 amended Title 20 of the Montana Code to prohibit "engag[ing] in . . . learning activities with minor children present" at libraries and schools when a performer "adopts a flamboyant or parodic [male or female] persona with glamorous or exaggerated costumes and makeup." Violations of Title 20 are prosecutable as misdemeanor criminal offenses.  Mont. Code Ann. § 20-1-207.  HB 359 also amended Title 45 of the Montana Code to prohibit so-called "sexually oriented businesses" from allowing minors to "enter the premises of the business during a sexually oriented performance."   Violations of Title 45 are criminal offenses, and violations of the provision created by HB 359 are punishable by fines ranging from $1,000 to $10,000.

*Complaint*                                                                    10

23.    Defendant Elsie Arntzen is the Montana Superintendent of Public Instruction.  Arntzen is responsible for the general supervision of Montana public schools and districts.  She is responsible for "issu[ing], renew[ing], or deny[ing] teacher certification and emergency authorizations of employment."  Mont. Code Ann. § 20-3-106(2).  HB 359 requires suspension and/or revocation of teacher's certificates if the teacher, or an invited guest, "reads children's books and engages in other learning activities with minor children present" while "adopt[ing] a flamboyant or parodic [male or female] persona with glamorous or exaggerated costumes and makeup."

## LEGAL BACKGROUND

### A. Legislative History and Intent

#### i.   Legislative History

24.    Representative Braxton Mitchell introduced HB 359 on January 31, 2023, as a ban on drag performances in schools, libraries, and businesses with minors present.  At first, "drag performance" was defined as "a performance in which a performer exhibits a gender identity that is different than the performer's gender assigned at birth using

clothing, makeup, or other physical markers and sings, lip syncs, dances, or otherwise performs for entertainment to appeal to a prurient interest."

25.   The bill was amended repeatedly—and roved between overt anti-LGBTQ+ discrimination and a coherent, though unnecessary, attempt to prevent sexual nudity in public spaces where minors are present.

26.   After several substantially different amendments had been circulated and debated at length, a fourth version made its way to a free conference committee on April 26, 2023.   Free conference committees reconcile differing versions of bills passed by the House and Senate. Their format does not allow for the same robust debate and public comment as a committee hearing.

27.   During the free conference committee, bill sponsor Mitchell introduced the fifth and final version of the bill.   In its final form, HB 359 bans "drag story hours" in schools and libraries and prohibits businesses and state-funded entities from allowing minors to see so-called "sexually oriented performances."   It also created a private right of action to enforce any violation and became effective immediately.

28.    Six legislators comprised the free conference committee that passed the final version of HB 359.  Senator Andrea Olsen expressed concern that HB 359's definitions of "drag queen," "drag king," and "drag story hour" would apply to Mrs. Doubtfire, Dolly Parton, Shakespeare in the Parks, Hollywood awards shows, and nearly any theater class. Mitchell disagreed, without further explanation.

29.    Public commentary was limited to a total of ten minutes. Commenters described additional absurd implications of the newly amended bill, which could reach: a female performer dressed as a male clown;[2] transgender library employees;[3] a recent performance of *Twelfth Night* at Carroll College;[4] Disney princesses;[5] and students costumed as past presidents.[6]

---

[2] Mont. Leg., Free Conference Comm. Hrg. at 12:12:30 (Apr. 26, 2023), *available at* https://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20230426/-1/49764#handoutFile_. (SK Rossi, Human Rights Campaign).

[3] *Id.* at 12:14:15 (Sam Forstag, Montana Library Association).

[4] *Id.* at 12:14:30.

[5] *Id.* at 12:15:45 (Shawn Reagor, Montana Human Rights Network).

[6] *Id.* at 12:16:15.

30.   Olsen moved to amend Mitchell's version to remove all reference to drag.   The motion did not pass, and the free conference committee passed Mitchell's version of the bill by a vote of 4 to 2.

### ii.   Legislative Intent & Animus

31.   The legislative history and debate surrounding HB 359 evidences that anti-LGBTQ+ animus motivated proponents and propelled this bill to its final form.   While proponents of HB 359 purported to support the bill's unconstitutional limitations on speech to "protect" children, they instead targeted protected forms of expression that made them uncomfortable.

