Constance Van Kley
Rylee Sommers-Flanagan
Niki Zupanic
  Upper Seven Law
  P.O. Box 31
  Helena, MT 59624
  (406) 306-0330
  constance@uppersevenlaw.com
  rylee@uppersevenlaw.com
  niki@uppersevenlaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA; ADRIA JAWORT; RACHEL CORCORAN; MONTANA BOOK COMPANY; IMAGINE BREWING COMPANY, LLC d/b/a IMAGINE NATION BREWING COMPANY; BUMBLEBEE AERIAL FITNESS; THE WESTERN MONTANA COMMUNITY CENTER; MONTANA PRIDE; THE GREAT FALLS LGBTQ+ COMMUNITY CENTER; THE ROXY THEATER; and THE MYRNA LOY, | Cause No. CV-23-50-BU-BMM <br><br> **Brief in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction** <br><br> <u>**Emergency Relief Requested**</u> |
| *Plaintiffs*, | |
| vs. | |
| AUSTIN KNUDSEN; ELSIE ARNTZEN; J.P. GALLAGHER; and THE CITY OF HELENA, | |
| *Defendants*. | |

# Table of Contents

Table of Contents.......................................................................................ii

Table of Authorities............................................................................... iv

Exhibit List ............................................................................................. vi

INTRODUCTION ..................................................................................... 1

LEGAL BACKGROUND ......................................................................... 2

   I.  HB 359 ............................................................................................ 2

     A.  Drag Story Hours ..................................................................... 2

     B.  Sexually Oriented Performances............................................. 4

   II.   Preexisting Montana law governing obscenity and minors......... 7

FACTS........................................................................................................ 8

LEGAL STANDARD ............................................................................... 11

ARGUMENT............................................................................................ 12

   I.  Plaintiffs are likely to succeed on the merits of Counts III and IV because HB 359 violates the First Amendment, satisfying the first *Winter* requirement................................................................................ 12

     A.  HB 359 regulates protected speech............................................ 13

     B.  HB 359 is subject to strict scrutiny........................................... 18

     C.  HB 359 does not survive strict scrutiny..................................... 24

II.     Plaintiffs are likely to prevail on the merits of Count V because HB 359 is void for vagueness, again satisfying the first *Winter* prong. ................................................................................. 31

III.    Plaintiffs are suffering and will continue to suffer irreparable harm if HB 359 is not enjoined, satisfying the second *Winter* prong. 32

IV.    Defendants face no hardship, and the public interest favors Plaintiffs, satisfying the third and fourth *Winter* prongs. .................. 34

CONCLUSION ......................................................... 35

CERTIFICATE OF COMPLIANCE ........................................ 36

## Table of Authorities

### Cases

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ...... 11

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ..................................................... 1

*Boos v. Barry*, 485 U.S. 312 (1988) ......................................................... 19

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ......................................... 24

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) ........................ *passim*

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC.*,
  142 S. Ct. 1464 (2022) .................................................................. 18, 21

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) ............................................ 29

*Conally v. Gen. Const. Co.*, 269 U.S. 385 (1926) .................................... 30

*Erznoznik v. Jacksonville*, 422 U.S. 205 (1975) ..................................... 16

*F.C.C. v. Pacifica Found.*, 438 U.S. 726 (1978) ...................................... 20

*First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765 (1978) .................... 29

*Friends of George's, Inc. v. Tennessee*, No. 2:23-CV-2163-TLP-TMP,
  2023 WL 2755238 (W.D. Tenn. Mar. 31, 2023)....................... 12, 19, 34

*Friends of George's, Inc. v. Tennessee*, No. 2:23-CV-2163-TLP-TMP,
  2023 WL 3790583 (W.D. Tenn. June 2, 2023) .................................... 12

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ............................ 30, 31

*HM Fla.-ORL, LLC v. Griffin*, No. 6:23-CV-950-GAP-LHP, 2023 WL
  4157542 (M.D. Fla. June 23, 2023).............................................. 12, 34

*Jacobellis v. Ohio*, 378 U.S. 184 (1964) ................................................. 16

*Kois v. Wisconsin*, 408 U.S. 229 (1972) .................................................. 14

*Miller v. California*, 413 U.S. 15 (1973) ................................ 13, 14, 15, 25

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................ 33

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ................................. 19, 23

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ................................ passim

*Reno v. ACLU*, 521 U.S. 844 (1997).................................................... 24, 30

*Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020)........................ 32

*Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115 (1989)........ 24

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) ............................................................... 19

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir.
    2001).................................................................................. 11

*United States v. Playboy*, 529 U.S. 803 (2000) .................... 18, 19, 23, 25

*Virginia v. American Bookseller's Ass'n Inc.*, 484 U.S. 383 (1988)........ 33

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ............................... 21

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)....................... 11

## Statutes and Regulations

House Bill 359, 2023 Mont. Leg., 67th Sess.................................... *passim*

Mont. Code Ann. § 45-8-201....................................................... 7

## Other Sources

Wright & Miller, Fed. Practice & Proc. § 2951 ....................................... 11

## Exhibits

House Bill 359.................................................................................Ex. 1

Declaration of Adria Jawort...........................................................Ex. 2
  Email from S. Curtis to A. Jawort.............................................Ex. 2-A
  Butte-Silver Bow Facebook Message..........................................Ex. 2-B

