IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>AUSTIN KNUDSEN; ELSIE ARNTZEN; J.P. GALLAGHER; and THE CITY OF HELENA,<br><br>Defendants. | No. CV 23-50-BU-BMM<br><br><br><br>**ORDER** |

## INTRODUCTION

The Montana legislature passed House Bill 359 ("H.B. 359") on May 11, 2023. Montana Governor Greg Gianforte signed H.B. 359 into law on May 22, 2023. The statute took immediate effect. H.B. 359 § 7. H.B. 359 criminalizes a wide range of conduct, including "drag story hours" in schools and libraries that receive any amount of state funding. *Id.* § 3(2). The statute prohibits minors from attending "sexually oriented shows" anywhere. *Id.* § 2(1). H.B. 359 proscribes all "sexually oriented" performances in libraries or schools that receive public funding, *id.* § 3(1)–(2), on public property "in the presence of" a minor, *id.* § 3(3)(a), and in any location owned by an entity that receives any state funding. *Id.* § 3(3)(b).

Plaintiffs, the Imperial Sovereign Court of the State of Montana ("Imperial

Court"), Montana Pride, several individuals, including Adria Jawort ("Jawort"), a transgender ("trans") and Two-Spirit journalist and author, businesses, and community groups (collectively "Plaintiffs"), move the Court for a temporary restraining order ("TRO") and preliminary injunction against Defendants Montana Attorney General Austin Knudsen ("Knudsen"), Montana Superintendent of Public Instruction Elsie Arntzen ("Arntzen"), Butte-Silver Bow Chief Executive J.P. Gallagher ("Gallagher"), and the City of Helena. (Doc. 4.) Plaintiffs challenge H.B. 359 on the basis that the law violates the First, Fifth, and Fourteenth Amendments of the U.S. Constitution. (Doc. 3 at 38–43.) The Court conducted a TRO hearing on July 26, 2023. (Doc. 12.) For the reasons set forth below, including the time sensitive nature of Plaintiffs' request and the necessity that the City of Helena make a permitting decision within less than 24 hours, the Court will issue a limited TRO.

## BACKGROUND

Plaintiffs include both individuals and organizations. Montana Pride is an all-ages annual statewide celebration of Montana's LGBTQ+ community, with events that include a parade and drag performances. (Doc. 5-9 at 4.) More than 15,000 people from across the state and country attended the events in 2022. (*Id.*) Montana Pride's 2023 events are scheduled to take place from July 30 to August 6, 2023. (*Id.* at 3–4.) These events would mark Montana Pride's thirtieth anniversary. (*Id.* at 3.) Montana Pride applied for permits for the 2023 events on June 30, 2023, and July

13, 2023. (*Id.* at 3, 8–14, 16–22.) Montana Pride represents that its applications prove "functionally identical" to those approved in 2022. (Doc. 5-9 at 5.)

The City of Helena has not yet issued the requested permits. Plaintiffs allege that city officials told Montana Pride during a July 13, 2023, meeting that "the City of Helena would not issue the requested permits while H.B. 359 remained in effect and enforceable." (*Id.*) The City of Helena clarified during the July 26, 2023, hearing that it plans to issue the permits. The City of Helena asserts, however, that the statute creates a "Hobson's choice" by forcing the city to choose between "infring[ing] upon Plaintiff[s'] constitutional rights and "subject[ing] city employees to criminal and civil liability under [] H.B. 359." (Doc. 10 at 2.)

H.B. 359 defines "drag story hour" as "an event hosted by a drag queen or drag king who reads children's books and engages in other learning activities with minor children present." *Id.* § 1(3). The statute defines "drag king" and "drag queen" as "a male or female performer who adopts a flamboyant or parodic [male or female] persona with glamorous or exaggerated costumes and makeup." *Id.* § 1(1), (2). H.B. 359 defines "sexually oriented performance" as "a performance that, regardless of whether performed for consideration, is intended to appeal to a prurient interest in sex and features" any of the following: "the purposeful exposure, whether complete or partial, of [] genital[ia, the pubic region, buttocks], or a female breast, if the breast is exposed below a point immediately above the top of the areola" or "prosthetic

3

genitalia, breasts, or buttocks," "stripping," or "sexual conduct." *Id.* § 1(10).

