Austin Knudsen
  *Montana Attorney General*
Michael Russell
Thane Johnson
Alwyn Lansing
Michael Noonan
  *Assistant Attorneys General*
MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
*michael.russell@mt.gov*
*thane.johnson@mt.gov*
*alwyn.lansing@mt.gov*
*michael.noonan@mt.gov*

Emily Jones
  *Special Assistant Attorney General*
JONES LAW FIRM, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
Phone: 406-384-7990
*emily@joneslawmt.com*
  Attorneys for Defendants Austin Knudsen
  and Elsie Arntzen

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, BUTTE DIVISION

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA, ET AL.,<br><br>　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>AUSTIN KNUDSEN; ELSIE ARNTZEN; J.P. GALLAGHER; AND THE CITY OF HELENA,<br>　　　　　　　　　Defendants. | Cause No. 2:23-cv-00050-BMM<br><br>**STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................1

BACKGROUND ....................................................................................1

   I.  HB 359 ......................................................................................1

   II. Plaintiffs ..................................................................................4

PRELIMINARY INJUNCTION STANDARD ...........................................6

ARGUMENT .........................................................................................8

   A. HB 359 IS VALID UNDER THE SUPREME COURT'S FIRST AMENDMENT
      OVERBREADTH ANALYSIS .........................................................9

      1.   Proper Construction of HB 359 .......................................11

   B. HB 359 IS NOT VOID FOR VAGUENESS .....................................17

   C. PLAINTIFFS FAIL TO DEMONSTRATE STANDING...........................19

      1.   Plaintiffs Cannot Demonstrate Any Cognizable Injury at
          This Stage..........................................................................20

      2.   Plaintiffs Cannot Establish Causation with Respect to the
          State Defendants ...............................................................21

      3.   Plaintiffs Fail to Establish Redressability with Respect to the
          State Defendants ...............................................................24

CONCLUSION.....................................................................................27

CERTIFICATE OF SERVICE ................................................................29

CERTIFICATE OF COMPLIANCE.........................................................29

# TABLE OF AUTHORITIES

## Cases

*Alliance for The Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ......................................................... 6, 7

*Angelotti Chiropractic v. Baker*,
   791 F.3d 1075 (9th Cir. 2015) ......................................................... 6

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
   492 U.S. 469, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) ................................. 10

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018) ......................................................... 6

*Boardman v. Pac. Seafood Grp.*,
   822 F.3d 1011 (9th Cir. 2016) ......................................................... 26

*Bresgal v. Brock*,
   843 F.2d 1163 (9th Cir. 1987) ......................................................... 7

*Broadrick v. Oklahoma*,
   413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) ................................. 10

*Cal. Teachers Ass'n v. Bd. of Educ.*,
   271 F.3d 1141 (9th Cir. 2001) ......................................................... 17, 19

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ......................................................... 7

*City & Cnty. of S.F. v. U.S. Citizenship & Immigration Servs.*,
   944 F.3d 773 (9th Cir. 2019) ......................................................... 8

*City & Ctny. Of S.F. v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) ......................................................... 7

*City of Erie v. Pap's A.M.*,
   529 U.S. 277 (2000) ......................................................... 12, 13

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ......................................................... 19

*Clark v. Community for Creative Non-Violence*,
   468 U.S. 288 (1984) ......................................................... 12

*Clear Channel Outdoor, Inc. v. City of L.A.*,
  340 F.3d 810 (9th Cir. 2003) ............................................................... 6

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) .......................................................................... 21

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ............................................................ 26

*E. Bay Sanctuary Covenant v. Barr*,
  934 F.3d 1026 (9th Cir. 2019) ............................................................... 7

*Fed. Election Comm'n v. Cruz*,
  142 S. Ct. 1638 (2022) .......................................................................... 19

*Fraihat v. U.S. Immigration & Customs Enf't*,
  16 F.4th 613 (9th Cir. 2021) ............................................................... 16

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ................................. 25

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490, 69 S. Ct. 684, 93 L. Ed. 834 (1949) ............................................ 9

*Ginsberg v. New York*,
  390 U.S. 629 —40 (1968) ............................................................... 14

*Golden Gate Rest. Ass'n v. City of S.F.*,
  512 F.3d 1112 (9th Cir. 2008) ............................................................ 26

*Hill v. Colo.*,
  530 U.S. 703, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000) ............................... 17

*Interpipe Contr., Inc. v. Becerra*,
  898 F.3d 879 (9th Cir. 2018) .................................................... 13, 16

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) ......................................................... 25

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ........................................................................... 18

*Los Angeles Police Dept. v. United Reporting Publishing Corp.*,
  528 U.S. 32, 120 S. Ct. 483, 145 L. Ed. 2d 451 (1999) ................................... 10

*Lujan v. Defs of Wildlife*,
  504 U.S. 555 ................................................................................................ 21

*Members of City Council* of L.A. *v. Taxpayers for Vincent*,
  466 U.S. 789, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984) ................................. 11

