Constance Van Kley
Rylee Sommers-Flanagan
Niki Zupanic
  Upper Seven Law
  P.O. Box 31
  Helena, MT 59624
  (406) 306-0330
  constance@uppersevenlaw.com
  rylee@uppersevenlaw.com
  niki@uppersevenlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA; ADRIA JAWORT; RACHEL CORCORAN; MONTANA BOOK COMPANY; IMAGINE BREWING COMPANY, LLC d/b/a IMAGINE NATION BREWING COMPANY; BUMBLEBEE AERIAL FITNESS; THE WESTERN MONTANA COMMUNITY CENTER; MONTANA PRIDE; THE GREAT FALLS LGBTQ+ COMMUNITY CENTER; THE ROXY THEATER; and THE MYRNA LOY,<br><br>*Plaintiffs*,<br><br>vs.<br><br>AUSTIN KNUDSEN; ELSIE ARNTZEN; J.P. GALLAGHER; and THE CITY OF HELENA,<br><br>*Defendants*. | Cause No. CV-23-50-BU-BMM<br><br>**Reply in Support of Plaintiffs' Motion for a Preliminary Injunction** |

# INTRODUCTION

House Bill 359 ("HB 359") is as discriminatory as it is confusing. And it is extraordinarily confusing. Through its restrictions on poorly defined "drag story hours" and "sexually oriented performances," HB 359 targets speech based on content, viewpoint, and speaker. For those who may fall within its crosshairs, the choice is stark: quiet down or face overlapping, seemingly limitless criminal, civil, and occupational penalties. Plaintiffs ask the Court to grant their motion for a preliminary injunction and to enjoin HB 359 through the pendency of this litigation.

# ARGUMENT

Defendants Austin Knudsen and Elsie Arntzen ("State Defendants") barely respond to Plaintiffs' arguments, instead launching sideways attacks at standing and the overbreadth doctrine. But Plaintiffs have standing—their claims follow a well-trod path of First Amendment challenges. And Plaintiffs satisfy handily all four *Winter* factors. The Court should grant Plaintiffs' motion for a preliminary injunction.

## I.  Plaintiffs have standing.

The traditional rules of standing are relaxed for facial challenges under the First Amendment. *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *see also Sec'y of State of Md. v. Munson*, 467 U.S. 947, 956–57 (1984) (identifying a "lessening of prudential limitations on standing"); *Libertarian Party of L.A. Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("the inquiry tilts dramatically toward a finding of standing"). "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick,* 413 U.S. at 612.

Plaintiffs meet all three requirements for standing: (1) injury-in-fact—injury that is concrete, particularized, and actual or imminent, (2) causation, and (3) redressability. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Plaintiffs are injured by chilled speech and the threat of prosecution and occupational harm.  State Defendants cause Plaintiffs' injuries because Knudsen may initiate prosecution and Arntzen may initiate the suspension and revocation of teacher

certification. The relief sought will prevent those injuries from occurring. Plaintiffs' injuries therefore are redressable.

### A. Plaintiffs suffer injury-in-fact.

In the First Amendment context, the threat of enforcement is itself an injury. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("Where the alleged danger of legislation is one of self-censorship, harm can be realized even without an actual prosecution."). "[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) ("[W]hen a challenged statute risks chilling the exercise of First Amendment rights, the Supreme Court has dispensed with rigid standing requirements and recognized 'self-censorship' as a harm that can be realized even without an actual prosecution."). Plaintiffs thus need only show that they are subject to the threat of HB 359's enforcement. *See, e.g.*, *HM Fla.-ORL, LLC v. Griffin*, No. 6:23-CV-950-GAP-LHP, 2023 WL 4157542 at *5 (M.D. Fla. June 23, 2023); *Friends of*

*George's, Inc. v. Tennessee*, No. 2:23-CV-2163-TLP-TMP, 2023 WL 3790583 at *8–10 (W.D. Tenn. June 2, 2023).