32.   Existing Montana law already protects youth from obscene materials to the full extent allowable under the Constitution.   Mont. Code Ann. § 45-8-201; *see* Mont. Leg., S. Judiciary Comm. Hrg. at 8:55:17 (Apr. 4, 2023) ("We already prohibit children from . . . viewing obscene material, viewing pornography, going to strip clubs . . . This is not any type of First Amendment violation, and it's time we add drag shows to that list.") (Rep. Mitchell, introductory remarks).[7]

---

[7] *Available at* http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/47987?agendaId=269135

*Complaint*                                                                              14

33.   Adding drag shows to the list is unnecessary because "obscene" drag shows are already on the list.   Montana law imposes criminal penalties on anyone who "performs an obscene act or otherwise presents an obscene exhibition of the person's body to anyone under 18 years of age"—whether in drag or not.  Mont. Code Ann. § 45-8-201(1)(d).

34.   Thus, there are only two options: either HB 359 is superfluous, or it redefines "obscene" beyond constitutional limits to include drag performances, drag story hours, and a spiraling list of nebulously defined "sexually oriented performances."

35.   Although a prior version of the bill used "obscene" to define the proscribed conduct, the final version removed "obscene" as a modifier. Proponents intended the bill to reach beyond the ambit of Montana law that defines "obscenity" in line with "contemporary community standards."  Mont. Code Ann. § 45-8-201(2)(b)(i).  The effect was to collapse the distinction between unprotected obscene speech and protected artistic and personal expression.

36.   Sponsors and proponents sought to proscribe drag shows and stifle the expression of individuals who do not conform to conventional gender presentations.  Drag is not definitionally obscene; it is a form of

expression that exaggerates, satirizes, and critiques gender. A drag performance may be obscene, just as dance performances, films, and still images may be obscene. But nothing about HB 359's "drag queen"—"a male or female performer who adopts a flamboyant or parodic feminine persona with glamorous or exaggerated costumes and makeup"—is inherently obscene.

37. HB 359 adds nothing to existing protections for children in Montana. It targets personal, artistic, and political expression and speech.

38. The Legislature's animus was overt.

39. Senator Chris Friedel—who co-sponsored the bill and participated in the free conference committee not as a member but through public comment—testified that he introduced amendments based on his belief that "we need to keep things like sexual orientation out of schools and out of libraries."[8]

---

[8] Mont. Leg., Free Conference Comm. Hrg. at 12:11:00 (Apr. 26, 2023), *available at* https://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20230426/-1/49764#handoutFile_.

40.     During public comment on HB 359, Mitchell attacked bill opponents personally.  He said, "There was mention about the amount of testimony against this bill today, but I'm sure if we got every person in this state who is working today and actually has a job unlike most of these folks here it seems like I'm sure we'd see a pretty different ratio."[9]

41.     In closing, Mitchell highlighted his own animus against LGBTQ+ individuals further: "Due to the mature themes surrounding drag shows and the exposure to inappropriate activities, children may adopt and accept certain stereotypes or attitudes that could lead to social, psychological, linguistic difficulties.  Children may also create an inadequate understanding of gender roles and experiences, which is damaging to their long-term social and emotional development."[10]

42.     After the legislative session, another co-sponsor, Senator Theresa Manzella, posted a meme to Instagram:

[9] Mont. Leg., S. Judiciary Comm. Hrg. at 11:10:30 (Apr. 4, 2023), *available at* http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/47987?agendaId=269135
[10] *Id.* at 11:10:05.

*Complaint*                                                                                    17



## B. HB 359's Impact

43.    Although they were motivated exclusively by anti-LGBTQ+ animus, HB 359's supporters ultimately took a blunt instrument to Montanans' First Amendment rights, clumsily attacking not only "drag story hours" but broad categories of protected speech and expressive activity.  As passed, HB 359 includes two categories of restrictions.  First, it bans "drag story hours" in schools and libraries.  Second, it prohibits or restricts "sexually oriented performances" in various places.

### i.   Drag Story Hours

44.    HB 359 bans "drag story hours" in schools and libraries that receive any state funds.  Neither "school" nor "library" is defined in the bill, and they do not appear to be limited to government entities.