Declaration of Annatheia Smith....................................................Ex. 3

Declaration of Sabrina Malecek,
   owner of BumbleBee Aerial Fitness .................................Ex. 4

Declaration of Mike Steinberg,
   Executive Director of The Roxy Theater ........................Ex. 5

Declaration of Krys Holmes,
   Executive Director of The Myrna Loy ...........................Ex. 6

Declaration of Chelsia Rice,
   Co-owner of the Montana Book Company  ......................Ex. 7

Declaration of Lauren Halverson,
   Representative for OUTLaws at the
   Alexander Blewett III School of Law ..............................Ex. 8

Declaration of Kevin Hamm  .........................................................Ex. 9
  Front Street Permit Application..................................................Ex. 9-A
  Last Chance Gulch Permit Application.......................................Ex. 9-B

Declaration of Rachel Corcoran, Billings Public Schoolteacher  .....Ex. 10

## INTRODUCTION

"Content-based prohibitions [on speech], enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people." *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004). Passed during the 2023 Montana legislative session, House Bill 359 ("HB 359") has more than the "potential" to suppress speech. It *is* suppressing protected speech. On July 13, 2023, Plaintiff Montana Pride was denied permits for its thirtieth annual Pride celebration, scheduled to begin July 30, 2023. In the absence of immediate judicial relief, thousands of Montanans will be unable to assemble peaceably to celebrate the diversity of human gender and sexuality.

HB 359—a breathtakingly ambiguous and overbroad bill motivated by anti-LGBTQ+ animus—is an unconstitutional content- and viewpoint-based restriction on free speech. The bill purports to restrict "drag story hours," and "sexually oriented performances." But neither term is carefully defined, and neither term is limited to speech that the government lawfully may circumscribe. Already, HB 359 has restricted lawful political and artistic speech. And it will continue to do so unless and until the Court acts to enjoin further implementation.

Plaintiffs request that the Court issue a temporary restraining order and preliminary injunction against Defendants Austin Knudsen and Elsie Arntzen (collectively, the "State") and the City of Helena. Plaintiffs seek relief by July 30 so that Montana Pride can go forward as planned.

## LEGAL BACKGROUND

### I.   HB 359

HB 359 restricts two broad categories of speech and expressive activity.  First, the bill bans "drag story hours" in schools and libraries. Second, it prohibits or restricts "sexually oriented performances" in various places.  Both categories sweep in far more speech than the quoted terms suggest.

### A.   Drag Story Hours

HB 359 bans "drag story hours" in schools and libraries that receive any state funds.  A "[d]rag story hour" is "an event hosted by a drag queen or drag king who reads children's books and engages in other learning activities with minor children present."  HB 359, § 1(3).  And, for their part, "drag king" and "drag queen" are defined as "a male or female performer who adopts a flamboyant or parodic [male or female]

persona with glamorous or exaggerated costumes and makeup." HB 359, § 1(1), (2). In other words, a "drag story hour" occurs whenever a person dresses in a gendered costume and has an educational interaction with children in a school or library that receives public funds—even if the school or library is not a public entity.

A person who "allow[s]" a "drag story hour" faces criminal penalties. HB 359, § 5(2) (codifying restrictions on "drag story hours" in Mont. Code Ann. title 20); Mont. Code Ann. § 20-1-207 (providing that violations of title 20 constitute misdemeanor criminal offenses). Upon conviction, "[a] library, a school, or library or school personnel, [or] a public employee" "shall be fined $5,000." HB 359, § 3(1), (2), (4). Further, teachers and other school personnel will see their certificates suspended (upon the first conviction) and permanently revoked (upon a second or subsequent conviction). HB 359, § 3(4).

Any person involved in a drag story hour is also subject to civil liability. HB 359, § 4(1). A minor who attends a drag story hour—even if the minor's guardian consents—may sue any "person who knowingly promotes, conducts, or participates as a performer in the performance" within ten years of the date of the drag story hour. HB 359, § 4(1), (3).

The plaintiff is guaranteed statutory damages in the amount of $5,000; attorney's fees and costs; and "actual damages, including damages for psychological, emotional, economic, and physical harm." HB 359, § 4(2).

## B.    Sexually Oriented Performances

HB 359 also prohibits "sexually oriented performances" "on public property in any location where the performance is in the presence of an individual under the age of 18" and "in a location owned by an entity that receives any form of funding from the state"—even if the audience consists only of adults. HB 359, § 3(3). A "sexually oriented performance" is "a performance that, regardless of whether performed for consideration, is intended to appeal to a prurient interest in sex and features:"

> (a) the purposeful exposure, whether complete or partial, of:
>
> > A. a human genital, the pubic region, the human buttocks, or a female breast, if the breast is exposed below a point immediately above the top of the areola; or
> >
> > B. prosthetic genitalia, breasts, or buttocks;
>
> (b) stripping; or
>
> (c) sexual conduct.

HB 359, § 1(10).