H.B. defines "stripping" as the "removal or simulated removal of clothing in a sexual manner for the entertainment of one or more individuals," regardless of whether nudity results. *Id.* § 1(11). The statute contains no definition for "sexual conduct" and instead cross-references the definition contained in Montana's criminal child abuse statute, Mont. Code Ann. § 45-5-625. H.B. 359 § 1(8). The definition of "sexually oriented" encompasses the undefined term "salacious dancing" in addition to "any lewd or lascivious depiction or description of human genitals or of sexual conduct[.]" *Id.* The law provides no definition of "lewd" or "lascivious." *Id.* H.B. 359 similarly fails to define "in the presence of" a minor. *Id.* § 3(3)(a).

Owners, operators, managers, and employees of "sexually oriented" businesses convicted under H.B. 359 face fines from $1,000 to $10,000 and, for a third or subsequent offense, mandatory revocation of business licenses. *Id.* § 2(2). Libraries, schools, public employees, and entities that receive any state funding face fines of $5,000 and mandatory suspension (first offense) or permanent revocation (subsequent offenses) of an applicable teaching, administrative, or specialist certificate if convicted of violating H.B. 359. *Id.* § 3(4). In addition to imposing criminal liability, H.B. 359 provides for a private right of action. *Id.* § 4. A minor who attends a drag story hour or "sexually oriented performance" in violation of

H.B. 359 § 2, or the minor's parent, may bring a civil action up to ten years after an alleged violation against any "person who knowingly promotes, conducts, or participates as a performer." *Id.* § 4(1), (3).

Plaintiffs filed this action on July 7, 2023. (Doc. 1.) Plaintiffs filed an Amended Complaint and TRO/preliminary injunction motion on July 17, 2023. (Doc. 3; Doc. 4.) Plaintiffs sue Knudsen and Artnzen in their official capacities, Gallagher in his individual and official capacity, and the City of Helena in its capacity as a municipal entity. (Doc. 3 at 5.) The City of Helena filed a Response on July 24, 2023. (Doc. 10.) The State, Artzen, and Gallagher have not yet responded.

The Amended Complaint contains the following five causes of action: (I) First Amendment Free Speech Violation, as applied to Jawort; (II) Fourteenth Amendment Equal Protection Violation, as applied to Jawort; (III) First Amendment Free Speech Violation, as applied to Montana Pride; (IV) First Amendment Facial Free Speech Violation; and (V) Fifth Amendment Facial Due Process Violation. (Doc. 3 at 38–43.) Plaintiffs urge the Court to grant an emergency TRO on or before July 30, 2023, so that Montana Pride may take place without requiring attendees, performers, and other community members to chill their protected speech or face criminal and civil liability. (Doc. 5 at 8.)

## LEGAL STANDARD

District courts possess discretion regarding the grant or denial of preliminary

relief. *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). The standard for issuing a TRO proves "essentially identical" as that for issuing a preliminary injunction. *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1154 (D. Or. 2020) (internal citations omitted). A party seeking a TRO must establish the following four elements: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of a TRO, (3) that the balance of equities tips in their favor, and (4) that a TRO is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm to the opposing party and the public interest[] merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit evaluates the above factors under a sliding scale. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). A stronger showing on one factor may offset a weaker showing on another. *Id.* at 1132.

## DISCUSSION

Plaintiffs urge the Court to grant an emergency TRO on or before July 30, 2023, to allow Montana Pride to obtain the requisite permits from the City of Helena and take place as planned. (Doc. 5. at 8.) The time sensitivity of Plaintiffs' request requires the Court to issue a preliminary TRO ruling despite lacking the benefit of the parties' full briefing. The Court will reserve ruling on Plaintiffs' request for a preliminary injunction until the motion is briefed and the Court has conducted a

further hearing. The Court will address each of the *Winter* factors as to a TRO.

## I. Likelihood of Success on the Merits.

Plaintiffs contend that they have demonstrated a likelihood of success on the merits of the following two claims: (Count IV) First Amendment facial challenge to H.B. 359, and (Count V) Fifth Amendment vagueness/overbreadth facial challenge to H.B. 359. (Doc. 5 at 18, 37.) Plaintiffs assert that H.B. 359 has chilled their speech and subjected them to a reasonable fear of prosecution for engaging in protected speech and expression. Plaintiffs have established standing for the purposes of seeking a TRO. *Cf. Friends of George's, Inc. v. Tennessee*, No. 2:23-CV-2163-TLP-TMP, 2023 WL 2755238, at *2–3 (W.D. Tenn. Mar. 30, 2023). The Court defers its final determination of Plaintiffs' standing pending the completion of briefing and an additional hearing. The Court will consider in turn the merits of each claim.