*N.Y. State Club Ass'n v. City of N.Y.*,
  487 U.S. 1, 101 L. Ed. 2d 1, 108 S. Ct. 2225 (1988) ...................................... 10

*Nat'l Endowment for the Arts v. Finley*,
  524 U.S. 569 (1998) ...................................................................................... 18

*New Motor Vehicle Bd.* of Cal. *v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) .................................................................................... 27

*New York v. Ferber*,
  458 U.S. 747 (1982) ................................................................................... 9, 14

*Paramount Land Co. Ltd. P'ship v. Cal. Pistachio Comm'n*,
  491 F.3d 1003 (9th Cir. 2007) ......................................................................... 6

*Price v. Kirkegard*,
  No. CV 12-22-BLG-CSO, 2013 U.S. Dist. LEXIS 24795 (D. Mont. Feb. 22,
  2013) ............................................................................................................. 22

*Rust v. Sullivan*,
  500 U.S. 173 (1991) ...................................................................................... 16

*Sable Communications of Cal. v. FCC*,
  492 U.S. 115 (1989) ................................................................................. 14, 17

*SEC v. Banc de Binary, Ltd.*, 964 F. Supp. 2d 1229 (D. Nev.
  2013) ............................................................................................................... 7

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................................... 19

*State ex rel. Woodahl v. Dist. Court*,
  159 Mont. 112, 495 P.2d 182, (1972) ............................................................ 22

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ....................................................................... 26

*Thalheimer v. City of San Diego*,
  645 F.3d 1109, 1128 (9th Cir. 2011) .............................................................. 25

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ........................................... 20

*Trump v. Hawaii*,
   138 S. Ct. 2392, 2423 (2018) .......................................... 8

*United States v. Hansen*,
   216 L. Ed. 2d 692, 143 S. Ct. 1932 (2023) .................................. 9, 11

*United States v. O'Brien*,
   391 U.S. 367 (1968) ........................................... 9

*United States v. Williams*,
   553 U.S. 285 (2008) .................................................. *passim*

*Virginia v. Hicks*,
   539 U.S. 113, 119- 20, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003) .............. 9, 10

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ....................................... 12, 13, 17

*Winsor v. Sequoia Benefits & Ins. Servs., L.L.C.*,
   62 F.4th 517 (9th Cir. 2023) ....................................... 22, 25

*Winter v. Natl. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ....................................... 6, 26

*Wit v. United Behav. H*ealth,
   58 F.4th 1080 (9th Cir. 2023) .......................................... 21

*Whole Woman's Health v. Jackson*,
   142 S. Ct. 522 (2021) ........................................ 20

*Younger v. Harris*,
   401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) ....................... 20

## Other Authorities

## Montana Codes Annotated

   §§ 1-2-101—208 ............................................. 20

   § 2-15-501 ................................................. 31

   § 2-15-501 ................................................. 32

   § 7-4-2712 ................................................. 32

§ 20-4-110 ................................................................................................ 33

§ 20-4-110(2)(b) ...................................................................................... 33

§ 45-8-205(5) ........................................................................................... 23

**United State Constitution**

U.S. Const. art. III .................................................................................. 19

**INTRODUCTION**

Plaintiffs' Motion for a Preliminary Injunction (Doc. 4/"Motion"), as well as the claims asserted in their First Amended Complaint (Doc. 3), stem from Plaintiffs' misapprehension of House Bill 359's ("HB 359"/"the Bill") specific provisions and actual effect. Plaintiffs read HB 359 in a vacuum and find fault in its various provisions arising from their failure to construe the same in the full context as the Montana Legislature intended. In other words, the vagueness, overbreadth, and other alleged problems of which Plaintiffs complain are either overstated or of their own making. This case ultimately boils down to proper statutory construction, which, as explained further below, demonstrates Plaintiffs' failure to establish any need for or entitlement to a preliminary injunction pursuant to the applicable authorities. Plaintiffs' Motion therefore fails as a matter of law, and the Court should deny the same accordingly.

**BACKGROUND**

I.     **HB 359.**

Montana's Governor signed HB 359 into law on May 22, 2023. In a nutshell, HB 359 places restrictions on sexually oriented businesses; identifies locations where sexually oriented performances are prohibited; and provides a private right of action to certain minors or their parents or legal guardians against a person who knowingly promotes, conducts, or participates as a performer in a

performance that violates Sections 2 or 3 of the Bill. (Doc. 5-1, *generally*.)