HB 359 subjects Plaintiffs to the threat of harsh criminal, civil, and occupational penalties. The bill comprises two parts. <u>First</u>, HB 359 imposes fines, criminal penalties, and the suspension or revocation of teaching certificates for entities and employees who "allow" a "drag story hour" in contravention of the law. HB 359, § 3(2), (4) (imposing fines and teaching certificate suspension and revocation); *id.* § 5(2) (codifying restrictions in Mont. Code Ann. Title 20); Mont. Code Ann. § 20-1-207 (violations of Title 20 constitute misdemeanor criminal offenses). Plaintiffs Adria Jawort and Rachel Corcoran are both injured by this provision.

Jawort and Corcoran have standing to challenge the drag story hours provisions. Jawort was scheduled to give an educational lecture on Indigenous and transgender history at the Butte Public Library. (Doc. 5-2 at ¶ 6.) Butte-Silver Bow County canceled her speaking arrangement at the Butte Public Library—in its own words, "[b]ased on the ambiguous language of HB 359, [and] possible criminal penalties and civil liability associated with violating HB 359." (Doc. 18 at 5.) For her

*Reply in Support of Plaintiffs' Motion for a Preliminary Injunction*            5

part, Corcoran wears gendered costumes in classroom lessons, which appears to subject her to criminal, civil, and occupational penalties under HB 359's "drag story hour" ban. (Doc. 5-10 at ¶¶ 5–8). And while Corcoran does not have to "eat the proverbial mushroom" and put herself at risk of prosecution in order to demonstrate standing, *Friends of George's, Inc.*, 2023 WL 3790583, at *16, in fact she does intend to continue dressing in costumes at school, (Doc. 5-10 at ¶ 11). Both Jawort's past injury, *see Spokeo, Inc. v. Robins*, 578 U. S. 330, 341 (2016), and the threat of future prosecution against Corcoran are injuries-in-fact, *see Friends of George's, Inc.*, 2023 WL 3790583, at *14–16.

Second, HB 359 restricts what it defines as "sexually oriented performances." HB 359 prohibits "sexually oriented performances" "on public property in any location where the performance is in the presence of an individual under the age of 18" and "in a location owned by an entity that receives any form of funding from the state"—even if the audience consists only of adults. HB 359, § 3(3). And HB 359 prohibits "sexually oriented businesses" from allowing anyone under the age of 18 to enter during a "sexually oriented performance." HB 359, § 2. So-called "sexually oriented businesses" face delicensure and mandatory criminal

fines ranging from $1,000 to $10,000. HB 359, § 2(2); *see also id.* § 5(1) (codifying restrictions within Title 45, the criminal code). An entity that receives state funds in "any form" and their employees also face criminal penalties if they "allow" a sexually oriented performance on-premises. HB 359, § 3(4); *id.* § 5(2) (codifying restrictions in Title 20); Mont. Code Ann. § 20-1-207 (violations of Title 20 constitute misdemeanor criminal offenses).

Plaintiffs The Roxy Theater and The Myrna Loy both frequently have shown and will show films[1] and live events defined as "sexually oriented performances," bizarrely leading to their definition as "sexually oriented businesses" under HB 359. (Doc. 5-5 at ¶¶ 8–38; Doc. 5-6 at ¶¶ 7–16.) Both theaters face the threat of prosecution because they continue to operate their businesses as they have historically—showing performances to appropriate audiences, including minors. (Doc. 5-5 at ¶¶ 39–43; Doc. 5-6 at ¶¶ 16–21.) Further, they both have accepted state funds and therefore may be prosecuted for showing "sexually

---

[1] Defendants argue the definition of "performance" found in Montana Code Annotated § 45-8-205 exempts Motion Picture Association-rated films. This is patently untrue. Definitions found in § 45-8-205 apply only "in [Sections] 45-8-205 through 45-8-208." HB 359 will not be codified within and will not amend those sections.

oriented performances" even to adult-only audiences. (Doc. 5-5 at ¶ 3; Doc. 5-6 at ¶ 3.) The Roxy Theater and The Myrna Loy face prosecution for their speech and therefore have standing. *See Steffel*, 415 U.S. at 459.