45.    "Drag story hour" is defined as "an event hosted by a drag queen or drag king who reads children's books and engages in other learning activities with minor children present."  HB 359, § 1(3).

46.    The terms "drag king" and "drag queen" are defined as "a male or female performer who adopts a flamboyant or parodic [male or female] persona with glamorous or exaggerated costumes and makeup."  HB 359, § 1(1), (2).  A person need not dress in a manner incongruous with their biological sex or gender identity to be a "drag king" or "drag queen."

47.    A person who violates the "drag story hours" restriction faces criminal penalties.  Upon conviction, "[a] library, a school, or library or school personnel, [or] a public employee" "shall be fined $5,000."  HB 359, § 3(4).  If the person is a schoolteacher, administrator, or specialist, "proceedings must be initiated to suspend the . . . certificate of the offender under [Montana Code Annotated §] 20-4-110."  *Id.*  Upon a second or subsequent conviction, "proceedings <u>must</u> be initiated to

*Complaint*                                                                          19

permanently revoke the teacher, administrator, or specialist certificate of the offender." *Id.* (emphasis added).

48.    Any person involved in a drag story hour—"a person who knowingly promotes, conducts, or participates as a performer"—is subject to civil liability.  HB 359, § 4(1).  Any minor who attends a drag story hour—even with a guardian's consent—may sue within ten years. HB 359, § 4(3).  Plaintiffs are guaranteed statutory damages of $5,000 and attorney's fees and costs.  Plaintiffs are also entitled to "actual damages, including damages for psychological, emotional, economic, and physical harm."  HB 359, § 4(2).  The citizen-suit provision is not limited to drag story hours occurring after HB 359's effective date.

### ii.    Sexually Oriented Performances

49.    In addition to the drag story hour ban, HB 359 also prohibits "sexually oriented performances" "on public property in any location where the performance is in the presence of an individual under the age of 18" and "in a location owned by an entity that receives any form of funding from the state."  HB 359, § 3(3).  It prevents "sexually oriented businesses" from hosting "sexually oriented performances" when a minor is on the premises.  HB 359, § 2.  HB 359's definitions of "sexually

oriented," "sexually oriented performances," and "sexually oriented businesses" go far beyond obscenity—unsurprisingly, as it already is illegal to display or disseminate obscenity to minors.  *See* Mont. Code Ann. § 45-8-201.

50.   "Sexually oriented performance" is defined as "a performance that, regardless of whether performed for consideration, is intended to appeal to a prurient interest in sex and features:"

> (a) the purposeful exposure, whether complete or partial, of:
>    (i)    a human genital, the pubic region, the human buttocks, or a female breast, if the breast is exposed below a point immediately above the top of the areola; or
>    (ii)   prosthetic genitalia, breasts, or buttocks;
> (b) stripping; or
> (c) sexual conduct.

HB 359, § 1(10).  The definition is not limited to live events.

51.   "Stripping" is not limited to performances involving nudity; it is defined as the "removal or simulated removal of clothing in a sexual manner for" entertainment.  HB 359, § 1(11).

52.   "Sexual conduct" is not defined within the bill, and no cross-reference is given within the definition of "sexually oriented performance."  But another provision within the bill cross-references Montana Code Annotated § 45-5-625 to define the term "sexual conduct."

*Complaint*                                                                                          21

HB 359, § 1(8).   Thus, it is unclear whether the meaning of "sexual conduct" within the context of "sexually oriented performances" is limited to the definition set forth in § 45-5-625.

53.   "Sexually oriented" is defined as "any simulation of sexual activity, stripping, salacious dancing, any lewd or lascivious depiction or description of human genitals or of sexual conduct as defined in [Montana Code Annotated §] 45-5-625." HB 359, § 1(8).

54.   "Sexually oriented performances" are prohibited in schools and libraries that receive any state funding, HB 359, § 3(1), (2); "on public property in any location where the performance is in the presence of an individual under the age of 18,"  HB 359, § 3(3)(a); and "in a location owned by an entity that receives any form of funding from the state," even if minors are not present, HB 359, § 3(3)(b).