The definition of "sexually oriented performances" includes some anomalies. It is not limited to live events; there is no clear limitation on the meaning of "sexual conduct"; and "stripping" is defined as the "removal or simulated removal of clothing in a sexual manner for the entertainment of one or more individuals," regardless of whether nudity results. HB 359, § 1(11). What is more, HB 359 includes a definition of "sexually oriented" that is even broader than "sexually oriented performances"—extending to "salacious dancing" and "any lewd and lascivious depiction or description of human genitals or of sexual conduct." HB 359, § 1(8).[1]

"Sexually oriented performances" are prohibited outright in schools and libraries that receive any state funding, HB 359, § 3(1), (2); "on public property in any location where the performance is in the presence of an individual under the age of 18," HB 359, § 3(3)(a); and "in a location owned by an entity that receives any form of funding from the state," even if minors are not present, HB 359, § 3(3)(b).

---

[1] Confusingly, HB 359 defines "sexual conduct" by cross-reference in the definition for "sexually oriented" but not in the definition for "sexually oriented performance." HB 359, § 1(8), (10).

"Sexually oriented performances" are restricted in so-called and circuitously defined "sexually oriented businesses"—"nightclub[s], bar[s], restaurant[s], or similar commercial enterprise[s] that" (a) allow on-site alcohol consumption and (b) put on live nude shows or "sexually oriented performances" as defined by HB 359.  HB 359, § 1(9).

Violators of the rules governing "sexually oriented performances" face overlapping penalties.  "Sexually oriented businesses" and their agents and employees are subject to delicensure and mandatory criminal fines ranging from $1,000 to $10,000.  HB 359, § 2(2); *see also id.* § 5(1) (codifying restrictions within Mont. Code Ann. title 45, the criminal code).  Libraries, schools, entities that receives state funds, and their agents and employees "shall be fined $5,000" if they "allow" a sexually oriented performance on-premises.  HB 359, § 3(4).

Additionally, any person involved in a "sexually oriented performance"—"a person who knowingly promotes, conducts, or participates as a performer"—is subject to the same citizen suit provision governing "drag story hours."  HB 359, § 4(1).

## II.    Preexisting Montana law governing obscenity and minors

Montana law already protects youth from exposure to obscene material to the full extent allowable under the First Amendment. Montana's obscenity statute criminalizes, *inter alia*, purposely or knowingly providing obscene material, obscenely exposing one's body, and giving obscene performances to minors. Mont. Code Ann. § 45-8-201.

A person cannot be convicted under § 45-8-201 unless the alleged obscenity comports with constitutional standards. *See infra* pp. 13–18. The obscenity must:

- involve the perverted or patently offensive representation or depiction of "ultimate sexual acts," masturbation, excretion, or "lewd exhibition of the genitals";

- as a whole, and "applying contemporary community standards," "appeal[] to the prurient interest in sex";

- as a whole, be "patently offensive"; and

- as a whole, "lack[] serious literary, artistic, political, or scientific values."

Mont. Code Ann. § 45-8-201(2); *see also id.* § 45-8-201(3) (providing right to provide contrary evidence). A person convicted of the preexisting crime of obscenity faces a maximum penalty of $1,000. *Id.* § 45-8-201(4).

## FACTS

HB 359 went into effect on May 22, 2023. HB 359, § 7. Already, HB 359 has had widespread effects across Montana—event cancellations, chilled speech, and fear of criminal and civil liability. The harm is serious, concrete, and ongoing.

HB 359 mutated frequently during the legislative session—morphing from (1) a ban on "exhibit[ing] a gender identity that is different from a performer's gender assigned at birth" in businesses, schools, and libraries[2] to (2) a ban on "male or female impersonators" in businesses and any public space where minors may be present[3] to (3) a ban that incorporated Montana's existing law on obscenity[4] to (4) a relatively anodyne (if unnecessary) restriction on adult-oriented performances[5] to (5) the law now in effect. Not surprisingly, particularly

---

[2] *Available at* https://leg.mt.gov/bills/2023/HB0399//HB0359_1.pdf
[3] *Available at* https://leg.mt.gov/bills/2023/HB0399//HB0359_2.pdf
[4] *Available at* https://leg.mt.gov/bills/2023/HB0399//HB0359_3.pdf
[5] *Available at* https://leg.mt.gov/bills/2023/HB0399//HB0359_4.pdf

because of the bill's vague language and confusing penalty schemes, it took some time for HB 359's breadth to be realized.  There is no mistaking it now.

The first blow was struck on June 1, 2023, when Plaintiff Adria Jawort was disinvited from a scheduled appearance at the Butte Silver-Bow Public Library.  Ms. Jawort, a transgender and Northern Cheyenne woman, is a recognized expert on LGBTQ+ and Two-Spirit issues in Montana.  Defendant Gallagher canceled Ms. Jawort's event because "it is too much of a legal risk to have a trans-person in the library" based on his belief that the lecture would violate HB 359.  Ex. 2-A, Email from S. Curtis to A. Jawort (June 1, 2023), attached to Ex. 2, Decl. of Adria Jawort ("Jawort Decl.").  The City and County of Butte-Silver Bow later confirmed via Facebook post that HB 359 forced the cancellation: "[i]n accordance with Governor Gianforte signing HB359 into law, our county cannot allow an event where a drag king or queen reads children's books and engages in other learning activities with minor children present. Due to this law, we have had to cancel the speaker at the Butte-Silver Bow Library."  Ex. 2-B, Butte-Silver Bow Facebook Post, attached to Ex. 2, Jawort Decl.