### A. First Amendment Facial Claim.

The First Amendment does not protect obscenity. Laws regulating obscenity, however, "must be specifically defined." *Miller v. California*, 413 U.S. 15, 24 (1973). Speech must meet the following three criteria to qualify as legally "obscene": (1) the speech, "taken as a whole, appeal[s] to the prurient interest in sex," "applying contemporary community standards," (2) the speech "portray[s] sexual conduct in a patently offensive way," and (3) the speech, "taken as a whole, do[es] not have serious literary, artistic, political, or scientific value." *Id.* (internal

citations and quotation marks omitted).

Montana law already protects minors from obscene material. Montana's obscenity statute criminalizes purposely or knowingly providing obscene material, obscenely exposing one's body, and giving obscene performances to minors, among other conduct. Mont. Code Ann. § 45-8-201(1). This statute employs a definition of "obscene" that incorporates the *Miller* requirements. *Id.* § 45-8-201(2). Plaintiffs argue that the speech proscribed by H.B. 359 sweeps far beyond what qualifies as legally "obscene." (Doc. 5 at 32.) The State conceded during the July 26, 2023, hearing that the statutory text of H.B. 359 regulates speech and expression outside that considered "obscene" under *Miller*. The Court agrees.

H.B. 359 appears to contain no requirement that, "taken as a whole" and "applying contemporary community standards" the regulated conduct "appeals to the prurient interest." *See generally* H.B. 359. A jury must decide this question to ensure that "it will be judged by its impact on an average person, rather than a particularly susceptible or sensitive person." *Miller*, 413 U.S. at 33. The statute similarly fails to require that speech be "patently offensive." *See generally* H.B. 359. "Patently offensive" proves synonymous with "hard core" pornographic materials. *Miller*, 413 U.S. at 27. This type of "hard core" content may include "patently offensive representations or descriptions of ultimate sexual acts" and "lewd exhibition of the genitals." *Id.* at 25. Finally, H.B. contains no carveout for speech

or expression with serious literary, artistic, political, or scientific value. *See generally* H.B. 359. The First Amendment protects at least some of the speech and expression regulated by H.B. 359. *Miller*, 413 U.S. at 34–35. The Court next evaluates the appropriate level of scrutiny to apply.

### (1) Level of Scrutiny.

"[T]hat the government must remain neutral in the marketplace of ideas" represents "a central tenet of the First Amendment." *F.C.C. v. Pacifica Found.*, 438 U.S. 726, 745–46 (1978). Courts subject content- and viewpoint-based restrictions on speech or expression to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Content discrimination takes place when the government selects "the subjects that may be discussed[.]" *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 59 (1983) (Brennan, J., dissenting). Viewpoint discrimination, in turn, "occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view[.]" *Id.*

A regulation proves "facially content-based under the First Amendment if it 'targets speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan Nat'l Advert. of Austin, LLC.*, 596 U.S. ___, 142 S. Ct. 1464, 1471 (2022) (internal citation omitted). Content-based restrictions are "presumptively unconstitutional." *Reed*, 576 U.S. at 163.

H.B. 359 bans drag story hours during "regular operating hours and at any school-sanctioned extracurricular activity" in schools and libraries that receive any public funding. H.B. 359 § 3(2). The law imposes significant restrictions on "sexually oriented" performances and "sexually oriented businesses" based upon broad definitions of sexual and gendered content. *Id.* §§ 2, 3. H.B. 359 does not qualify as a neutral time, place, or manner regulation.

The only two other district courts to have considered First Amendment challenges to similar state "drag bans" have confirmed that those laws constitute facially content-based restrictions. *Friends of George's*, 2023 WL 3790583, *19 (W.D. Tenn. June 2, 2023); *HM Fla.-ORL, LLC v. Griffin*, No. 6:23-CV-950-GAP-LHP, 2023 WL 4157542, *7 (M.D. Fla. June 23, 2023). The district court in *Friends of George's* issued a TRO blocking the Adult Entertainment Act ("AEA"), Tennessee's drag ban, the day before it would have taken effect. 2023 WL 3790583, at *3. The Florida drag ban at issue in *HM Florida*, by contrast, had come into effect at the time of the district court's ruling. 2023 WL 4157542, at *1. The Court determines that H.B. 359's focus on the communicative content of the speakers it seeks to regulate renders it a content-based restriction. *City of Austin*, 596 U.S. at ___, 142 S. Ct. at 1471. Strict scrutiny applies.