Pursuant to Section 2, "a sexually oriented business may not allow a person under 18 years of age to enter the premises of the business during a sexually oriented performance." (*Id.* at 3.) "'Sexually oriented business' means a nightclub, bar, restaurant, or similar commercial enterprise that: (a) provides for an audience of two or more individuals: (i) live nude entertainment or live nude performances; or (ii) a sexually oriented performance; and (b) authorizes on-premises consumption of alcoholic beverages." *Id.* "'Sexually oriented performance' means a performance that, regardless of whether performed for consideration, is intended to appeal to a prurient interest in sex and features: (a) the purposeful exposure, whether complete or partial, of: (i) a human genital, the pubic region, the human buttocks, or a female breast, if the breast is exposed below a point immediately above the top of the areola; or (ii) prosthetic genitalia, breasts, or buttocks; (b) stripping; or (c) sexual conduct. (*Id.*) Section 1 defines additional specific terms applicable to Section 2 such as "nude," "prurient interest in sex," "sexually oriented," and "stripping." (*Id.* at 2-3.) An owner, operator, manager, or employee of a sexually oriented business who violates Section 2's provisions is subject to fines that increase with repeated violations, and the business shall have its business license revoked upon a third violation. (*Id.* at 3-4.)

Section 3 prohibits a library that receives state funding from allowing a sexually oriented performance on its premises. (*Id*. at 4.) Additionally, a school or library that receives state funding "may not allow a sexually oriented performance or drag story hour on its premises during regular operating hours or at any school-sanctioned extracurricular activity." (*Id*.) "'Drag story hour' means an event hosted by a drag queen or drag king who reads children's books and engages in other learning activities with minor children present." (*Id*. at 2.) A "drag king" or "drag queen" is "a male or female performer who adopts a flamboyant or parodic [male or female] persona with glamorous or exaggerated costumes or makeup." (*Id*.) Subsection 3 further prohibits sexually oriented performances "on public property in any location where the performance is in the presence of an individual under the age of 18" and "in a location owned by an entity that receives any form of funding from the state." (*Id.* at 4.) "A library, a school, or library or school personnel, a public employee, or [applicable entity] or an employee of the entity" are subject to a fine and, if applicable, adverse certification consequences for violating Section 3's provisions (*Id.*)

Section 4 establishes a private right of action. (*Id.* at 4-5.) A minor who attends a performance in violation of Sections 2 or 3 or the minor's parent or legal guardian "may bring an action against a person who knowingly promotes, conducts, or participates as a performer in the performance." (*Id*. at 4.) A

successful plaintiff may be awarded actual damages, reasonable attorney fees and costs, and statutory damages. (*Id*. at 4-5.) The cause of action remains available for a period of ten years after accrual. (*Id*. at 5.)

## II. Plaintiffs.

Plaintiffs are a mix of individuals, businesses, and nonprofits. Adria Jawort ("Jawort") identifies as a transgender woman who "regularly speaks to libraries and other organizations . . . about Two-Spirit and transgender issues." (Doc. 3 at 6.) Rachel Corcoran ("Corcoran") is a teacher in Billings who "has dressed up as fictional and historical male and female characters…[while] read[ing] to students" (*Id*.) The Imperial Sovereign Court of the State of Montana ("Imperial Court") is a non-profit organization that educates and advocates "through the production of community-based drag performances…" and allegedly has had events cancelled or modified. (*Id*. at 7.) Montana Book Company is "an independent LGBTQ+ owned bookstore in Helena, Montana" and is an "event space that hosts readings and performances," including "drag events." (*Id*. at 7-8.) Imagine Brewing Company ("Imagine Brewing") is a brewery that "has hosted and plans to host all-ages drag shows and drag story hours, during which it sells alcoholic beverages." (*Id*. at 8.) Imagine Brewing "intends to apply for [state] funds when available" and has a "lending library on-site." (*Id*.) Bumblebee Aerial Fitness ("Bumblebee") is a fitness studio located in Helena

that "teaches aerial arts and choreography to students ages 14 and older, and pole fitness to students 18 and up." (*Id*.) Instructors and students perform to live audiences, and allegedly have had events cancelled. (*Id*. at 8-9.) Montana Pride is a statewide annual Pride celebration whose permits for an event were allegedly denied by the City Helena. (*Id*. at 9.) The Western Montana Community Center ("the Center"), is an organization located in Missoula that "recently produced Missoula Pride, an annual event that celebrates the LGBTQ+ community through storytelling, dancing, a parade, and drag performances." (*Id*.) The Great Falls LGBTQ+ Center "organizes events for all audiences featuring drag performances. . ." *Id*. The Myrna Loy is a nonprofit that "leases a former jail building from Lewis and Clark County" and "often presents films and live performances . . . that it [] believes may violate HB 359." (*Id*. at 10.) The Roxy Theater ("The Roxy") is a nonprofit that "authorizes on-premises consumption of alcoholic beverages" and shows films and events that it "believes may violate HB 359." (*Id*. at 10-11.)

Plaintiffs seek a preliminary injunction barring the State Defendants from enforcing HB 359. (Doc. 5.) The predicate claims applicable to the State Defendants are Count IV, Plaintiffs' facial First Amendment overbreadth challenge, and Count V, Plaintiffs' facial Fifth/Fourteenth void for vagueness challenge. (Doc. 3 at 41-43.) This Response therefore only addresses Plaintiffs'

claimed entitlement to a preliminary injunction based on Counts IV and V.

## PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Fraihat v. U.S. Immigration & Customs Enf't, 16* F.4th 613, 635 (9th Cir. 2021) (quotations omitted). "As a matter of equitable discretion, a preliminary injunction *Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018). "Rather, a court must also consider whether the movant has shown 'that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* at 1944. *See also Winter v. Natl. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Even under the sliding scale test from *Alliance for The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), Plaintiffs still must show a likelihood of irreparable injury and a hardship balance that tips sharply towards them. *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1081 (9th Cir. 2015). Raising a serious constitutional question is not enough to tip the hardship scales and enjoin a duly enacted law. *See Paramount Land Co. Ltd. P'ship v. Cal. Pistachio Comm'n*, 491 F.3d 1003, 1012 (9th Cir. 2007); *see also Clear Channel Outdoor, Inc. v. City of L.A.*, 340 F.3d 810, 816 (9th Cir. 2003) (vacating a

preliminary injunction where plaintiffs were unlikely to succeed on the merits even though their First Amendment claims did raise the possibility of irreparable injury). This means there must be at least a reasonable probability of success on the merits. *See SEC v. Banc de Binary, Ltd.*, 964 F. Supp. 2d 1229, 1233 (D. Nev. 2013) ("The [Alliance for the Wild Rockies] court must have meant something like 'reasonable probability,' which appears to be the most lenient position on the sliding scale that can satisfy the requirement that success on the merits be 'likely.' If success on the merits is merely possible, but not at least reasonably probable, no set of circumstances with respect to the other prongs will justify preliminary relief.").

Next, if a plaintiff establishes that a preliminary injunction should issue, the injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown." *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987); *cf. E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) ("all injunctions—even ones involving national policies—must be 'narrowly tailored to remedy the specific harm shown'"). "This is so, in part, because broad injunctions may stymie novel legal challenges and robust debate." *City & Ctny. Of S.F. v. Trump*, 897 F.3d 1225,

1244 (9th Cir. 2018).[1]

**ARGUMENT**

Plaintiffs' current Motion should be denied because they cannot meet any, no less *all*, of the four elements necessary to obtain a preliminary injunction. Plaintiffs cannot show a likelihood of success on the merits, a likelihood of suffering irreparable harm, that the balance of the equities tips in their favor, or that a preliminary injunction is in the public interest. Because the test is conjunctive, any one of these deficiencies is sufficient to defeat Plaintiffs' Motion.

**I.    PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.**

Satisfaction of a likelihood of success on the merits is "the irreducible minimum requirement to granting any equitable and extraordinary relief." *City & Cnty. of S.F. v. U.S. Citizenship & Immigration Servs., 944 F.*3d 773, 789 (9th Cir. 2019) (citing Trump v. *Hawaii, 138 S.* Ct. 2392, 2423 (2018)). The analysis ends if the moving party fails to show a likelihood of success on the merits of its claims. *Id.* at 790 (citing *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018)).

---

[1] *See also* Doc. 5-1 at 5 (setting forth HB 359's "Severability" clause).

## A.   HB 359 Is Valid under the Supreme Court's First Amendment Overbreadth Analysis.

The Supreme Court has explained that it "cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). "'[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *United States v. Hansen*, 216 L. Ed. 2d 692, 710, 143 S. Ct. 1932 (2023) (brackets in original) (quoting *Giboney v. Empire Storage & Ice Co., 33*6 U.S. 490, 502, 69 S. Ct. 684, 93 L. Ed. 834 (1949)). "[W]here conduct and not merely speech is involved, [] the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *New York v. Ferber*, 458 U.S. 747, 770 (1982).

Under the Supreme Court's First Amendment overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). "The doctrine seeks to strike a balance between competing social costs." *Id.* (citing *Virginia v. Hicks*, 539 U.S. 113, 119- 20, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003)). "On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand,

invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects." *Id.*

"In order to maintain an appropriate balance, [the Supreme Court has] vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* (brackets inserted, emphasis in original) (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989); *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)). "Invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" *Id.* at 293 (quotation marks omitted) (quoting *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39, 120 S. Ct. 483, 145 L. Ed. 2d 451 (1999) (quoting *Ferber*, 458 U.S., at 769, 102 S. Ct. 3348, 73 L. Ed. 2d 1113)).

"The overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (quoting *N.Y. State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 14, 101 L. Ed. 2d 1, 108 S. Ct. 2225 (1988)). "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*,

553 U.S. at 293. *See also Hansen*, 216 L. Ed. 2d 692, 702, 143 S. Ct. 1932 (2023) ("To judge whether a statute is overbroad, we must first determine what it covers.").

### 1. Proper Construction of HB 359.

The MCA sets forth numerous specific rules to be followed in the construction of the laws passed by the Montana Legislature. *See* MCA, §§ 1-2-101—208. Those include Section 1-2-101 (Role of the judge—preference to construction giving each provision meaning, Section 1-2-102 (Intention of the legislature—particular and general provisions), Section 1-2-103 (Statutes in derogation of common law—liberal construction, and Section 1-2-106 (Construction of words and phrases). *See also Williams*, 553 U.S. at 294 (narrowing the meanings of words "by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated."); *Id.* at 301 (acknowledging the tendency of the Supreme Court's "overbreadth doctrine to summon forth an endless stream of fanciful hypotheticals."). "The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Id.* at 303 (quoting *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984)).