The Montana Book Company and Imagine Nation Brewing suffer similar injuries. Both are private businesses that previously received state funding for COVID relief and at times host what HB 359 defines as sexually oriented performances—through events such as book readings or drag performances. (*See, e.g.*, Doc. 5-7 at ¶¶ 6–12.)

Additional plaintiffs self-censor out of fear of HB 359's draconian penalties. For example, the Imperial Sovereign Court of the State of Montana ("Imperial Court") organizes drag performance events, some of which may be considered "sexually oriented performances" under HB 359. (*See, e.g.*, Doc. 5-3 at ¶ 15.) Since HB 359 went into effect, the Imperial Court has had shows canceled, modified, or suspended— including a drag story hour—almost certainly because of others' fears of prosecution under the statute. (*Id.* at ¶¶ 18–23.) Moreover, the Imperial Court also has self-censored out of fear of HB 359's civil penalties. (*Id.* at ¶¶ 24–27.)

Plaintiffs have suffered or are suffering injuries-in-fact, satisfying *Lujan*'s first requirement.

### B. Defendants cause Plaintiffs' injury, and the continued injunction of HB 359 will redress the injury.

Both State Defendants play critical roles in enforcing HB 359, and they are proper defendants. Because State Defendants cause Plaintiffs' fear of criminal and occupational penalties, a court order enjoining their enforcement of the bill will redress Plaintiffs' injuries.

#### 1. Attorney General Austin Knudsen

Defendant Knudsen, the Attorney General for the State of Montana, oversees the enforcement of the State's criminal laws. Knudsen's legal duties require him "to exercise supervisory powers over county attorneys in all matters pertaining to the duties of their offices." Mont. Code Ann. § 2-15-501(5). This supervisory power is not purely administrative—it "include[s] the power to <u>order and direct</u> county attorneys in all matters pertaining to the duties of their office," such as by "order[ing] or direct[ing]" county attorneys to "promptly institute and diligently prosecute . . . any criminal or civil action." *Id.*; *see Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920–21 (9th Cir. 2004)

(attorney general appropriately named when, under Idaho state law, attorney general could play direct role in prosecution).

HB 359 amended Title 20 of the Montana Code to prohibit "drag story hours" in schools and libraries and "sexually oriented performances" on public property and in schools, libraries, and "location[s] owned by an entity that receives any form of funding from the state." Violations of Title 20 are prosecutable as misdemeanor criminal offenses. Mont. Code Ann. § 20-1-207. HB 359 also amended Title 45 of the Montana Code to prohibit so-called "sexually oriented businesses" from allowing minors to "enter the premises of the business during a sexually oriented performance." Violations of Title 45 are criminal offenses.

HB 359 imposes criminal penalties, and Knudsen is "the legal officer of the state" tasked with carrying out Montana's criminal code. Mont. Const. art VI, § 4(4). Knudsen is thus a proper defendant. *See Planned Parenthood of Idaho*, 376 F.3d at 920–21.

### 2. Superintendent of Public Instruction Elsie Arntzen

Defendant Arntzen is the Montana Superintendent of Public Instruction. Arntzen is responsible for the general supervision of

Montana public schools and districts and for "issu[ing], renew[ing], or deny[ing] teacher certification and emergency authorizations of employment." Mont. Code Ann. § 20-3-106(2). HB 359 requires suspension and/or revocation of a teacher's certificate if the teacher, or an invited guest, "reads children's books and engages in other learning activities with minor children present" while "adopt[ing] a flamboyant or parodic [male or female] persona with glamorous or exaggerated costumes and makeup." HB 359, §§ 1(1)–(3), 3(4).