55.   "Sexually oriented performances" are restricted in so-called (and circuitously defined) "sexually oriented businesses."  A "[s]exually oriented business" is defined as "a nightclub, bar, restaurant, or similar commercial enterprise that:"

    (a) provides for an audience of two or more individuals:
        (i)    live nude entertainment or live nude performances; or
        (ii)   a sexually oriented performance; and

    (b) authorizes   on-premises   consumption   of   alcoholic
       beverages.

HB 359, § 1(9).

56.   Violators of the rules governing "sexually oriented performances" face various, overlapping penalties.  Business owners, operators, managers, and employees are subject to mandatory criminal fines ranging from $1,000 to $10,000 and the loss of the business's license.  Upon conviction, "[a] library, a school, or library or school personnel, a public employee, [an entity that receives state funds], or an employee of the entity" "shall be fined $5,000."  HB 359, § 3(4).

57.   The same civil liability described in Paragraph 51 applies to "a person who knowingly promotes, conducts, or participates as a performer" in a "sexually oriented performance."  HB 359, § 4(1).

58.   Montana's existing statutory restriction on obscenity, Mont. Code Ann. § 45-8-201, incorporates the *Miller* test.  Under *Miller v. California*, "[s]tate statutes designed to regulate obscene materials must be carefully limited."  413 U.S. 15, 23–24 (1973).  Laws proscribing obscenity "must be specifically defined," and "limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole,

*Complaint*                                                                         23

do not have serious literary, artistic, political, or scientific value." *Id.* at 24. HB 359 is not "specifically defined"; it is not limited to "patently offensive" performances; and it has no carveout for works with "serious literary, artistic, political, or scientific value."

## FACTUAL ALLEGATIONS

### A. Cancellation of Adria Jawort's Library Lecture

59. Plaintiff Adria Jawort regularly speaks to organizations and institutions, including libraries, about LGBTQ+ and Indigenous issues. Jawort's talks are informative and audience-appropriate.

60. Jawort was scheduled to give such a talk at the Butte-Silver Bow Public Library on June 2, 2023, as part of a "First Friday" lecture series. The talk Jawort planned to give is one that she has given at other organizations and institutions, including libraries, in the past. It is designed for all ages.

61. The day before the lecture, a librarian notified Jawort that Defendant Gallagher had canceled the event because "it is too much of a legal risk to have a transgendered person in the library."

62. A group, "White Lives Matter," claimed responsibility for the cancellation on social media, posting to Telegram:

Victory again!  Thanks to our campaign of complaints to the city, a disgusting 43 YEAR OLD MAN who wears dresses . . . was barred from reading at the Butte public library today! Just look at that pic [of Adria dressed for Halloween], proof that all of our enemies are mentally ill and pedophiles.  Why else have so much grief on a banner saying 'pedophiles not welcome' unless they take offense because they are pedophiles?  No groomers allowed, NOT IN OUR TOWN [crying with laughter emoji] [winking emoji]

63.    After cancelling Jawort's lecture, the City and County of Butte-Silver Bow posted the following message to its Facebook page:

PSA

In accordance with Governor Gianforte signing HB359 into law, our county cannot allow an event where a drag king or queen reads children's books and engages in other learning activities with minor children present.  Due to this law, we have had to cancel the speaker at the Butte-Silver Bow Library that was scheduled for Friday.

64.    In later communications with Jawort, Defendant Gallagher reiterated that he canceled the lecture based on his belief that the lecture would violate HB 359.

65.    Jawort is a transgender woman.  She does not regularly perform as a drag queen or a drag king (though she has dressed in drag occasionally).  When she gives talks to libraries and other institutions about LGBTQ+ and Two-Spirit history in Montana, she appears as

herself—generally wearing dark or purple lipstick, dark eyeliner, and black dresses.

66.    Had she given the scheduled lecture on June 2, 2023, Jawort would have discussed timely, politically significant issues—issues that are particularly relevant on the heels of a legislative session responsible for a number of laws targeting the LGBTQ+ community, including HB 359.

67.    Jawort's lecture was canceled because she is transgender, because she wears makeup, and/or because she intended to speak about LGBTQ+ issues.  No matter what combination of potential factors led to the cancellation, the cancellation violated her constitutional rights to free speech and equal protection.