The hits keep coming.  Plaintiffs the Imperial Sovereign Court of the State of Montana ("Imperial Court") and Aerial BumbleBee have seen events canceled and modified.  Ex. 3, Decl. of Annatheia Smith ¶¶ 18–26 ("Smith Decl."); Ex. 4, Decl. of Sabrina Malecek, owner of BumbleBee Aerial Fitness ¶¶ 21, 22 ("Malecek Decl.").   Other plaintiffs and declarants fear that future events are prohibited under the law—even those events with years of precedent behind them.  Ex. 5, Decl. of Mike Steinberg, Exec. Dir. of The Roxy Theater ¶¶ 13–43 ("Steinberg Decl."); Ex. 6, Decl. of Krys Holmes, Exec. Dir. of The Myrna Loy ¶¶ 7–18 ("Holmes Decl."); Ex. 7, Decl. of Chelsia Rice, co-owner of the Montana Book Company ¶¶ 8–12, 14 ("Rice Decl."); Ex. 8, Decl. of Lauren Halverson, member of OUTLaws at the Alexander Blewett III School of Law ¶¶ 8–18 ("Halverson Decl.").

And these fears are warranted.  Underlying the present request for emergency injunctive relief, the City of Helena is refusing to issue permits for Montana Pride events.  Ex. 9, Decl. of Kevin Hamm ¶ 14 ("Hamm Decl."). With Pride scheduled to begin on July 30, 2023, thousands of people face certain suppression of their First Amendment rights absent judicial relief.  Hamm Decl. ¶¶ 10–14.

Moreover, due to HB 359's extraordinary vagueness and breadth, Montanans are unable to determine whether they must stifle their speech to avoid severe state-sanctioned penalties.  Examples abound. Plaintiff Rachel Corcoran, a public school teacher, faces decertification and criminal and civil liability for wearing costumes to engage her students in school.  Ex. 10, Decl. of Rachel Corcoran ¶¶ 5–11 ("Corcoran Decl.").  Plaintiffs The Roxy Theater and The Myrna Loy appear to be prohibited from showing films to audiences consistent with industry standard Motion Picture Association ratings.  Steinberg Decl. ¶¶ 13–43; Holmes Decl. ¶¶ 7–18.  And businesses, such as Plaintiff Montana Book Company, face criminal and civil penalties and delicensure simply for holding events featuring drag.  Rice Decl. ¶¶ 8–12.

## LEGAL STANDARD

A preliminary injunction should issue when the movant establishes (1) that it will likely succeed on the merits, (2) that it will suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction will serve the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Courts in the Ninth Circuit apply a sliding scale approach to preliminary

relief. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The reviewing court must balance the elements "so that a stronger showing of one element may offset a weaker showing of another." *Id.*

A temporary restraining order operates to prevent irreparable injury "before the hearing for a preliminary injunction required by Rule 65(a) can be held." Wright & Miller, Fed. Practice & Proc. § 2951. Where "the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements." *Id.* The standard for a temporary restraining order is the same as for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

## ARGUMENT

## I. Plaintiffs are likely to succeed on the merits of Counts III and IV because HB 359 violates the First Amendment, satisfying the first *Winter* requirement.

HB 359 is no mere restriction on obscene speech. On its face, HB 359 is a content-based restriction on protected speech and expression.

HB 359 also discriminates on the basis of viewpoint: it defines the prohibited conduct based on the speaker's identity and the message conveyed. Alternatively, HB 359 was adopted because of its proponent legislators' animus toward the message that HB 359 restricts—specifically, drag. Regardless, the law is "presumptively unconstitutional" and subject to strict scrutiny. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

HB 359 cannot survive strict scrutiny. Thus, both district courts addressing challenges to statewide drag-ban bills have granted injunctions. *See Friends of George's, Inc. v. Tennessee*, No. 2:23-CV-2163-TLP-TMP, 2023 WL 3790583 (W.D. Tenn. June 2, 2023) (permanent injunction); *HM Fla.-ORL, LLC v. Griffin*, No. 6:23-CV-950-GAP-LHP, 2023 WL 4157542 (M.D. Fla. June 23, 2023) (preliminary injunction); *Friends of George's, Inc. v. Tennessee*, No. 2:23-CV-2163-TLP-TMP, 2023 WL 2755238 (W.D. Tenn. Mar. 31, 2023) (preliminary injunction).

### A. HB 359 regulates protected speech.

While obscenity is not constitutionally protected, HB 359 does not regulate only obscenity. As the bill's sponsor, Representative Braxton

Mitchell, said in his introduction of HB 359 to the Senate Judiciary Committee, "We already prohibit children from . . . viewing obscene material, viewing pornography, going to strip clubs. . . . This is not any type of First Amendment violation, and it's time we add drag shows to that list."[6]  The intent was never to restrict obscenity.