The Court also considers whether H.B. 359 engages in viewpoint-based regulation. Government suppression of speech based on a speaker's "specific

10

motivating ideology," opinion, or perspective proves impermissible. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995). Viewpoint-based restrictions on speech "raise the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 (1992) (internal citation and quotation marks omitted). Viewpoint-based discrimination represents "a 'more blatant' and 'egregious form' of content discrimination." *Reed*, 576 U.S. at 168 (quoting *Rosenberger*, 515 U.S. at 829).

The district court in *Friends of George's* determined that the AEA qualified as a facially viewpoint-based regulation. 2023 WL 3790583, at *20. H.B. 359 targets a speaker's viewpoint like the Tennessee law. H.B. 359 adds a near-blanket ban on "drag story hour" in schools and libraries receiving public funds. H.B. 359 additionally fails to track the *Miller* obscenity factors and contains no carveout for speech or expression possessing "serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. at 24.

Plaintiffs argue that H.B. 359 constrains speech and expression based solely upon viewpoint. Plaintiffs highlight, for example, that Representative Braxton Mitchell's introduction in support of H.B. 359 justified the legislation on the basis that drag shows expose children to "mature themes" and "inappropriate activities," purportedly risking that children "adopt and accept certain stereotypes or attitudes," "creat[ing] an inadequate understanding of gender roles" and "damag[ing]

11

[children's] long-term social and emotional development." (Doc. 5 at 29 (quoting Mont. Leg., Sen. Jud. Comm. Hrg. at 11:10:03 (Feb. 2, 2023)).) The Court acknowledges that the State has not yet had an opportunity to respond but must accept Plaintiffs' facts as alleged. H.B. 359's facially viewpoint-based regulation subjects it to strict scrutiny for purposes of the Court's TRO analysis.

### (2) Strict Scrutiny Analysis.

A defendant bears the burden of demonstrating that a challenged statute proves "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (internal citation omitted). A court must determine "whether the challenged regulation represents the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). Defendants provided no evidence during the July 26, 2023, TRO hearing to support a finding that H.B. 359 furthers a compelling government interest. The Court recognizes that Defendants have not yet had a full opportunity to develop potential arguments in support of H.B. 359. The Court lacks, at this stage of the litigation, evidence of a compelling interest in restricting the artistic, cultural, political, and scientific speech and expression potentially criminalized by H.B. 359. *Reed*, 576 U.S. at 163.

H.B. 359 also appears to suffer from a lack of narrow tailoring. *Ashcroft*, 542 U.S. at 666. H.B. 359 sweeps beyond obscene conduct already proscribed by Mont. Code Ann. § 45-8-201. H.B. 359 contains no carveout for parental consent. The

Court determines, for purposes of its preliminary TRO analysis, that Defendants appear unlikely to carry their burden regarding the facial validity of H.B. 359 under the First Amendment. Plaintiffs likely succeed on the merits of Count IV.

### B. Fifth Amendment Facial Claim.

Plaintiffs assert that H.B. 359 proves unconstitutionally vague and overbroad. (Doc. 5 at 37.) The Fifth Amendment to the U.S. Constitution requires that no person may "be held criminally responsible for conduct which [they] could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954) (internal citations omitted). The void-for-vagueness doctrine requires that criminal laws define an offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Statutes failing to meet either requirement violate the Due Process Clause and prove facially invalid. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

Plaintiffs argue that H.B. 359 contains numerous vague and overbroad definitions. (Doc. 5 at 33–35, 38.) Plaintiffs additionally highlight that the statute fails to define other terms. (*Id.*) The State, without the benefit of review of the legislative record, assured the Court during the July 26, 2023, TRO hearing that H.B. 359's statutory language proves sufficiently definite and tailored to avoid constitutional problems and that Plaintiffs face no risk of criminal prosecution under

its terms. The State distinguished H.B. 359 from the unconstitutional Tennessee and Florida drag bans on the basis that those laws failed to define "lewd."

H.B. 359 similarly fails to define "lewd" and "lascivious." H.B. 359 § 1(8). H.B. 359 additionally fails to define the terms "flamboyant or parodic [male or female] persona," "glamorous or exaggerated costumes and makeup," "salacious dancing," "sexual manner," and "presence of an individual under the age of 18[.]" *Id.* §§ 1(1)–(2), (8), (11), 3(3)(b). The Court anticipates that the State will further develop its arguments in its to-be-submitted briefing. The absence of definitions for these terms raises concerns for the Court about vagueness and overbreadth.