Taken as a whole, HB 359's definitions, surrounding context, and statements of supporting legislators leave little doubt that the Legislature determined sexually oriented performances and drag story hours to be indecent and inappropriate for minors. It is also clear that the Legislature considers this conduct to be potentially harmful to minors and intends to protect them by limiting their potential exposure to the same. Legislative testimony presented in support of HB 359 reflects the significant public concern about the potential harm to minors and the conclusion that they should not be exposed to this conduct.[23] The Bill is not aimed at banning or suppressing a performer's sexual expression but is instead overwhelmingly concerned with the harmful secondary effects of sexually expressive conduct on minors. The Court can therefore consider HB 359 to be

---

[2] Mont. Leg., H. Judiciary Comm. Hrg. at 8:20:59 (Feb. 9, 2023), available at http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/47759?agendaId=251847; *Id.*, at 8:48:50 (proponent testimony referencing a "drag your kids to pride event" where the performers led children by the hand to a sign saying "it's not going to lick itself" and encouraging them to dance); Mont. Leg., S Judiciary Comm. Hrg. at 8:53:02 (Apr. 4, 2023), available at http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/47987?agendaId=269135. *See also Id.* at 8:58:50 (proponent testimony referencing a publication entitled "Drag Pedagogy: The Playful Practice of Queer Imagination in Early Childhood" and quoting statement from the same including "drag pedagogy is designed to destabilize children" and "queer and trans pedagogies seek to actively destabilize the normative function of schooling").

[3] The Legislature may properly rely on the experience elsewhere and the observations of legislators in concluding that this conduct causes undesirable consequences. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 312-14 (2000)

content-neutral for purposes of its analysis. *See Clark* v. *Community for Creative Non-Violence*, 468 U.S. 288, 299 (1984); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 294, (2000) (even if regulation has an incidental effect on some speakers or messages but not others, the regulation is content neutral if it can be justified without reference to the content of the expression).[4] HB 359 further reflects the Legislature's understanding that such conduct is not necessarily inappropriate for adult audiences considering that it limited HB 359's application to the locations and circumstances within its lawful authority to regulate and where minors are more likely to be exposed to that conduct.

The Legislature accordingly defined that conduct, created a new legal category of business establishments ("sexually oriented businesses"), and made it a criminal offense for such a business to allow a minor to enter its premises during a "sexually oriented performance." This is an offense against public order, and the other provisions of Title 45, chapter 8 apply to this offense in its construction given the Bill's specific codification instruction at Section 5(1). (*See* Doc. 5-1 at 5.) For example, the construction of "sexually oriented performance" must incorporate the pre-existing definition of "performance," which is "any  motion picture, film, or

---

[4] In any case, *Ward* clarified that non-content neutral restrictions subject the law to strict scrutiny, but the Court applies a slightly different framework to First Amendment vagueness challenges, *Williams*, 553 U.S. at 292-293; and a wholly different framework towards cases involving the state withdrawing subsidies. *Interpipe Contr., Inc. v. Becerra*, 898 F.3d 879, 886 (9th Cir. 2018).

videotape (except a motion picture or videotape rated G, PG, PG-13, or R by the motion picture association of America); phonograph record; compact disk; tape recording; preview; trailer; play; show; skit; dance; or other exhibition played or performed before an audience of one or more, with or without consideration." MCA § 45-8-205(5). This assuages Plaintiffs' stated concerns that The Roxy and The Myrna Loy could commit a crime by allowing a minor to attend a PG-13 or R-rated movie. (*See* Doc. 5-5 at 4-6; Doc. 5-6 at 4-5.)

There also can be no doubt that the Legislature intended for the Bill to prevent public property or any funds entrusted to it by Montana's taxpayers from being used to support or subsidize the presentation of conduct that is indecent and potentially harmful to minors. This is the prevailing theme of Section 3. Ultimately, no reasonable construction of the Bill could conclude that a person can be criminalized simply for dressing in "drag" or that "drag shows" are outright banned in public as if they were legally obscene. Proper construction of HB 359 withstands constitutional scrutiny.

### 2. Any Overbreadth of HB 359 Is Insubstantial in Relation to Its Plainly Legitimate Sweep

The Supreme Court has made clear that the government has "a compelling interest in protecting the physical and psychological well-being of minors." *Sable Communications of Cal. v. FCC*, 492 U.S. 115, 126 (1989). "This interest extends to shielding minors from the influence of [conduct] that is not obscene by adult

standards." *Id.* (citing *Ginsberg v. New York*, 390 U.S. 629, 639—40 (1968); *New York v. Ferber*, 458 U.S. 747, 756—57 (1982)). This is exactly the interest the Legislature advanced in passing HB 359 as explained above, and it constitutes a large portion of the Bill's plainly legitimate sweep.