Because Arntzen oversees teacher certification, she is a proper defendant. State Defendants argue that the Board of Public Education actually decertifies teachers, but once again, State Defendants omit Arntzen's direct role with respect to teacher certification. The Board of Public Education's policies on teacher certification are made "upon the recommendation of the superintendent of public instruction," Mont. Code Ann. § 20-4-102, and the Board of Public Education initiates suspension or revocation proceedings upon the Superintendent's request, Mont. Code Ann. § 20-4-110(2)(b). Arntzen has direct supervisory control over certification and therefore is a proper defendant.

### 3. *Whole Woman's Health* is inapplicable.

The State relies on *Whole Woman's Health v. Jackson*, but that case is inapposite because it involved a challenge to a law authorizing only private civil actions. 142 S. Ct. 522, 529 (2021). The defendants included the Texas Attorney General, a state judge, and a state court clerk. *Id.* With respect to the judge and clerk, the Court determined that "no case or controversy" exists "between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." *Id.* at 532 (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984)). The Court also determined that the Attorney General lacked any "enforcement authority . . . in connection with the law that a federal court might enjoin him from exercising." *Id.* at 534. The Court made this determination because the Texas law contained only a private right of action. *Id.*

HB 359 imposes criminal and civil sanctions, unlike the Texas law in *Whole Woman's Health*. Because State Defendants have a role in carrying out HB 359, they can be enjoined from doing so. *Ex parte Young*, 209 U.S. 123, 159–60 (1908).

*Reply in Support of Plaintiffs' Motion for a Preliminary Injunction* 12

Additionally, the private right of action in HB 359 cannot be disentangled from the rest of HB 359 because the private right of action <u>relies upon</u> the criminal and civil sanction provisions that would be carried out by governmental parties. The State Defendants' own description of the private right of action makes this plain: "Section 4 establishes a private right of action. A minor who attends a performance <u>in violation of Sections 2 or 3</u> or the minor's parent or legal guardian 'may bring an action against a person who knowingly promotes, conducts, or participates as a performer in the performance.'" (Doc. 17 at 3–4.) The private right of action rests on the enforceability of Sections 2 and 3 for its foundation.

## II. A preliminary injunction is a necessary remedy based on the *Winter* factors.

State Defendants attempt to cabin or otherwise misstate Plaintiffs' First Amendment claim. State Defendants present Plaintiffs' First Amendment claim (Claim IV) as if it were a pure overbreadth challenge. But Plaintiffs do not rely exclusively on overbreadth. HB 359 is a content- and viewpoint-based restriction on speech, intended to target speech for its content. It cannot survive strict scrutiny because it does

not further a compelling state interest, is overbroad, and is underinclusive. (Doc. 5 at 12–30.) Overbreadth is just <u>one</u> reason HB 359 cannot survive strict scrutiny, and State Defendants fail entirely to address Plaintiffs' additional arguments showing the lack of a compelling state interest and underinclusiveness. Plaintiffs will respond only to Defendants' arguments, but State Defendants' failure to address whether HB 359 otherwise satisfies strict scrutiny is reason enough to reject their response.

> A. **Plaintiffs are likely to succeed on the merits because HB 359 fails strict scrutiny review and is void for vagueness.**
>
> 1. **HB 359 is a content-based restriction on speech.**

State Defendants argue, in a single paragraph, that HB 359 is content-neutral. They argue HB 359 targets "the harmful secondary effects of sexually expressive conduct on minors." (Doc. 17 at 19.) Neither law nor logic support this mindboggling argument. Indeed, it is contradicted by State Defendants' own citation to *Ward v. Rock Against Racism*. In *Ward*, the Court held that laws are content-based restrictions on speech when they cannot be "justified without reference to the content of the regulated speech" or were adopted "because of disagreement with

the message" conveyed. 491 U.S. 781, 791 (1989) (upholding content-neutral municipal noise regulation).