68.    The cancellation caused Jawort emotional and reputational damage.  By suggesting that she poses a threat to minors and cancelling her publicized lecture, Defendant Gallagher harmed Jawort's reputation as a speaker and writer on gender identity issues.

69.    Jawort has experienced stress and sleeplessness as a result of the cancellation.  She has been targeted on social media, leading her to reasonably fear for her safety.

## B. Chilling Effect

70.   Jawort may be the first to have a planned event publicly cancelled as a result of HB 359, but she will not be the last.  No one knows what HB 359 actually prohibits.

71.   Already, HB 359 has restricted the Imperial Court's usual activities.  The Imperial Court performs drag shows in a variety of settings for a variety of audiences, tailoring its all-audience performances to ensure they are age-appropriate.  Since HB 359's passage, the Imperial Court has suffered actual and ongoing harm: at least one venue has cancelled a performance out of fear of liability, and other venues and organizations have terminated ongoing relationships or modified scheduled events.  Fearing criminal and civil sanctions, drag performers have dropped out of scheduled performances.  Moreover, the Imperial Court has been unable to ascertain whether offering future performances in various venues will violate HB 359.

72.   HB 359 has also restricted BumbleBee's activities, even though BumbleBee does not host drag story hours.  BumbleBee's instructors and students were denied an opportunity to perform at a local brewery, where they had previously performed, due to concerns about

HB 359.  BumbleBee's clients have expressed concern about possible arrest and criminal liability for public performances under HB 359, even though the performances are permissible under *Miller*.

73.   Related to Pride events across Montana in 2023, the Imperial Court, the Center, and the Great Falls LGBTQ+ Center have fielded innumerable questions from members about what HB 359 does and does not allow.  The organizations have been unable to answer these questions despite carefully analyzing HB 359.   Members cannot reasonably determine how to comply with the law because its language is ambiguous.

74.   Montana Book Company and Imagine Nation have hosted and plan to continue to host all-audience book readings and events featuring drag performers.  Neither organization has been unable to determine whether its events will subject it to criminal penalties.

75.   The Myrna Loy receives funding from ticket sales, memberships, and government funding, including state funds.  Because HB 359 is vague and ambiguous, The Myrna Loy has been unable to determine whether it will be subject to criminal penalties if it continues to show acclaimed films with artistic merit to age-appropriate audiences using Motion Picture Association ("MPA") rating guidelines.

76.   HB 359 has chilled the Imperial Court, BumbleBee, the Center, the Great Falls LGBTQ+ Center, Montana Book Company, Imagine Nation, and The Myrna Loy from engaging in protected speech.

77.   The confusion caused by HB 359 is not limited to organizations and their members.  Based on the overbroad prohibitions on "drag queens," "drag kings," and "drag story hours," Montanans will face criminal liability for protected speech.  HB 359's definitions reach any activity involving reading children's books and engaging in learning activities with minors when the reader appears in any gendered costume. HB 359, § 1(1), (2), (3).  Such activities are prohibited in all schools and libraries that receive state funding.

78.   Plaintiffs Jawort, Corcoran, and the Imperial Court face criminal, civil, and occupational penalties for allowing or participating in costumed learning activities.

79.   HB 359 restricts the exposure of transgender men's chests. Another bill passed by the 2023 Montana Legislature, Senate Bill 458, defines all humans as "female" or "male" based on their chromosomes and reproductive capacity.  Sen. B. 458, § 1, Mont. Leg., 68th Sess. (2023). HB 359 bans many performances that feature "the purposeful exposure,

whether complete or partial" of "a female breast, if the breast is exposed below a point immediately above the top of the areola."   HB 359, § 1(10)(a)(i).   Together, these bills ostensibly prohibit exposure of a transgender man's chest in businesses that serve alcohol when minors are present, HB 359, §§ 1(9), 2; "on public property in any location where the performance is in the presence of an individual under the age of 18"—e.g., sidewalks and streets, HB 359, § 3(a); and "in a location owned by an entity that receives any form of funding from the state," even if the audience is restricted to adults, HB 359, § 3(b).