The boundaries of obscenity are firmly established and much narrower than the restrictions within HB 359.   Under *Miller v. California*, laws proscribing obscenity "must be specifically defined."  413 U.S. 15, 24 (1973).   HB 359 is not.   *See infra* pp. 31–32.   Moreover, restrictions on obscenity must meet a three-prong test.   Obscenity is only speech that (1) "taken as a whole, appeal[s] to the prurient interest in sex; (2) "portray[s] sexual conduct in a patently offensive way; and (3) "taken as a whole, do[es] not have serious literary, artistic, political, or scientific value."  *Id.*

---

[6] Mont. Leg., Sen. Jud, Comm. Hrg. at 8:55:17 (Feb. 2, 2023), *available at* http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/47759?agendaId=251847

HB 359 does not satisfy even one of the *Miller* requirements.  First, although HB 359 nods to the "prurient interest in sex" requirement, it fails to require that, "taken as a whole," the regulated conduct does in fact "appeal[] to the prurient interest," "applying contemporary community standards." *Id.* (quoting *Kois v. Wisconsin*, 408 U.S. 229, 230 (1972)).  This question must be decided by a jury, to ensure that "it will be judged by its impact on an average person, rather than a particularly susceptible or sensitive person." *Id.* at 33.  But no jury could determine that "contemporary community standards" allow HB 359's blanket proscription of drag and so-defined "sexually oriented performances." Gender-bending performances and flamboyant costumes pervade our culture, from Shakespeare to Bugs Bunny.  And one need travel no farther than the nearest public beach to see "any portion of the breast below the top of the areola" or "any portion of . . . the buttocks."  HB 359, § 1(4) (defining "nude").

Second, HB 359 extends far beyond the "patently offensive." Setting aside that HB 359 does not even give lip service to this requirement, "patently offensive" is synonymous with "hard core"

pornographic materials, *Miller*, 413 U.S. at 27, such as "[p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated," "masturbation," and "excretory functions" and "lewd exhibition of the genitals, *id.* at 25. "Drag story hours" are not of a kind with the examples given in *Miller*; nor is removing outer layers of clothing "in a sexual manner"; nor is the partial exposure of natural or prosthetic body parts.

Third, HB 359 includes no carveout for works and performances with "serious literary, artistic, political, or scientific value." *Id.* at 24. This is by design. In Representative Mitchell's words, "The reason we have to specifically . . . say that we're prohibiting story hours is because all they do is call it art. That's how they get around it."[7] And HB 359 does, in fact, appear to regulate artistic performances even outside of

---

[7] Mont. Leg., Free Conference Comm. Hrg. at 12:29:10 (Apr. 26, 2023), *available at* https://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20230426/-1/49764#handoutFile_.; *see also* Mont. Leg., Sen. Floor Sess. at 18:12:40, *available at* http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/46256?agendaId=273842 (April 17, 2023) (speaking against proposed amendment because it "allows all these under 'art,' and so it completely guts the bill") (Sen. Karl Glimm).

drag.  For example, many films shown by Plaintiffs The Roxy Theater and The Myrna Loy fall within the definition of "sexually oriented performances."  Steinberg Decl., ¶¶ 8–9, 15, 20, 28, 34, 36; Holmes Decl., ¶¶ 7–16.  But "material dealing with sex in a manner that advocates ideas, or that has literary or scientific or artistic value or any other form of social importance, may not be branded as obscenity and denied . . . constitutional protection."  *Jacobellis v. Ohio*, 378 U.S. 184, 191 (1964) (internal citation removed).

Nor can HB 359 be saved because it purports to protect children. First Amendment rights do not suddenly manifest when a person reaches the age of 18.   Accordingly, state governments do not possess "the free-floating power to restrict the ideas to which children may be exposed." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 794 (2011) (citations and internal quotations omitted); *Erznoznik v. Jacksonville*, 422 U.S. 205, 212–13 (1975) ("[M]inors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them.").

In *Brown v. Entertainment Merchants Association,* California imposed sales restrictions and labeling requirements on "violent video games," limiting minors' (but not adults') access.  564 U.S. at 789.  The Supreme Court struck the law, emphatically rejecting a "wholly new category of content-based regulation that is permissible only for speech directed at children."  *Id.* at 794.  "Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them."  *Id.* at 795.

Moreover, HB 359 is not even limited to minors.  When an entity receives state funds in "any form," it may <u>never</u> display "sexually oriented performances," even to an age-restricted audience.  HB 359 § 3(3)(b).  The First Amendment protects "drag story hours" and "sexually oriented performances.".

## B. HB 359 is subject to strict scrutiny.

### 1.  HB 359 is facially content- and viewpoint-based.

"A regulation of speech is facially content-based under the First Amendment if it 'targets speech based on its communicative content'—

that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan Nat'l Advert. of Austin, LLC.*, 142 S. Ct. 1464, 1471 (2022) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)) (brackets removed).   Content-based restrictions are "presumptively unconstitutional" and "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 163.

HB 359 targets speech based on its communicative content—specifically drag and certain expression relating to human sexuality—all because of a purported "concern for the effect of the <u>subject matter</u> on young viewers."   *United States v. Playboy*, 529 U.S. 803, 811 (2000) (emphasis added) (striking federal law targeting sexually explicit cable channels).   The purported concern is illegitimate, and the law restricts far more than sexually explicit speech.   *See infra* pp. 23–31.   But even if the law was limited to sexually explicit expression, because it "focuses <u>only</u> on the content of the speech and the direct impact that speech has

on its [audience]," it is content-based and subject to strict scrutiny. *Id.* at 811–12 (*quoting Boos v. Barry*, 485 U.S. 312, 321 (1988)).

The State of Montana may not target specific types of sexual expression without engaging in content-based regulation. *See Friends of George's*, 2023 WL 2755238, at *4 (regulation that prohibits speech "performed by entertainers like topless dancers, strippers, male or female impersonators but not others" warrants strict scrutiny). HB 359 does not restrict attendance from all live performances, only those engaged in the portrayal of a specific, enumerated subset of content—namely "drag story hours" and "sexually oriented performances" (as defined by HB 359).