The Court agrees with Plaintiffs, based upon the available record, that H.B. 359's definitions for "drag king," "drag queen," "drag story hour," "nude," "public property," "sexually oriented," "sexually oriented business," "sexually oriented performance," and "stripping" run a significant risk of vagueness and overbreadth. H.B. 359 § 1(1)–(4), (6), (8)–(11). A "flamboyant or parodic" gendered persona with "glamorous or exaggerated costumes or makeup" could be interpreted to include any number of theatrical and artistic performances. *Id.* § 1(1)– (2). A performer who removes no clothing or who removes only outer layers still might fall within H.B. 359's definition of "[s]tripping." *Id.* § 1(11). H.B. 359 remains silent as to whether "depiction[s] or descriptions[s] of human genitals or of sexual conduct" encompass non-live content or literary, film, theatrical, or other artistic depictions. *Id.* § 8.

"Nude," as defined by H.B. 359, appears to apply both to someone fully clothed, with part of their buttocks visible through sheer fabric, and to someone in a bathing suit that partially uncovers the lower portion of a breast. *Id.* § 1(4)(b).

H.B. 359's broad private right of action allows any minor or their parent to bring a suit against someone whom they believe has violated the statute up to ten years after the alleged violation. H.B. 359 § 4. H.B. 359 contains no carveout for content possessing "serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. at 24. The law makes no reference to geographical limitations. Parental consent proves irrelevant to potential criminal liability. H.B. 359 provides for no affirmative defenses. *See* H.B. 359. The statute leaves the public in the dark about what conduct might carry criminal and civil sanctions. *Morales*, 527 U.S. at 56.

H.B. 359 fails to define the conduct that it criminalizes "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender*, 461 U.S. at 357. H.B. 359 additionally appears likely to "encourage arbitrary and discriminatory enforcement." *Id.* Whether a performance qualifies as "sexually oriented," for example, rests upon a distinction between "female" and "prosthetic" breasts. H.B. 359 § 1(4)(b), (10)(a)(i)–(ii). Authorizing members of the public and state authorities alike to draw such a distinction with respect to others' bodies likely would require identity-based and gender-based discrimination.

H.B. 359 also permits private citizens and state authorities to pursue legal

action based upon a judgment as to who qualifies as a drag king or queen. *Id.* § 1(1)–(2). This assessment appears to hinge upon a personal, subjective determination about what qualifies as a "flamboyant or parodic" gendered persona with "glamorous or exaggerated" clothing and makeup, without any statutory definition of these terms for guidance. *Id.* The Court determines that H.B. 359's statutory scheme likely will disproportionately harm not only drag performers, but any person who falls outside traditional gender and identity norms, including trans and Two-Spirit people. As with the Florida drag ban enjoined in *HM Florida*, H.B. 359 proves "dangerously susceptible to standardless, overbroad enforcement[.]" 2023 WL 3790583, at *9. Plaintiffs have demonstrated a likelihood of success on the merits of Count V. The Court determines that Plaintiffs have satisfied the first *Winter* element.

## II.   Irreparable Harm.

Plaintiffs assert that irreparable harm already has occurred and will continue to occur in the absence of a TRO. (Doc. 5 at 38–39.) The Court agrees. The Government possesses a compelling state interest in children's wellbeing and safety. The record before the Court suggests, however, that this compelling interest remains untethered from the text and application of H.B. 359. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese v. Cuomo*, 592 U.S. ___, 141 S. Ct. 63, 67 (2020). The harm of censorship "can be realized even without an actual prosecution."

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988).

Montana Pride has not yet received permits from the City of Helena for the 2023 Pride events from July 30 to August 6, 2023. The City of Helena supports Montana Pride's application but fears exposing its employees to civil and criminal liability under H.B. 359 should they permit the 2023 Montana Pride to take place as planned. (Doc. 10 at 2.) The City of Helena affirmed its view that denying Montana Pride's permit application would "infringe upon Plaintiff[s'] constitutional rights to freely express themselves." (*Id.*) Plaintiffs and the thousands of community members and the local businesses who wish to participate in or attend 2023 Montana Pride face the prospect of irreparable harm in the absence of a TRO should they face attendant criminal and/or civil liability under H.B. 359 for their protected speech and expression. Montana Pride's lead organizer alleges a fear of liability for coordinating and promoting the planned Pride events. (Doc. 5-9 at 6.)