Plaintiffs characterize "drag shows" as an art, but it does not necessarily follow that art cannot also be indecent and inappropriate for minors. Indeed, Imperial Court admits as much by acknowledging it distinguishes between "adults-only" and "family friendly" or "all-ages" performances:

> …The Imperial Court's drag performances are strictly tailored based on age group, with some performances for adults-only and other performances for all-ages. We take steps to ensure that minors do not attend shows intended for our adult-only audiences…The all-ages drag performances we put on are appropriate for anybody…The costumes for these all-ages performances are also age-appropriate, with exhaustive guidelines outlining what is and is not appropriate costuming for an all-ages show…

(Doc. 5-3 at 4.) Imperial Court also makes clear that it is well within its ability to produce drag shows under HB 359, whether it be through increased age restrictions, modified costuming, or other adaptations, having done so repeatedly since the Bill was enacted. (*See Id.* at 6-7.) In other words, even Imperial Court agrees that certain variations of *its own art* are inappropriate for children, and they can and do take measures to prevent children from seeing it.

Plaintiffs cannot seriously challenge the legitimate interest of the state in regulating indecent or inappropriate conduct to minors. *Sable*, 492 U.S. at 126.

Throughout their complaint, they implicitly acknowledge the legitimate sweep of the law. Doc. 3, *generally*. What they cannot show is that the whole of HB 359 is substantially overbroad compared to the Bill's legitimate regulation of inappropriate and indecent conduct to minors.

Furthermore, the Legislature's intent underlying HB 359's conditioning of state funding as set forth in Section 3 is clear and proper. "Because nothing requires government to assist others in funding the expression of particular ideas, including political ones, [the] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." *Interpipe Contr., Inc.*, 898 F.3d at 886. *See also Rust v. Sullivan*, 500 U.S. 173, 193 (1991). Section 3(1), (2), and (3)(b) simply deny state subsidies for the covered conduct. Those entities—so long as they comply with Section 2—may still host sexually oriented performances and drag story hours, they must just forgo state subsidies. That is plainly within the State's legitimate authority. *Interpipe*, 898 F.3d at 886. This is another considerable portion of the Bill's plainly legitimate sweep.

Plaintiffs read HB 359 broader than the statutory text allows. The Bill does not prevent non-age-restricted sexually oriented performances at non-publicly funded private property. The Bill does not restrict drag show story hours at libraries or schools after regular hours, or as part of non-school sanctioned extracurricular activities. Nor does Section 3(3) apply to performances that are not intended to

appeal to a prurient interest in sex. In other words, contrary to Plaintiffs claims, the Bill incorporates understood legal terms and legitimate extensions of state authority to protect minors. *Sable*, 492 U.S. at 126.

On balance, Plaintiffs cannot establish that HB 359's alleged overbreadth is substantial, not only in an absolute sense, but also relative to the Bill's plainly legitimate sweep. Plaintiffs therefore fail to sustain their heavy burden of justifying the "strong medicine" of facial invalidation, particularly at this stage where the extraordinary and drastic remedy of a preliminary injunction is at issue. Plaintiffs Motion therefore fails.

## B.     HB 359 Is Not Void for Vagueness.

Although "vagueness concerns are more acute when a law implicates First Amendment rights," *Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001), "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794. Instead, "[t]he touchstone of a facial vagueness challenge in the First Amendment context [] is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled." *Cal. Teachers Ass'n*, 271 F.3d at 1152 (emphasis in original). It follows that "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended

applications.'" *Id.* at 1151 (quoting *Hill v. Colo.*, 530 U.S. 703, 733, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000)). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306.

Ultimately, facial invalidation of a statute is "strong medicine" that should be employed "sparingly and only as a last resort." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998). Thus, the party seeking facial invalidation, even in the First Amendment context, bears "a heavy burden" in advancing their claim. *Id. See also Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (observing that the United States Supreme Court has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines). *See also Williams*, 553 U.S. at 305—06 ("[T]he Eleventh Circuit's error is more fundamental than merely its selection of unproblematic hypotheticals. Its basic mistake lies in the belief that the mere fact that close cases can be envisioned renders a statute vague. That is not so. Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.").

Here, it is clear what HB 359 proscribes in the vast majority of its intended applications—intentional exposure of minors to indecent and potentially harmful

conduct in locations and contexts where such exposure is likely to occur. These applications are further clarified by the Bill's defined terms, other terms defined in law, the plain meaning of its terms, narrowing context, and the Legislature's obvious underlying intent. *See* Section I(A)(i), *supra*. Plaintiffs pick at the margins of the Bill's provisions to highlight close cases and problematic hypotheticals, but this does not render the Bill facially unconstitutional. *Cal. Teachers Ass'n*, 271 F.3d at 1152. Even if the Court finds the Bill to be lacking perfect clarity and precise guidance, that is not enough to maintain Plaintiffs' facial vagueness claim.