Further, legislators' concern with the effects of regulated speech does not give them license to infringe speech. HB 359 prohibits specific categories of speech—drag and "sexually oriented" speech—based on content, viewpoint, and speaker. HB 359 targets speech based on its communicative content and applies to particular speech because of the idea or message expressed. This is the definition of a content-based restriction. *See City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)); *see also Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209–12 (1975) (restriction on showing films with nudity at a drive-in theater "discriminates against movies solely on the basis of content"). HB 359 is presumptively unconstitutional and subject to strict-scrutiny review. *Reed*, 576 U.S. at 163.

### 2. HB 359 is overbroad.

HB 359 is even more clearly overbroad given State Defendants' claim that HB 359's purpose is "preventing minors' exposure to indecent and potentially harmful conduct." (Doc. 17 at 34.) First, Montana law

already protects minors from obscene conduct, (*see* Doc. 5 at 13)—indeed, both Florida and Tennessee district courts found similar laws overbroad for precisely this reason, *Friends of George's*, 2023 WL 2755238 at *27; *HM Fla.-ORL*, 2023 WL 4157542 at *7–8. Second, the State has not argued meaningfully that the speech targeted by HB 359—beyond the obscenity already prohibited—is potentially harmful to children. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) ("The State must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution.") (cleaned up). And third, the State's suggested purpose of HB 359 is betrayed by the fact that HB 359 also prohibits <u>adults</u> from viewing "sexually oriented performances" in state-funded locations. HB 359, § 3(3)(b). A bill that regulates the content adults can view is necessarily overbroad if its stated purpose is restricting content available to minors.

### 3. HB 359 is void for vagueness.

State Defendants recognize that "vagueness concerns are more acute when a law implicates First Amendment rights," *Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001), but argue that only the margins of HB 359 are vague. Not so. HB 359 leaves many

terms undefined, and thus is "vulnerable to broad subjectivity which ultimately leaves an individual of common intelligence to 'necessarily guess at [their] meaning.'" *HM Fla.-ORL*, 2023 WL 4157542, at \*8 (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)). HB 359 does not define "flamboyant," "glamorous," "parodic," "sexual activity," "prosthetic," "salacious," or "lewd"—one of the many flaws specifically identified by the District of Florida in *HM Fla.-ORL, LLC*, 2023 WL 4157542, at \*3. And even when words are defined, the definitions cut against common sense: for example, HB 359 defines "nude" to include "clothed in a manner" that displays any portion of the buttocks, and "stripping" to include the "simulated removal of clothing." HB 359, § 1.

Plaintiffs are likely to succeed on the merits of their claim.

### B. Plaintiffs will suffer irreparable injury without an injunction.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012). Plaintiffs have shown the loss of First Amendment freedom, so this element tips sharply in their favor.

### C. The balance of the equities and the public interest favor enjoining HB 359.

As to the third and fourth *Winter* factors, Defendants claim only that HB 359 could further a public interest in preventing minors' exposure to indecent and potentially harmful conduct. (Doc. 17 at 34.) This argument lacks any supporting evidence, *see Brown,* 564 U.S. at 800, or reasoning why existing obscenity law does not suffice, *Friends of George's, Inc.*, 2023 WL 2755238, at *7. Because the State has no legitimate interest in suppressing speech, the balance of the equities and the public interest support enjoining HB 359.

## CONCLUSION

Plaintiffs ask the Court to grant their motion for a preliminary injunction.

DATED this 15th day of August, 2023.

/s/ *Constance Van Kley*
Constance Van Kley
Rylee Sommers-Flanagan
Niki Zupanic
UPPER SEVEN LAW

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Per Local Rule 7.1(d)(2)(E), I certify that this reply brief in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction includes 3,188 words, excluding caption, certificate of compliance, table of contents and authorities, exhibit list, and certificate of service, as counted by Microsoft Word's word count feature.

/s/Constance Van Kley
UPPER SEVEN LAW

*Attorney for Plaintiffs*