80.    HB 359 likewise restricts exposure of prosthetic cleavage and expressly differentiates "female breast[s]" from "prosthetic . . . breasts." HB 359, § 1(10)(a)(i), (ii).   While performances that expose a female breast are restricted only if the breast "is exposed below a point immediately above the top of the areola," a performance that exposes any part of a prosthetic breast is barred.  *Id.*  Human cleavage is allowed, whereas prosthetic cleavage is not.  Thus, the bill directly targets women or men with prosthetic breasts based on their expressive activity.

81.    HB 359 restricts performances that involve "stripping"—defined as removing or pretending to remove clothing "in a sexual

manner"—even if nudity does not result. "Sexual manner" is not defined. HB 359 thus encompasses many non-obscene theatrical, film, and drag performances—even a performance that includes costume changes. HB 359 prohibits these performances in businesses that serve alcohol when minors are present, HB 359, §§ 1(9), 2; "on public property in any location where the performance is in the presence of an individual under the age of 18," HB 359, § 3(a); and "in a location owned by an entity that receives any form of funding from the state," even if the audience is restricted to adults, HB 359, § 3(b).

82.   HB 359 defines "sexually oriented" to include protected First Amendment activities, including "any simulation of sexual activity," "salacious dancing," and "any lewd or lascivious depiction or description of human genitals or sexual conduct." HB 359, § 1(8). Though the term "sexually oriented" is not used as a stand-alone term elsewhere, the terms "sexually oriented performance" and "sexually oriented business" are. Montana's Bill Drafting Manual provides that a word should not be defined if it is never used in the bill and that "[i]f a bill deletes all reference to a defined term, the definition of that term must also be

deleted." Mont. Bill Drafting Manual § 4-9(7), (8) (68th Leg., 2022).[11]  At

best, it is unclear and vague whether HB 359 prohibits any conduct or

performances that could be defined as "sexually oriented."

83.   As a result of this mountain of confusing and overbroad

definitions, Plaintiffs have well-founded fears of criminal and civil

liability.  Each organizes, hosts, or participates in costumed learning

activities or in events that could be "sexually oriented," or where

prosthetic cleavage may be exposed, or where "stripping" may occur.

84.   For example, BumbleBee publicly performs dances that may

be described as "salacious."  Montana Book Company sells and displays

books that include "lewd or lascivious depiction[s] or description[s] of

human genitals or sexual conduct."  The Myrna Loy shows a broad

spectrum of movies from around the world, including classic films and

first-run new releases, many of which include "sexually oriented

performances."

85.   In 2023, the Myrna Loy showed the new-release film *Asteroid*

*City*—a quirky, visually stunning film about children scientists forced to

---

[11] *Available at* https://leg.mt.gov/content/Publications/2022-bill-drafting-manual.pdf.

quarantine during a stargazer convention.  In this PG-13 film, the actress Scarlett Johansson disrobes and steps into a bathtub.  This scene meets HB 359's definition of "stripping."

86.    Even with parental consent, a child who views a PG-13 film that includes a "sexually oriented performance" may sue under HB 359's private right of action ten years later.  Equally illogically, a seventeen-year-old minor who legally attends an R-rated movie[12] containing a "sexually oriented performance" may sue the theater.

87.    Finally, HB 359 prohibits performances with artistic, scientific, political, and literary merit that feature complete or partial nudity or sexual content—even if the performances are not live and even if they are performed for an audience exclusively comprising adults—whenever the performance is "in a location owned by an entity that receives any form of funding from the state."

---

[12] The MPA restricts R-rated movies to seventeen-year-old individuals or younger individuals who are accompanied by a parent or adult guardian. HB 359 considers minors to be individuals under the age of eighteen.

## CLAIMS FOR RELIEF

### COUNT I:
### Violation of Free Speech, U.S. Const. amend. 1
### (as applied to Plaintiff Jawort)

### 42 U.S.C. § 1983

88.     Plaintiffs incorporate herein all the foregoing allegations as if set forth in full.

89.     The First Amendment protects against state action that "abridg[es] the freedom of speech."  U.S. Const. amend. I.

90.     Through her lecture at the Butte-Silver Bow Public Library, Jawort intended to engage in a constitutionally protected activity.

91.     In cancelling Jawort's speech, Defendant Gallagher intended to and in fact did suppress Jawort's protected speech, denying her the opportunity to speak and denying the audience the opportunity to listen.