Worse still, HB 359 discriminates on the basis of viewpoint, "rais[ing] the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 (1992) (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991)); *see also Reed*, 576 U.S. at 168 ("Government discrimination among viewpoints—or the regulation of speech based on the 'specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form' of content discrimination.").

HB 359 restricts "drag story hour[s]"—"read[ing] children's books and engaging in other learning activities with minor children present" whenever the person in charge "adopts a flamboyant or parodic [male or female] persona with glamorous or exaggerated costumes and makeup." HB 359, § 1(1)–(3).   The restricted speech is defined in part by the <u>identity of the messenger</u>—"the specific motivating ideology . . . or perspective of the speaker." *Reed*, 576 U.S. at 168.   HB 359 allows reading children's books and engaging in other learning activities with minor children present, as long as the performer is not a drag queen or king— that is, dressed in a gendered costume.   Thus, the line dividing the lawful from the unlawful depends on the identity—and the viewpoint—of the speaker.

"[I]t is a central tenet of the First Amendment that the government must remain neutral in the marketplace of ideas."   *F.C.C. v. Pacifica Found.*, 438 U.S. 726, 745–46 (1978).   HB 359 fails the test.   HB 359 is subject to strict scrutiny.   *Reed*, 576 U.S. at 164–65 (findings regarding legislative intent are unnecessary when a law is facially content- and viewpoint-based).

## 2. Alternatively, the State enacted HB 359 with the intent to target speech for its content.

Even if HB 359 was facially content- and viewpoint-neutral (and it is not), the bill's legislative history proves that the "the purpose and justification for the law are content-based." *Reed*, 576 U.S. at 167; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (content-neutral laws subject to strict scrutiny when they cannot be "justified without reference to the content of the regulated speech" or were adopted "because of disagreement with the message" conveyed). If "an impermissible purpose or justification" underpins a restriction on speech, the law is still subject to strict scrutiny. *City of Austin*, 142 S. Ct. 1464, 1475 (2022).

HB 359 was "adopted by the government because of disagreement with the message the speech conveys." *Ward*, 491 U.S. at 791. HB 359 was introduced as a ban on "drag performance" "in which a performer exhibits a gender identity that is different than the performer's gender assigned at birth using clothing, makeup, or other physical markers."[8] As Representative Mitchell said in his introduction of HB 359, he wanted

---

[8] *Available at* https://leg.mt.gov/bills/2023/HB0399//HB0359_1.pdf

to "add drag shows to th[e] list" of expression outside the scope of the First Amendment.[9]

> In closing, Mitchell made his intent plain:
>
> Due to the mature themes surrounding drag shows and the exposure to inappropriate activities, children may adopt and accept certain stereotypes or attitudes that could lead to social, psychological, linguistic difficulties. Children may also create an inadequate understanding of gender roles and experiences, which is damaging to their long-term social and emotional development.[10]

In other words, the bill sponsor took issue with ideas expressed through drag—that gender is performed and that gender norms are deserving of satire—and, rather than confront the ideas within the marketplace, he used his position within the government to shut them down.

Even if HB 359 were content-neutral, it would be subject to strict scrutiny.

---

[9] Mont. Leg., Sen. Jud, Comm. Hrg. at 8:55:17 (Feb. 2, 2023), *available at* http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/47759?agendaId=251847

[10] Mont. Leg., Sen. Jud, Comm. Hrg. at 11:10:03 (Feb. 2, 2023), *available at* http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/47987?agendaId=269135

### C. HB 359 does not survive strict scrutiny.

There is only one possibility: HB 359 is "presumptively unconstitutional" and subject to strict scrutiny. *Reed*, 576 U.S. at 163. The burden is therefore on Defendant to prove that HB 359 is "narrowly tailored to serve compelling state interests." *Id.* (*quoting R.A.V.*, 505 U.S. at 395); *see also Ashcroft,* 542 U.S. at 665 ("When plaintiffs challenge a content-based speech restriction, the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute."). "The State must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution. That is a demanding standard." *Brown*, 564 U.S. at 799 (2011). HB 359 is not the "rare" example of a constitutionally permissible restriction on speech; it cannot survive strict scrutiny. *Playboy*, 529 U.S. at 818.

### 1. HB 359 does not further a compelling state interest.

The State has no "compelling" state interest, as required to survive strict scrutiny, in restricting "drag story hours" or "sexually oriented performances," as defined in HB 359. The bill purportedly protects children from certain categories of speech. But, where the government

restricts speech on this basis, it must "show a direct causal link between [the restricted content] and harm to minors"; "ambiguous proof will not suffice." *Brown*, 564 U.S. at 800.

It is not enough for some legislators to believe that drag harms children. When no evidence supports a restriction on free speech, the government cannot meet its burden of identifying a compelling state interest, and the restriction cannot stand. *See Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 129–30 (1989) ("[A]side from conclusory statements during the debates by proponents of the bill, . . . the congressional record presented to us contains no evidence as to how effective or ineffective the . . . regulations were or might prove to be" (footnote omitted)); *Reno v. ACLU*, 521 U.S. 844, 858 n. 24, 875–876 n.41 (1997) (same); *Playboy*, 529 U.S. at 822 (same).