More broadly, the Court credits Plaintiffs' allegations that they must engage in self-censorship or abandon their organizational missions to avoid potential criminal and civil liability under H.B. 359. Imperial Court has curtailed its speech and expression, including at other recent Pride events across Montana, in response to H.B. 359. (Doc. 5-3 at 5–7.) Plaintiffs have experienced irreparable harm due to cancelled, postponed, or modified events.

Jawort, for example, alleges that she has suffered a restraint on her speech that

17

has caused irreparable professional, reputational, and dignitary harm. She alleges that the Butte officials cancelled her June 2, 2023, lecture on trans and Indigenous Montana history at the Butte Public Library. (Doc. 5-2 at 3, 7, 10.) Butte's decision to cancel Jawort's history lecture allegedly occurred despite Jawort's express intent to present as herself rather than in drag. (Doc. 5-2 at 4–5.) Jawort has presented evidence that Butte officials made a determination that "hav[ing] a trans[] person" in the Butte Public Library posed "too much of a legal risk" under H.B. 359. (Doc. 5-2 at 3, 7, 10.)

Plaintiffs' alleged loss of First Amendment freedoms and their reasonable fear of criminal and civil liability under H.B. 359 constitute irreparable injury. *Roman Cath. Diocese*, 592 U.S. at \_\_\_, 141 S. Ct. at 67; *Am. Booksellers Ass'n*, 484 U.S. at 393. Plaintiffs have carried their burden in demonstrating irreparable harm for purposes of a TRO. *Winter*, 555 U.S. at 22.

### III.   Public Interest.

Plaintiffs highlight that Montana Pride has taken place for decades without incident and that Defendants will suffer no harm, other than potential dissatisfaction, should the Court grant a TRO. (Doc. 5 at 40.) Nothing in the record currently before the Court indicates that speech and expression associated with Montana Pride has harmed minors or any other community members. Montana law already proscribes subjecting minors to obscenity. Mont. Code Ann. § 45-8-201. Defendants need not

attend drag events or events with sexual content. Constitutional violations, moreover, never serve the public interest. *See HM Fla.*, 2023 WL 4157542, at *9; *Friends of George's, Inc.*, 2023 WL 2755238, at *7. The public interest factor strongly weighs in favor of Plaintiffs for purposes of a TRO.

## CONCLUSION

The thirtieth annual Montana Pride is slated to begin in less than two days. Plaintiffs, along with the approximately 15,000 Montanans who wish to attend the events, cannot avoid chilled speech or exposure to potential civil or criminal liability under H.B. 359 in the absence of the extraordinary remedy of a TRO. The City of Helena faces the untenable choice between "infring[ing] upon Plaintiff[s'] constitutional rights" and "subject[ing]" the city employees tasked with reviewing Montana Pride's application "to civil and criminal liability under the provisions of H.B. 359." (Doc. 10 at 2.)

The time sensitivity of Plaintiffs' TRO request, the likelihood that significant constitutional violations to Plaintiffs have occurred and will continue without judicial intervention, and the absence of countervailing evidence currently before the Court, together require the Court to issue a TRO. The State represented during the July 26, 2023, TRO hearing that it would submit an Answer to the Amended Complaint and a Response to the preliminary injunction motion. The Court will issue its eventual order regarding Plaintiffs' motion for a preliminary injunction only after

the parties have completed briefing and the Court has conducted a further hearing.

The district court in *Friends of George's* determined, after a full bench trial, that the Tennessee drag ban "reeks with constitutional maladies of vagueness and overbreadth fatal to statutes that regulate First Amendment rights." 2023 WL 3790583, at *32. H.B. 359 appears to suffer from similar "constitutional maladies." *Id.* The Court will grant Plaintiffs' request for a TRO. The Court will enjoin Defendants from enforcing H.B. 359 pending the Court's determination of Plaintiffs' entitlement to a preliminary injunction.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Plaintiffs' Motion (Doc. 4) is hereby **GRANTED, in part, and DEFERRED, in part.** The Court will **GRANT** Plaintiffs' request for a TRO only.

2. Defendants Knudsen and Arntzen are hereby **ENJOINED** from enforcing H.B. 359 pending the Court's determination of Plaintiffs' entitlement to a preliminary injunction.

DATED this 28th day of July, 2023.

_____
Brian Morris, Chief District Judge
United States District Court