As with their First Amendment facial overbreadth challenge, Plaintiffs cannot sustain their heavy burden on their Fifth Amendment facial vagueness claim. Plaintiffs' Motion fails for this reason as well.

### C.    PLAINTIFFS FAIL TO DEMONSTRATE STANDING.

Article III of the United States Constitution "limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "[T]he party invoking federal jurisdiction[] bears the burden of establishing" standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, the plaintiff must show "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022). "And standing is not dispensed in gross; rather, plaintiffs

must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). In the Eleventh Amendment context, the injury must be specific to the named state defendants, not the state *generally. Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021)

### 1. Plaintiffs Cannot Demonstrate Any Cognizable Injury at This Stage.

The alleged injury at the core of Plaintiffs' facial overbreadth and vagueness claims under Counts IV and V is HB 359's purported chilling effect on their First Amendment rights. However, as the Supreme Court's cases explain, "the 'chilling effect' associated with a potentially unconstitutional law being 'on the books' is insufficient to 'justify federal intervention' in a pre-enforcement suit." *Jackson*, 142 S. Ct. at 538 (quotation marks omitted) (quoting *Younger* v. *Harris*, 401 U.S. 37, 42, 50-51, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). Instead, the Supreme Court "has always required proof of a more concrete injury and compliance with traditional rules of equitable practice." *Id.* (citations omitted). "The Court has consistently applied these requirements whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." *Id.* Here, Plaintiffs have made no allegation of any actual enforcement action taken by the State Defendants, and they are not entitled to any special exemption.

Since HB 359's effective date, Plaintiffs allege numerous instances of purportedly covered conduct occurring. *See, e.g.*, Doc. 5-3 at 6-7. This weighs against an actual injury because the facts show the Plaintiffs engaged in the conduct they sought to engage in related to the State Defendants. No actual injury occurred in those situations and Plaintiffs fail to demonstrate that the State Defendants are likely to enforce the law against future similar conduct. Plaintiffs accordingly fail to satisfy the injury element of Article III standing.[5]

### 2. Plaintiffs Cannot Establish Causation with Respect to the State Defendants.

Even if Plaintiffs asserted a proper injury, that injury is neither "fairly traceable" to the State Defendants nor redressable by injunctive relief against them. The "fairly traceable" prong determines "whether the plaintiffs' injury can be traced to [the] allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (internal quotation marks omitted). An injury is "fairly traceable" where there is a causal connection between the injury and the defendant's challenged conduct. *Wit v. United Behav. Health*, 58 F.4th 1080, 1093 (9th Cir. 2023)

---

[5] Plaintiffs seek to enjoin Section 4. But none of the State Defendants, nor any other named Defendant, is a proper party related to that section. *Jackson*, 142 S. Ct. at 535 ("'[A] federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions. But under traditional equitable principles, no court may 'lawfully enjoin the world at large,'…or purport to enjoin challenged 'laws themselves[.]'"). The Court, therefore, cannot entertain any claims against Section 4.

(quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[P]laintiffs must allege that their injuries are 'fairly traceable' to [the defendant's] conduct and 'not the result of the independent action of some third party not before the court.'" *Winsor v. Sequoia Benefits & Ins. Servs., L.L.C.*, 62 F.4th 517, 525 (9th Cir. 2023) (quoting *Lujan,* 504 U.S. 555, 560).

### *Attorney General Austin Knudsen*

Plaintiffs fail to show, or even plausibly allege, that any of the alleged injuries are traceable Attorney General Knudsen. No causal connection is established because there is not one to find. First, none of the Plaintiffs are under any imminent threat of criminal prosecution, and they have not alleged that the Attorney General has sought or will seek to prosecute them under any provision of HB 359.

Second, HB 359 does not specifically provide the Attorney General with any enforcement powers, and he does not initiate prosecutions, as outlined by his general duties set forth in § 2-15-501, MCA. "Montana law places the authority to initiate a criminal prosecution within the 'broad discretion' of the county attorney." *Price v. Kirkegard*, No. CV 12-22-BLG-CSO, 2013 U.S. Dist. LEXIS 24795, at *18 (D. Mont. Feb. 22, 2013) (quoting *State v. Tichenor*, 2002 MT 311, 313 Mont. 95, 60 P.3d 454, 459 ¶ 26 (Mont. 2002)). This has been a consistent practice engrained within Montana law for decades. "At the outset in a criminal case we note a complete absence of any constitutional or statutory power vested

in the attorney general to file an information or initiate a prosecution independent of the county attorney." *State ex rel. Woodahl v. Dist. Court*, 159 Mont. 112, 116, 495 P.2d 182, 185 (1972).

Although the Attorney General may have a supervisory role over a county attorney in matters pertaining to their office, and may, when required by the public service or governor, assist the county attorney in the discharge of their duties, the power remains at the county attorney level to initiate a prosecution, should an investigation by law enforcement occur. § 2-15-501, MCA (5), (6). This is reflected in HB 359's provisions regarding the revocation of a business license: "if applicable, the *county* or *municipality* shall revoke the business license held by the offender." Doc. 5-1 at 3-4. The county attorney, as provided by law, is the public prosecutor and would be empowered to bring any charges contemplated by the Bill. § 7-4-2712, MCA. Stated differently, Plaintiffs have not been and are not be under any specific threat of enforcement by the Attorney General.