92.     Defendant Gallagher's cancellation of Jawort's speech was motivated by the content of her protected speech, in violation of the First Amendment.

93.     Defendant Gallagher, acting under color of state law, deprived Jawort of her rights under the United States Constitution.

94.   HB 359 violates the First Amendment as applied to Jawort. Further implementation of HB 359 by Defendant Knudsen will result in further violation of Jawort's First Amendment rights.

## COUNT II:
## Violation of Equal Protection, U.S. Const. amend. XIV, § 2
## (as applied to Plaintiff Jawort)

### 42 U.S.C. § 1983

95.   Plaintiffs incorporate herein all the foregoing allegations as if set forth in full.

96.   The Fourteenth Amendment bars states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

97.   The Fourteenth Amendment protects against discrimination on the basis of sex. Sex-based discrimination is subject to intermediate scrutiny.

98.   The Fourteenth Amendment protects against discrimination arising from animus.

99.   When he cancelled Jawort's lecture, Defendant Gallagher violated her Equal Protection rights by discriminating against her on the basis of her gender identity.

100. HB 359 violates the Fourteenth Amendment as applied to Jawort. Further implementation of HB 359 by Defendant Knudsen will result in further violation of Jawort's Fourteenth Amendment rights.

### COUNT III:
### Violation of Free Speech, U.S. Const. amend. 1, as Incorporated Against the States, U.S. Const. amend. XIV
### (facial challenge to HB 359)

101. Plaintiffs incorporate herein all the foregoing allegations as if set forth in full.

102. Defendants Knudsen and Arntzen seek to expressly restrict and chill speech and expression protected by the First Amendment based on its content, its viewpoint, and the identity of the speaker.

103. HB 359's restrictions are content- and viewpoint-based. Thus, it is "presumptively unconstitutional" and subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

104. HB 359 does not satisfy strict scrutiny. HB 359 is not narrowly tailored to the Government's interest in protecting minors from obscenity. Preexisting Montana law fully restricts the display and dissemination of obscene materials to minors.

105. The Government has no compelling interest in protecting children from drag story hours and/or drag performances.

106.  Even if the Government did have a compelling interest in protecting children from drag story hours and/or drag performances, HB 359 is not narrowly tailored to that interest.  It bans innocent performances, whether they feature drag or not.  Further, it prohibits protected expressive activity that is presented to adult audiences.

107.  HB 359 is impermissibly vague.  A reasonable person cannot know what is and what is not restricted by the law.

108.  HB 359's unconstitutional applications are realistic, not fanciful, and their number is disproportionate to the bill's lawful sweep. *United States v. Hansen*, 599 U.S. __, 5 (2023).

109.  HB 359's overbreadth and vagueness chills Montanans' First Amendment rights.

## <u>COUNT IV:</u>
### <u>Violation of Due Process, U.S. Const. amend. V, as Incorporated<br>Against the States, U.S. Const. amend. XIV</u><br><u>(facial challenge to HB 359)</u>

110.  Plaintiffs incorporate herein all the foregoing allegations as if set forth in full.

111.  HB 359 imposes criminal penalties, but it does not define the criminal offenses "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not

*Complaint*                                                                                      37

encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

112. Plaintiffs cannot know how to avoid criminal liability for engaging in speech and expressive conduct. As a result of HB 359's vagueness, Plaintiffs have been forced to refrain from engaging in constitutionally protected activity.

113. HB 359 is void for vagueness.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a. Enter judgment for Plaintiffs and against Defendants;

b. Grant Plaintiffs a preliminary injunction to prevent all Defendants from enforcing HB 359;

c. Declare HB 359 facially unconstitutional;

d. Issue an award of actual and general damages in favor of Plaintiff Jawort and against Defendant Gallagher, in an amount to be determined at trial;

e. Issue an award of punitive damages in favor of Plaintiff Jawort and against Defendant Gallagher;

f.   Award Plaintiffs their costs, disbursements, and reasonable attorney's fees incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

g.   Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 6th day of July, 2023.

/s/ *Constance Van Kley*
Constance Van Kley
Rylee Sommers-Flanagan
Niki Zupanic
Upper Seven Law

*Attorneys for Plaintiffs*

*Complaint*                                                                                  39