### 2. Even if HB 359 did further a compelling government interest, it is not narrowly tailored to that interest.

HB 359 is staggeringly overbroad and thus is not narrowly tailored to the State's (non-compelling) interest in protecting minors from drag performance. *Reed*, 576 U.S. at 163. Overbreadth is of particular concern because it can chill speech and create opportunities for selective enforcement. *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). These

*Brief in Support of Plaintiffs' Motion for a TRO and Preliminary Injunction*     25

concerns already are apparent; Plaintiffs' speech has been chilled, and HB 359 has been used to exclusively target the LGBTQ+ community. *See* Jawort Decl., ¶¶ 6–11; Hamm Decl., ¶ 14.

As a threshold matter, HB 359 cannot stand because existing law restricts obscenity to the full measure allowed under the Constitution. "When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *Playboy*, 529 U.S. at 816. The State already maintains an adequately tailored law to prohibit and criminalize obscene material—Montana Code Annotated § 45-8-201, which incorporates the *Miller* test. 413 U.S. at 23–24. *See supra* pp. 7–8, 13–18. Indeed, a prior version of the bill used the term "obscene" to define the proscribed conduct according to *Miller*, and the Legislature amended the bill to remove "obscene" as a modifier.

As a result, whether due to carelessness or animus, HB 359 creeps into a broad array of protected speech that does not even involve drag.

### a. HB 359 is not narrowly tailored because it is overbroad.

HB 359 criminalizes showing movies appropriate for minor audiences at some of Montana's longest-running theaters, even when the

audience is in fact exclusively eighteen years of age or older.  And—this is unclear, which is itself a problem—it may prohibit the public performance of dances that could be described as "salacious," and the sale or public readings of many books that include "lewd or lascivious depiction[s] or description[s] of human genitals or sexual conduct." HB 359, § 8.

HB 359 further prohibits any performances that involve "stripping"—defined as removing or <u>pretending to remove</u> clothing "in a sexual manner"—even if nudity does not result.  "Sexual manner" is not defined.  HB 359 thus encompasses many non-obscene theatrical, film, and drag performances—even a performance that includes a costume change or the playful removal of a scarf.  HB 359 prohibits these performances in businesses that serve alcohol when minors are present, HB 359, §§ 1(9), 2; "on public property in any location where the performance is in the presence of an individual under the age of 18," HB 359, § 3(a); and "in a location owned by an entity that receives any form of funding from the state," even if the audience is restricted to adults, HB 359, § 3(b).

For example, theaters such as Plaintiffs The Myrna Loy and The Roxy are showing the new-release film *Asteroid City*—a film about children scientists forced to quarantine during a stargazer convention. In this PG-13 film, the actress Scarlett Johansson disrobes and steps into a bathtub. This scene presumably meets HB 359's definition of "stripping," and because they receive state funding, The Myrna Loy and The Roxy face criminal liability for showing the film.

Similarly, the restriction on "drag story hours" encompasses far more than drag performances in any conventional understanding of the term "drag." The terms "drag king" and "drag queen" are defined as "a male or female performer who adopts a flamboyant or parodic [male or female] persona with glamorous or exaggerated costumes and makeup." HB 359, § 1(1), (2). As commenters on HB 359 noted, the definitions extend to a female performer dressed as a male clown;[11] transgender library employees;[12] a recent performance of *Twelfth Night* at Carroll

---

[11] Mont. Leg., Free Conference Comm. Hrg. at 12:12:30 (Apr. 26, 2023), *available at* https://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20230426/-1/49764#handoutFile_. (SK Rossi, Human Rights Campaign).
[12] *Id.* at 12:14:15 (Sam Forstag, Montana Library Association).

College;[13] Disney princesses;[14] and students costumed as past presidents. A drag performer need not even be costumed in a manner incongruent with their sex or gender.

Moreover, the law's criminal and civil penalties incorporate no carveout for parental consent. *See Brown*, 564 U.S. at 802–804 (striking ban on sale of violent video games to minors where industry ratings system "does much to ensure that minors cannot purchase seriously violent games on their own, and that parents who care about the matter can readily evaluate the games their children bring home").

Because HB 359 extends to speech far beyond expression that may actually cause harm to minors—and even beyond the expression legislators intended to curtail—it is not narrowly tailored to a compelling state interest. HB 359 fails strict scrutiny.

> **b. HB 359 is not narrowly tailored because it is also underinclusive.**

And, although overbreadth is enough, it is not all. The law is also underinclusive. *See Brown*, 564 U.S. at 802 ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the

---

[13] *Id.* at 12:14:30.
[14] *Id.* at 12:15:45 (Shawn Reagor, Montana Human Rights Network).

interest it invokes, rather than disfavoring a particular speaker or viewpoint."). "While surprising at first glance, the notion that a regulation of speech may be impermissibly underinclusive is firmly grounded in basic First Amendment principles." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994). Even within an otherwise permissible regulation of speech, underinclusiveness "suggests an attempt to give one side of a debatable public question an advantage in expressing its views to the people." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 785–86 (1978).

HB 359 says nothing about many sources of sexual expression that children are exposed to on a daily basis—through television, the internet, and other media. Rather, it targets drag, and it restricts only certain sexual expression and only in certain locations. What HB 359 leaves out reinforces the only conclusion to draw from what it does in fact restrict: the State is suppressing speech based on the speaker's identity and the ideas conveyed. Because HB 359 is underinclusive, it is not narrowly tailored and fails strict scrutiny.