Similarly, Plaintiffs cannot trace any injury, or threat of injury, to Superintendent Arntzen. The Board of Public Education ("Board"), not the Superintendent, possesses authority to suspend or reprimand educators. § 20-4-110, MCA; *see also* Doc. 5-1 at 5 (codifying Section 3 as part of Title 20). The Superintendent may request suspension or revocation of a license, § 20-4-110(2)(b), but the Board possesses discretion over both the initiation of proceedings, investigation, and the outcome of such proceedings based on a hypothetical Superintendent request. § 20-4-110. Should the Superintendent decide to deny the issuance or renewal of a teacher, administrator, or specialist certificate, the Board hears the appeal, and the board's decision is final. *Id*.

In summary, the county attorneys and the Board are the entities with ultimate enforcement authority with respect to HB 359, and they are third parties not presently before this Court. Because Plaintiffs failed to allege any past, present, or future harm attributable to the State Defendants, they have failed to satisfy the causation element necessary for Article III standing.

### 3. Plaintiffs Fail to Establish Redressability with Respect to the State Defendants.

For the same reasons Plaintiffs can establish no causal connection between the State Defendants and any concrete injury for purposes of the Court's standing analysis, Plaintiffs cannot establish that the sought injunctive relief against the State

Defendants would amount to the requisite redress. Indeed, the State Defendants herein are not the officials or entities charged with enforcing HB 359. "To establish redressability, plaintiffs must allege that it is 'likely, as opposed to merely speculative,' that a favorable decision will redress their injuries." *Winsor*, 62 F.4th at 525 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). Not only are Plaintiffs' concerns of criminal or administrative prosecution entirely speculative, but they also failed to name the parties that would actually control the initiation and disposition of the adverse proceedings they claim to fear. Plaintiffs fail to demonstrate standing for this reason as well.

## II.  PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

"Even where a plaintiff has demonstrated a likelihood of success on the merits of a First Amendment claim, he 'must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in his favor.'" *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011) (*overruled on other grounds by Bd. of Trs. of the Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019)) (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1207 (9th Cir. 2009)).

Here, for the same reasons Plaintiffs' cannot establish the requisite injury, causation, and redressability elements of Article III standing, they cannot demonstrate the likelihood of suffering irreparable harm in the absence of a preliminary injunction.

## III. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR THE STATE DEFENDANTS.

The analyses of the public interest and balance of equities merge when the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Plaintiffs must establish that "the balance of equities tips in [their] favor." *Winter*, 555 at 20. Likewise, a district court should also consider whether a preliminary injunction would be in the public interest if "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016). "In fact, 'courts … should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). An overbroad injunction can also implicate the public interest. *Stormans*, 586 F.3d 1109.

The very fact that HB 359 is a duly enacted state statute weighs against granting an injunction here. *Golden Gate Rest. Ass'n v. City of S.F.*, 512 F.3d 1112, 1126 (9th Cir. 2008) ("The public interest may be declared in the form of

a statute."); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (A State "suffers a form of irreparable injury" any time it is prevented from "effectuating" laws "enacted by representatives of its people."). The State, and the public at large, maintain a compelling interest in enforcing HB 359—preventing minors' exposure to indecent and potentially harmful conduct. Montanans now have a statutory structure to regulate such conduct pursuant to HB 359. For the same reasons Plaintiffs cannot establish that any overbreadth of HB 359 is real and substantial in relation to the Bill's plainly legitimate sweep, they cannot establish that the balance of equities and public interest weigh in their favor for purposes of their present Motion.

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should deny Plaintiffs' Motion for Preliminary Injunction (Doc. 4).

DATED this 2ⁿᵈ day of August, 2023.

> Austin Knudsen
> Montana Attorney General
>
> */s/ Michael Russell*
> Michael Russell
> Thane Johnson
> Alwyn Lansing
> Michael Noonan
>   *Assistant Attorneys General*
> MONTANA DEPARTMENT OF JUSTICE
> P.O. Box 201401
> Helena, MT 59620-1401

Emily Jones
 *Special Assistant Attorney General*
JONES LAW FIRM, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
Phone: 406-384-7990
emily@joneslawmt.com

 *Attorneys for State Defendants*

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was
served electronically through the Court's CM/ECF system on registered counsel.

Dated: <u>August 2, 2023</u>     <u>/s/ *Michael Russell*</u>
                                Michael Russell

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this Brief in Opposition of
Plaintiff's Motion for Preliminary Injunction is printed with proportionately spaced
Times New Roman text typeface of 14 points; is double-spaced; and the word count,
calculated by Microsoft Word, is 6,378 words long, excluding Caption, Certificate
of Service and Certificate of Compliance.

<u>/s/ Michael Russell</u>