In sum, HB 359 regulates protected speech, discriminates on the basis of content and viewpoint, and fails strict scrutiny. Plaintiffs are likely to succeed on the merits of Counts III and IV.

## II. Plaintiffs are likely to prevail on the merits of Count V because HB 359 is void for vagueness, again satisfying the first *Winter* prong.

A law is unconstitutionally vague if individuals of "common intelligence must necessarily guess at its meaning and differ as to its application." *Conally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). Vagueness is of special concern where a law imposes criminal sanctions, as "[t]he severity of criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images." *Reno*, 521 U.S. 844, 872.

Overly vague restrictions on speech are unconstitutional for three reasons. First, due process requires that a law provide "persons of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). Second, laws must provide "explicit standards" to law enforcement officials, judges, and juries so as to avoid "arbitrary and discriminatory application." *Id.* Third, a vague statute

can "inhibit the exercise" of First Amendment freedoms and may cause speakers to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Id.*  HB 359 triggers all three concerns.

First, it is seemingly impossible to determine what HB 359 does and does not proscribe.  Does it extend to "salacious dancing" and literary "depiction[s] or description[s] of human genitals or of sexual conduct"? Perhaps.  *See* HB 359, § 1(8).  Second, HB 359 already has been applied in an arbitrary and discriminatory manner: Plaintiff Jawort's educational lecture was canceled, and Montana Pride's permits denied. And third, Plaintiffs and all Montanans will be required to "steer far wider [than] the unlawful zone." *See Grayned*, 408 U.S. at 109*.*

HB 359 is void for vagueness, and Plaintiffs are likely to succeed on the merits of Count V.

## III.  Plaintiffs are suffering and will continue to suffer irreparable harm if HB 359 is not enjoined, satisfying the second *Winter* prong.

Plaintiffs will suffer irreparable harm in the absence of preliminary relief.  Already, they must choose between silence and punishment. Thus, there can be no question that HB 359 will cause irreparable harm.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020).

Plaintiffs have suffered harm due to the enforcement of HB 359: Adria Jawort, the Imperial Court, and BumbleBee Aerial Fitness have had events canceled.   Jawort Decl. ¶¶ 6–8; Smith Decl. ¶¶ 18–20; Malecek Decl. ¶¶ 21, 22.   And, on the thirtieth anniversary of Pride events in Montana, Montana Pride is on hold—and will remain on hold absent judicial relief.   Hamm Decl. ¶¶ 5, 14.

Further, Plaintiffs presently must withhold speech, which constitutes harm cognizable for a preliminary injunction.   The law threatens to force theater troupes into adult-only nightclubs, shut down local theaters that show films consistent with industry standards, and curtail creative teaching methods.   With HB 359 in effect, Plaintiffs' only options are (1) to self-censor or (2) to face criminal charges, civil penalties, and the loss of professional livelihood.   Censorship proves "a harm that can be realized even without an actual prosecution." *Virginia v. American Bookseller's Ass'n Inc.*, 484 U.S. 383, 393 (1988).

**IV. Defendants face no hardship, and the public interest favors Plaintiffs, satisfying the third and fourth *Winter* prongs.**

When the government opposes the issuance of a preliminary injunction, the final two factors—the balance of the equities and the public interest—merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs' freedom of speech endangers no one; they have exercised their rights for decades without incident—proof enough that granting the injunction would do no harm to the State. Existing law allows for the continued prosecution of those who actually subject minors to obscenity. And granting injunctive relief will cause no harm other than potential dissatisfaction to those who have no right to silence others and are under no obligation to attend events with drag or sexual content.

Further, the public interest is served by enjoining a facially unconstitutional law—a law that would inhibit Montanans' First Amendment rights. Any interest in suppressing or chilling speech is illegitimate. *See HM Fla.-ORL, LLC*, 2023 WL 4157542, at *9; *Friends of George's, Inc.*, 2023 WL 2755238, at *7. The third and fourth *Winter* prongs counsel in favor of injunctive relief.

## CONCLUSION

Plaintiffs ask the Court to issue a temporary restraining order and preliminary injunction against the State and the City of Helena.

DATED this 17th day of July, 2023.

/s/Constance Van Kley
Constance Van Kley
Rylee Sommers-Flanagan
Niki Zupanic
UPPER SEVEN LAW

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Per Local Rule 7.1(d)(2)(E), I certify that this brief in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction includes 6,403 words, excluding caption, certificate of compliance, table of contents and authorities, exhibit list, and certificate of service, as counted by Microsoft Word's word count feature.


/s/Constance Van Kley
UPPER SEVEN LAW

*Attorney for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was served upon the following on July 17, 2023, by delivery to a process server:

Austin Knudsen, Office of the Attorney General
Justice Building, Third Floor
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401

Elsie Arntzen, Montana Superintendent of Public Instruction
1227 11th Ave
P.O. Box 202501
Helena, MT 59601

J.P. Gallagher, Chief Executive
155 W Granite Street
Butte, MT 59701

City of Helena
City County Building
316 N. Park Ave.,
Helena, MT 59601

I further certify that courtesy copies were provided via email to legal counsel for the parties above.

<u>/s/Constance Van Kley</u>
Constance Van Kley

*Attorney for Plaintiffs*