Constance Van Kley
Rylee Sommers-Flanagan
  Upper Seven Law
  P.O. Box 31
  Helena, MT 59624
  (406) 306-0330
  constance@uppersevenlaw.com
  rylee@uppersevenlaw.com

Niki Zupanic
  Zupanic Law PLLC
  P.O. Box 1982
  Helena, MT 59624
  (406) 461-5178
  niki@zupaniclaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA; ADRIA JAWORT; RACHEL CORCORAN; MONTANA BOOK COMPANY; IMAGINE BREWING COMPANY, LLC d/b/a IMAGINE NATION BREWING COMPANY; BUMBLEBEE AERIAL FITNESS; THE WESTERN MONTANA COMMUNITY CENTER; MONTANA PRIDE; THE GREAT FALLS LGBTQ+ COMMUNITY CENTER; THE ROXY THEATER; and THE MYRNA LOY,<br><br>*Plaintiffs*,<br><br>vs.<br><br>AUSTIN KNUDSEN; ELSIE ARNTZEN; J.P. GALLAGHER; and THE CITY OF HELENA,<br><br>*Defendants*. | Cause No. CV-23-50-BU-BMM<br><br>**Brief in Support of Plaintiffs' Motion for Summary Judgment on Counts IV & V** |

# TABLE OF CONTENTS

Table of Authorities ............................................................... iii

Exhibit List ........................................................................ vii

Introduction ......................................................................... 1

Background ........................................................................... 2

    I.   HB 359 ....................................................................... 2

        A. Drag Story Hours ............................................... 2

        B. Sexually Oriented Performances ........................... 3

        C. Legislative History............................................... 6

        D. HB 359's Effect.................................................... 9

Legal Standards .................................................................. 11

Argument ........................................................................... 11

    I.   Plaintiffs have standing .............................................. 12

        A. Plaintiffs suffer injury-in-fact ............................. 12

        B. The harm is traceable to Defendants, and striking HB 359 will redress Plaintiffs' injuries .............................................. 14

        C. Plaintiffs Imperial Court and the Centers also have organizational standing........................................... 17

    II.   HB 359 is an unconstitutional restriction on speech in violation of the First Amendment .............................................. 18

A. HB 359 regulates protected non-obscene speech and expressive conduct ................................................. 18

B. HB 359 is a content- and viewpoint-based restriction on speech and therefore subject to strict scrutiny ................... 20

    1. HB 359 is facially content-based .............................. 21

    2. HB 359 discriminates on the basis of viewpoint....... 23

    3. HB 359 was intended to discriminate against drag performances ........................................................... 24

C. HB 359 does not survive strict scrutiny and therefore violates the First Amendment............................................... 25

III. HB 359 is unconstitutionally vague............................................ 29

Conclusion ............................................................................................ 33

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......................................................... 11

*Animal Legal Def. Fund v. Wasden*,
878 F.3d 1184 (9th Cir. 2018) ........................................ 21

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) ........................................................ 25

*Boos v. Barry*,
485 U.S. 312 (1988) ........................................................ 21

*Butcher v. Knudsen*,
38 F.4th 1163 (9th Cir. 2022) ........................................ 29

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) ........................................................ 26

*City of Chicago v. Morales*,
527 U.S. 41 (1999) .......................................................... 30

*Erznoznik v. Jacksonville*,
422 U.S. 205 (1975) ............................................ 23, 26, 27

*Ex parte Young*,
209 U.S. 123 (1908) ........................................................ 16

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ........................................................ 29

*Fellowship of Christian Athletes v.*
*San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023) (en banc) .......................... 17

*First Nat'l Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978) ........................................................... 24

*Friends of George's, Inc. v. Tennessee*,
    No. 2:23-CV-2163-TLP-TMP,
    2023 WL 3790583 (W.D. Tenn. June 2, 2023) .................. 13, 22–24

*Grayned v. City of Rockford*,
    408 U.S. 104, 109 (1972) ................................................... 30

*HM Fla.-ORL, LLC v. Griffin*,
    No. 6:23-CV-950-GAP-LHP,
    2023 WL 4157542 (M.D. Fla. June 23, 2023) ........ 13, 22, 28, 30–33

*Human Life of Wash. Inc. v. Brumsickle*,
    624 F.3d 990 (9th Cir. 2010) ............................................. 12

*Kois v. Wisconsin*,
    408 U.S. 229 (1972) ........................................................... 19

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ........................................................... 30

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................... 12

*Miller v. California*,
    413 U.S. 15 (1973) ......................................................... 18–20

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) ........................................................... 21

*Planned Parenthood of Idaho, Inc. v. Wasden*,
    376 F.3d 908 (9th Cir. 2004) ............................................. 15

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992), ............................................... 18, 23, 25

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ..................................................... 18, 21, 24–26

*Reno v. ACLU,*
    521 U.S. 844 (1997) ......................................................... 27

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
    515 U.S. 819 (1995) ..................................................... 20, 21, 23, 25

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,*
    44 F.4th 867, 879 (9th Cir. 2022) .................................................. 17

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,*
    502 U.S. 105 (1991) ......................................................... 23

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ......................................................... 12

*Tawakkol v. Vasquez,*
    81 F.4th 397 (5th Cir. Aug. 24, 2023) .......................................... 15

*United States v. O'Brien,*
    391 U.S. 367 (1968) ......................................................... 21

*United States v. Playboy,*
    529 U.S. 803 (2000) ...................................................... 21, 28

*United States v. Williams,*
    553 U.S. 285 (2008) ......................................................... 29

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
    455 U.S. 489 (1982) ......................................................... 30

*Virginia v. Am. Booksellers Ass'n, Inc.,*
    484 U.S. 383 (1988) ......................................................... 12

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ......................................................... 24

*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) ........................................................ 16

*Woodlands Pride, Inc. v. Paxton*,
    --- F. Supp. 3d ---, 2023 WL 6226113,
    (S.D. Tex. Sept. 26, 2023).......................................*passim*

## Constitutional Provisions & Statutes

Fed R. Civ. P. 56 ................................................................. 11

Mont. Code Ann. § 2-15-501.................................................. 15

Mont. Code Ann. § 20-3-106............................................. 15, 16

Mont. Code Ann. § 20-4-110.................................................. 16

Mont. Const. art. IV ............................................................ 15

## Other Authorities

H. 359, Mont. 68th Leg., Reg. Sess. (2023) .................................. 2–5, 19

S. 458, Mont. 68th Leg., Reg. Sess. (2023) ................................. 8

## Exhibits to the Statement of Undisputed Facts

Exhibit 1............................. HB 359, Version 1 (introduced Jan. 28, 2023)

Exhibit 2................................................. HB 359, Version 3 (Apr. 14, 2023)

Exhibit 3.............................. HB 359, Version 4 (introduced Apr. 17, 2023)

Exhibit 4.......................HB 359, Final Version (introduced Apr. 26, 2023)

Exhibit 5............................... Declaration of Adria Jawort (July 17, 2023)

Exhibit 6...........................Declaration of Rachel Corcoran (July 17, 2023)

Exhibit 7......................... Declaration of Annatheia Smith (July 17, 2023)

Exhibit 8...........................Declaration of Mitchell Locher (Nov. 22, 2023)

Exhibit 9........................... Declaration of James Bamfield (Nov. 22, 2023)

Exhibit 10........................ Declaration of Sabrina Malecek (July 17, 2023)

Exhibit 11...........................Declaration of Mike Steinberg (July 17, 2023)

Exhibit 12...............................Declaration of Krys Holmes (July 16, 2023)

Exhibit 13...............................Declaration of Chelsia Rice (July 17, 2023)

Exhibit 14............................. Declaration of Tim Graham (Nov. 16, 2023)

Exhibit 15.............................. Declaration of Kevin Hamm (July 17, 2023)

Exhibit 16............................. Declaration of Andy Nelson (Nov. 22, 2023)

Exhibit 17..................... Declaration of Ronald Waterman (Nov. 21, 2023)

## INTRODUCTION

In an apparent race to the bottom, several state legislatures recently passed laws limiting or banning drag performances. While courts universally have held that these laws violate the First and Fifth Amendments, Montana's drag ban—House Bill 359 ("HB 359")—brings home the trophy. Targeted in its intent, broad in its effect, and impossibly vague in its application, HB 359 cannot withstand constitutional review.

Plaintiffs' motion for summary judgment on Counts IV and V of the First Amended Complaint should be granted. First, HB 359 is a content- and viewpoint-based restriction on speech; it advances no interest beyond animus; and it is not even tailored to that interest, sweeping in speech far beyond drag. Second, HB 359 is more than confusing—it is impossible to understand and apply, leaving Montanans to guess whether their speech will subject them or others to jail time and criminal penalties. HB 359 is facially unconstitutional and should be permanently enjoined.[1]

---

[1] Counts IV and V are facial challenges brought exclusively against Defendants Austin Knudsen and Elsie Arntzen ("State Defendants"). Counts I and II are as-applied challenges brought by Plaintiff Adria Jawort against Defendant J.P. Gallagher. With Plaintiffs' consent, the Court dismissed Counts I and II against Defendant Knudsen.

## BACKGROUND

### I.   HB 359

#### A. Drag Story Hours

HB 359 defines a "drag story hour" as "an event hosted by a drag queen or drag king who reads children's books and engages in other learning activities with minor children present."  Pls.' Statement of Undisputed Facts ("SUF") ¶ 32; Ex. 4, HB 359, § 1(3).  A "drag king" or "drag queen" is "a male or female performer who adopts a flamboyant or parodic ['male' or 'feminine'] persona with glamorous or exaggerated costumes and makeup."  SUF ¶ 34; HB 359, § 1(1), (2).  The bill does not define the terms "other learning activities," "flamboyant," "parodic," "glamorous," "exaggerated," "costumes," or "makeup."  SUF ¶ 35; HB 359, § 1.

HB 359 prohibits holding a "drag story hour" in "[a] school or library that receives any form of funding from the state . . . during regular operating hours or at any school-sanctioned extracurricular activity."  SUF ¶ 31; HB 359, § 3(2).  Those who violate the prohibition face criminal, civil, and occupational penalties.  SUF ¶¶ 36–40; HB 359, §§ 3, 4.

### B. Sexually Oriented Performances

HB 359 prohibits and restricts "sexually oriented performances."

As defined, a "sexually oriented performance" is

> a performance that, regardless of whether performed for consideration, is intended to appeal to the prurient interest and features:
>
> (a) the purposeful exposure, whether complete or partial, of:
>
> > (i) a human genital, the pubic region, the human buttocks, or a female breast, if the breast is exposed below a point immediately above the top of the areola; or
> >
> > (ii) prosthetic genitalia, breasts, or buttocks;
>
> (b) stripping; or
>
> (c) sexual conduct.

SUF ¶ 42; HB 359, § 1(10).

The definition of "sexually oriented performance" is not limited to live events.   SUF ¶ 47; HB 359, § 1.   Nor is "stripping" limited to performances involving complete or partial nudity; it even extends to cover the "simulated removal" of clothing in a "sexual manner."   SUF ¶ 45; HB 359, § 1(11).   HB 359 does not define "sexual manner."   SUF ¶ 46; HB 359, § 1.   "Sexual conduct" is not defined within the "sexually oriented performances" definition.   A separate subsection of the bill

defines "sexual conduct" by cross-reference, but that subsection—which defines "sexually oriented"—oddly is not incorporated into the definition of "sexually oriented performance." SUF ¶¶ 43–44; HB 359 § 1(8).

Even when minors are not present, HB 359 prohibits outright "sexually oriented performances" in "[a] library that receives any form of funding from the state," "on public property in any location where the performance is in the presence of an individual under the age of 18," and "in a location owned by an entity that receives any form of funding from the state." SUF ¶ 49; HB 359, § 3. Schools may not allow sexually oriented performances "during regular operating hours or at any school-sanctioned extracurricular activity." SUF ¶ 50.

HB 359 also restricts "sexually oriented performances" in "sexually oriented businesses" to adult-only audiences. A "[s]exually oriented business" is defined as

> a nightclub, bar, restaurant, or similar commercial enterprise that:
>
> (a) provides for an audience of two or more individuals:
>
>> (i) live nude entertainment or live nude performances; or
>>
>> (ii) a sexually oriented performance; and

authorizes on-premises consumption of alcoholic beverages. SUF ¶ 52, HB 359, § 1(9).

Violators of the provisions governing "sexually oriented performances" face various criminal and administrative penalties. Business owners, operators, managers, and employees of "sexually oriented businesses" must pay mandatory criminal fines starting at $1,000, and the business may lose its license. SUF ¶¶ 53–55; HB 359, §§ 2–4. Upon conviction, "[a] library, a school, or library or school personnel, a public employee, [a state-funded entity], or an employee of the entity" "shall be fined $5,000"—also a criminal penalty. SUF ¶ 54; HB 359, § 3(4).

Civil liability also looms for anyone who "knowingly promotes, conducts, or participates as a performer" in a "sexually oriented performance." SUF ¶ 55, HB 359, § 4(1). Any minor who attends a "sexually oriented performance"—even with a guardian's consent—may sue within ten years. SUF ¶ 55, HB 359, § 4(3). Plaintiffs who prevail under HB 359 are entitled to $5,000 in statutory damages, attorney's fees and costs, and "actual damages, including damages for psychological, emotional, economic, and physical harm." SUF ¶ 55, HB 359, § 4(2).

### C. Legislative History

Representative Braxton Mitchell introduced HB 359 on January 31, 2023.  SUF ¶ 1.  Both the original and final versions of HB 359 were calculated to prevent minors from attending drag performances or drag story hours.  *Id.* ¶¶ 2–7.

Over the course of the legislative session and many amendments, a single motivation emerged—to stamp out what Representative Mitchell described as a "sick agenda" to expose children to drag.  *Id.* ¶ 4.  Proponents claimed, without evidence, that drag performers and their supporters were on a mission to expose children to "hypersexualized" content.  *Id.*  Proponent Jeff Laszloffy testified, "[T]here are no little kids out there begging to be told a story by a drag queen.  But suddenly, for some strange reason, drag queens are begging to tell stories to little kids."  *Id.* ¶ 5.  Jessie Browning added, "Drag queens have been inserting themselves in areas children frequent," and suggested that exposure to drag increases mental health disorders, sex addiction, and early onset of sexual activity.  *Id.* ¶ 6.  And another citizen proponent, Kathy Butterfield, made the case that parents should not be able to choose to bring their children to drag performances:  "Parents that support

bringing their minors to these events are just as liable as the performers and should be held accountable. . . .  Adults that support subjecting their minors to these shows are fulfilling their own dreams and affecting minors in a very, very negative and profound way for life." *Id.* ¶ 7.

Legislators and other proponents claimed that interacting with drag performers endangers children.  They cited no evidence of inappropriately sexual events occurring in Montana.  SUF ¶ 8.  Representative Mitchell explained that the bill was motivated by fear that exposure to nonconforming gender presentations would cause children to question gender norms:

> [C]hildren may adopt and accept certain stereotypes or attitudes that could lead to social, psychological, linguistic difficulties.  Children may also create an inadequate understanding of gender roles and experiences, which is damaging to their long-term social and emotional development.

SUF ¶ 9.

Shortly before the end of the legislative session, the Senate passed an amendment intended to alleviate concerns about the bill's unconstitutionality.  SUF ¶¶ 13–18, 22.  Senator Chris Friedel, who introduced the amendment, explained, "I can tell you right now, if that

bill goes as [it was written], even the most conservative judge will strike it down for unconstitutionality." *Id.* ¶ 17.

The amendment removed references to drag and instead focused on "adult-oriented performances." SUF ¶¶ 14–15. Senator Karl Glimm, who separately sponsored a successful bill "defining sex" to exclude transgender persons during the same legislative session,[2] argued that the amendment was "not friendly" because it "completely derails the intent of the legislation" by "allow[ing] all these [drag performances] under art, so it completely guts the bill." *Id.* ¶ 20. Senator Brad Molnar agreed. Noting that the bill had been motivated by a drag queen story hour at ZooMontana (a private business), he was concerned with the attempt to incorporate constitutional standards for obscenity. *Id.* ¶ 21. He argued that the amendment failed to target drag with specificity because drag story hours are not obscene in the constitutional sense:

> I don't know that a story hour for children, though performed by people in full drag, would actually be covered by this bill if it were amended in this form. In the first place I'm not sure with a six-year-old if there is a prurient interest, and I'm positive that reading to children, even in drag, would not be considered an adult-oriented performance.

---

[2] *See generally* S. 458, Mont. 68th Leg., Reg. Sess. (2023).

*Id.*

Ultimately, the amendment's opponents won the day. *Id.* ¶¶ 24–25. The House voted down the Senate amendment, and a free conference committee (comprising members of both chambers) passed the final version. SUF ¶¶ 23–29; *See* HB 359.

### D. HB 359's Effect

HB 359 already has led to event cancellations and caused citizens to self-censor their speech for fear of violating the law. Plaintiffs have seen events postponed indefinitely or outright cancelled due to HB 359. SUF ¶¶ 58–59, 71–73, 92–94. In several instances, those who canceled or postponed the event specifically cited fear of violating HB 359. *Id.* ¶¶ 58–59, 92–93, 126; *see also id.* ¶¶ 130–132.

Due to potential liability under HB 359's penalty provisions, the Imperial Sovereign Court of the State of Montana ("Imperial Court")—a Montana-based, drag-focused nonprofit organization—has modified its speech and expression to limit its risk of liability under the law. *Id.* ¶¶ 65–80. As a result of HB 359, the Imperial Court restricted all-ages drag shows and chose not to advertise its drag performances. *Id.* In fact,

at Billings Pride, held from June 22 to 24, 2023, the Imperial Court did not perform drag shows on public property out of fear of HB 359. *Id.* ¶ 76.

In addition to the Imperial Court, other performance groups and LGBTQ+ advocacy organizations—including Plaintiffs Western Montana Community Center and Great Falls LGBTQ+ Center (collectively, the "Centers"), BumbleBee Aerial Fitness, and Montana Pride—have also modified activities or faced pressure to do so. SUF ¶¶ 83–89, 92–94.

Plaintiff businesses—Imagine Nation Brewing Company, Montana Book Company, The Roxy Theater, and The Myrna Loy—are either "sexually oriented businesses" as defined by HB 359 or are unable to determine whether they are because of the bill's confusing language. SUF ¶¶ 106, 113, 120, 123. Thus, they are at risk of violating the bill's penalty provisions and must choose between complying with the law and exercising their free speech rights. *See id.*

And HB 359 directly affects both individual Plaintiffs—Adria Jawort and Rachel Corcoran. Jawort was scheduled to give an informative lecture about the history of LGBTQ+ Montanans at the Butte-Silver Bow Public Library, but her event was cancelled out of concern that it would violate HB 359. SUF ¶¶ 57–60. And Corcoran, a

Billings public school instructor, regularly dresses in gendered costumes while engaging her students in "learning . . . activities." *Id.* ¶¶ 62–64. Because this innocent activity appears to fall within the definition of "drag story hours," Corcoran fears HB 359's civil, criminal, and occupational penalties. *Id.* ¶ 64.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law . . . identif[ies] which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

Plaintiffs may bring their facial claims: they have individual, associational, and organizational standing to sue Defendants Knudsen and Arntzen. On the merits, Plaintiffs establish that, as a matter of law, HB 359 violates the First and Fifth Amendments, both of which are incorporated against the State of Montana through the Fourteenth

Amendment.  Plaintiffs' Motion for Summary Judgment on Counts IV & V should be granted.

## I.   Plaintiffs have standing.

To establish standing, (1) a plaintiff must suffer or face imminently a concrete and particularized injury (2) fairly traceable to the actions of one of the defendants (3) that will likely be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Here, Plaintiffs establish each element and have standing to bring their claims.

### A.   Plaintiffs suffer injury-in-fact.

Threat of enforcement is an injury when it chills speech.  *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("Where the alleged danger of legislation is one of self-censorship, harm can be realized even without an actual prosecution.").  "[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."  *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *see also Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) ("[W]hen a challenged statute risks chilling the exercise of First Amendment rights, the Supreme Court has dispensed with rigid

standing requirements and recognized 'self-censorship' as a harm that can be realized even without an actual prosecution.").

Accordingly, Plaintiffs need only show that they are subject to the threat of HB 359's enforcement. *See, e.g.*, *Woodlands Pride, Inc. v. Paxton*, --- F. Supp. 3d ---, 2023 WL 6226113, at *19 (S.D. Tex. Sept. 26, 2023); *HM Fla.-ORL, LLC v. Griffin*, No. 6:23-CV-950-GAP-LHP, 2023 WL 4157542 at *5 (M.D. Fla. June 23, 2023); *Friends of George's, Inc. v. Tennessee*, No. 2:23-CV-2163-TLP-TMP, 2023 WL 3790583 at *8–10 (W.D. Tenn. June 2, 2023). They are. As entities that receive state funds and show films and live performances that meet the absurd definition of "sexually oriented performances," Plaintiffs The Roxy Theater and The Myrna Loy face criminal prosecution. SUF ¶¶ 106, 113, 120, 123. They, along with Plaintiff Imagine Nation Brewing Company, serve alcohol, and are therefore—counterintuitively—"sexually oriented businesses," subject to criminal fines and prosecution. *Id.* ¶¶ 74, 80, 85.

Plaintiff Rachel Corcoran, a teacher who conducts "learning activities" with students while dressed in gendered costumes, faces criminal prosecution and occupational penalties because she continues to educate and engage creatively with students. *Id.* ¶¶ 63–64.

Further, as a result of HB 359's penalty provisions, including the threat of enforcement by Defendants Knudsen and Arntzen, all Plaintiffs suffer chilled speech.  The Imperial Court could not perform drag on the streets at Billings Pride; its events have been cancelled or postponed indefinitely; it has had to change audience age limits for events; and it has limited its advertising for drag events.  *Id.* ¶¶ 71–79.  Adria Jawort was uninvited from the Butte-Silver Bow Public Library.  *Id.* ¶¶ 57–59.  Montana Pride received permits for its annual event only after the Court granted Plaintiffs' Motion for a Temporary Restraining Order.  *Id.* ¶¶ 125–127.  The Montana Book Company, Imagine Nation Brewing Company, The Roxy Theater, and The Myrna Loy do not know whether they are able to conduct business as usual.  *Id.* ¶¶ 107, 114, 120, 123.  Bumblebee Aerial Fitness has seen events canceled.  *Id.* ¶¶ 92–94.  The Centers, understandably unsure of the law's scope and the risks of enforcement, also changed their practices.  *Id.* ¶¶ 85–89.  Plaintiffs are injured.

## B.  The harm is traceable to Defendants, and striking HB 359 will redress Plaintiffs' injuries.

In a pre-enforcement challenge, "the correct defendant is 'generally the individual tasked with enforcing the challenged act.'"  *Woodlands*

*Pride*, 2023 WL 6226113, at *8 (quoting *Tawakkol v. Vasquez*, 81 F.4th 397, 401 (5th Cir. Aug. 24, 2023)).  Attorney General Knudsen and Superintendent Arntzen are tasked with enforcing HB 359's criminal and occupational penalties.  Thus, they are proper Defendants.  (*See* Doc. 33 at 12–16.)

First, by amending Title 20 of the Montana Code, HB 359 imposes criminal penalties.  As "the legal officer of the state" tasked with enforcing Montana's criminal code, Mont. Const. art VI, § 4(4), Attorney General Knudsen may "order or direct" county attorneys to "promptly institute and diligently prosecute" any perceived violation of HB 359, Mont. Code Ann. § 2-15-501(5); *see Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920–21 (9th Cir. 2004); *Woodlands Pride*, 2023 WL 6446113, at *8; *id.* at *9 (in challenge to drag ban with "a complex enforcement mechanism," attorney general who had "some role to play in enforcing" the bill was properly named).  Because Defendant Knudsen can enforce HB 359, he is properly named.

Second, Defendant Arntzen, the Montana Superintendent of Public Instruction, is responsible for "issu[ing], renew[ing], or deny[ing] teacher certification and emergency authorizations of employment."  Mont. Code

Ann. § 20-3-106(2).  Although the Board of Public Education oversees suspension and revocation of teaching certificates, it may do so only for specific reasons, which do not appear to encompass conduct proscribed by HB 359.  Defendant Arntzen, however, possesses nearly unrestrained power to request that the Board initiate disciplinary proceedings, meaning that she may take action to enforce HB 359, Mont. Code Ann. § 20-4-110(2)(b), and making her a proper defendant.

Finally, State Defendants are not immune from Plaintiffs' claims for declaratory and injunctive relief.  Under *Ex parte Young*, sovereign immunity does not shield a state official who enforces an unconstitutional law from a claim for equitable remedies.  209 U.S. 123, 159–60 (1908). This exception requires "nothing more than the defendant to have a specific duty to enforce the challenged statute."  *Woodlands Pride*, 2023 WL 6226113, at *8 (citing *Whole Woman's Health v. Jackson*, 595 U.S. 30, 36 (2021)).  Under this rule, "the Attorney General is a proper defendant if he has sufficient enforcement connection to the challenged action."  *Id.*

Attorney General Knudsen has ultimate authority to enforce Montana's criminal code.  Similarly, Superintendent Arntzen has

ultimate authority over teacher certification. They are both properly named Defendants, and a court order restricting these Defendants from enforcing HB 359's penalty provisions will redress Plaintiffs' constitutional injuries.

### C. Plaintiffs Imperial Court and the Centers also have organizational standing.

"[A]n organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 682 (9th Cir. 2023) (en banc) (quoting *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 879 (9th Cir. 2022)). HB 359 directly implicates the missions of the Imperial Court and the Centers, which advocate for the rights of LGBTQ+ persons, including drag performers. SUF ¶¶ 65–66, 81. These organizations have been forced to use their resources in response to HB 359. *See, e.g.*, *id.* ¶¶ 74, 85, 88; *see supra* p. 9–11. All three have established organizational standing.

## II.   HB 359 is an unconstitutional restriction on speech in violation of the First Amendment.

HB 359's restrictions on speech fall firmly within the First Amendment—indeed, State Defendants have conceded that the bill is not limited to obscenity.  Doc. 33 at 21.  Because HB 359 regulates speech on the basis of its content and viewpoint, it is "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).  State Defendants cannot rebut the presumption.   HB 359 advances no compelling government interest; even if it did, it is not narrowly tailored to that interest.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  On its face, HB 359 violates the First Amendment and should be permanently enjoined.

### A.   HB 359 regulates protected non-obscene speech and expressive conduct.

Speech is obscene and falls outside the First Amendment only when all of three requirements are met.  HB 359 fails to satisfy even one.  Constitutionally "obscene" speech: (1)  "appeal[s] to the prurient interest in sex;" (2) "portray[s] sexual conduct in a patently offensive way;" and, (3) taken as a whole, "lacks serious literary, artistic, political, or scientific value."  *Miller v. California*, 413 U.S. 15, 24 (1973).

First, the only *Miller* requirement even mentioned in HB 359 is the "prurient interest in sex." SUF ¶ 42; Ex. 4, HB 359, § 1(10). But the bill fails to require that, "taken as a whole," the regulated conduct "appeals to the prurient interest," "applying contemporary community standards." *Miller*, 413 U.S. at 24 (quoting *Kois v. Wisconsin*, 408 U.S. 229, 230 (1972)). No jury could determine that "contemporary community standards" allow HB 359's blanket proscription of drag and so-defined "sexually oriented performances." *Id.* at 33.

Second, HB 359 does not merely regulate "patently offensive" speech. Even if the bill mentioned this requirement (it does not), "patently offensive" speech translates to "hard core" pornography— "[p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated," "masturbation," "excretory functions," and "lewd exhibition of the genitals." *Id.* at 25, 27. The definition does not and could not encompass "drag story hours," removing outer layers of clothing "in a sexual manner," or the partial exposure of natural or prosthetic body parts.

Third, HB 359 ignores that drag may have "serious literary, artistic, political, or scientific value," so that the First Amendment shields it from regulation.  *Id.* at 24; *see Woodlands Pride*, 2023 WL 6226113, at *14 ("[I]n addition to the pure entertainment value there are often political, social, and cultural messages involved in drag performances which strengthen the Plaintiff's position.").   Indeed, Representative Mitchell clarified that the bill intentionally avoids carveouts for artistic speech:  "The reason we have to specifically . . . say that we're prohibiting story hours is because all they do is call it art. That's how they get around it."  SUF ¶ 25.  Moreover, HB 359 regulates artistic performances even outside of drag.  For example, Plaintiffs The Roxy Theater and The Myrna Loy show films that fall within the definition of "sexually oriented performances."   SUF ¶¶ 96–100, 106, 111–13.  These films fall within no reasonable definition of pornography, and they are not obscene, but HB 359 nevertheless prohibits them.

### B.   HB 359 is a content- and viewpoint-based restriction on speech and therefore subject to strict scrutiny.

Content- and viewpoint-based restrictions on speech are subject to strict scrutiny.  *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S.

819, 829 (1995); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). HB 359 is facially content- and viewpoint-based. Further, legislative history makes clear that it was intended to target drag performances and gender nonconforming expression. *See United States v. O'Brien*, 391 U.S. 367, 375, 377 (1968). Thus, HB 359 is subject to strict scrutiny.

### 1. HB 359 is facially content-based.

"A regulation is content-based when it draws a distinction 'on its face' regarding the message the speaker conveys or 'when the purpose and justification for the law are content based.'" *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018) (quoting *Reed*, 576 U.S. at 166). HB 359 is facially content-based, triggering strict scrutiny review.

HB 359's regulation of "drag story hours" and "sexually oriented performances" "focus[] only on the content of the speech and the direct impact that speech has on [viewers]." *United States v. Playboy*, 529 U.S. 803, 811–12 (2000) (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988)). Both categories of restrictions are content-based.

First, the "drag story hour" restrictions draw an unmistakable distinction between certain learning activities based exclusively on whether the performer wears a gendered costume.  There is no reasonable argument that the "drag story hour" ban is content-neutral.

Second, because HB 359 extends far beyond obscenity, it is no defense that the restrictions on "sexually oriented performances" were motivated by "concern for the effect of the subject matter on young viewers." *Id.* at 811.  Indeed, this is strong evidence that the restriction is content-based.  HB 359 "does not restrict the attendance of children from all live performances, only those engaged in the portrayal of a specific, enumerated subset of content." *HM Florida*, 2023 WL 4157542, at *7; *see also Woodlands Pride*, 2023 WL 6226113, at *15 (state drag ban "targets conduct deemed to be 'sexual oriented [sic].' That alone suggests a content-based restriction"); *Friends of George's,* 2023 WL 3790583, at *19 (drag ban "draws distinctions based on the message a speaker conveys: adult-oriented performances that are harmful to minors are sanctioned with a criminal penalty while others are not").

Although the vagaries of HB 359 make it impossible to ascertain the limits of the covered conduct—a separate constitutional red flag, *see*

*infra* § III—what is clear is equally damning: HB 359 unequivocally targets drag and the expression of certain views relating to human sexuality.  HB 359 singles out subsets of non-obscene performances.  This is the definition of a content-based restriction.  *See Erznoznik v. Jacksonville*, 422 U.S. 205, 209–12 (1975) (restriction on showing films with nudity at a drive-in theater "discriminates against movies solely on the basis of content").

HB 359 is a content-based restriction on speech.

### 2. HB 359 discriminates on the basis of viewpoint.

But that's not all.  HB 359's plain text also discriminates on the basis of viewpoint—"an egregious form of content discrimination," *Rosenberger*, 515 U.S. at 829—"rais[ing] the specter that the Government may effectively drive certain ideas or viewpoints from the market place." *R.A.V.*, 505 U.S. at 387 (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991)).  "When 'the legislature's suppression of speech suggests an attempt to give one side of a debatable public question an advantage in expressing its views to the people, the First Amendment is plainly offended.'"

*Woodlands Pride*, 2023 WL 6226113, at \*17 (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 785–86 (1978)).

HB 359 targets drag shows and drag performers—indeed, the bill singles out "drag story hour[s]." HB 359 § 1(3). By expressly setting its sights on drag queens and drag kings, HB 359 "goes beyond mere content-based discrimination"; "it is now directed at the specific act of impersonating or exaggerating a sex other than the one a performer is assigned." *Woodlands Pride*, 2023 WL 6226113, at \*17; *see also Friends of George's*, 2023 WL 3790583, at \*20 (direct regulation of the "male or female impersonator" is a viewpoint-based regulation of speech).

### 3. HB 359 was intended to discriminate against drag performances.

The Court need not reach the issue of legislative intent where, as here, a law facially discriminates against speech on the basis of content and viewpoint. *See Reed*, 576 U.S. at 167; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). But the legislative intent could not be clearer: it is no accident that HB 359 is a targeted, content-based restriction on speech. The bill's sponsor specifically emphasized the need for the bill to protect children from "the mature themes surrounding drag shows and the exposure to inappropriate activities." SUF ¶ 9. He

claimed, without any evidence or explanation of the purported dangers, that drag performances may "create an inadequate understanding of the gender roles and experiences" for children. *Id.* And legislators ultimately rejected a more neutral amendment specifically because it was insufficiently focused on drag. *Id.* ¶¶ 20–21, 25–29. Motivated by an irrational and unevidenced moral panic, legislators took aim at drag performers and the LGBTQ+ community. Under any potentially applicable method of analysis, strict scrutiny applies.

### C. HB 359 does not survive strict scrutiny and therefore violates the First Amendment.

Because it discriminates based on content and viewpoint, HB 359 is subject to strict scrutiny. *Rosenberger,* 515 U.S. at 829; *Perry Educ. Ass'n*, 460 U.S. at 45; *Woodlands Pride*, 2023 WL 6226113, at *17. State Defendants must show that the law is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (*quoting R.A.V.*, 505 U.S. at 395); *see also Ashcroft v. ACLU,* 542 U.S. 656, 665 (2004) ("When plaintiffs challenge a content-based speech restriction, the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute.").

HB 359 fails at both steps of the strict scrutiny analysis: it was not motivated by a "compelling state interest[]," and even if it were, the means are not narrowly tailored to the end. *Reed*, 576 U.S. at 163. State Defendants therefore cannot meet their burden. There is no "'actual problem' in need of solving," and HB 359 is not "actually necessary to the solution." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011).

While the state generally has a compelling interest in protecting children, its interest "does not alone negate strict scrutiny." *Woodlands Pride*, 2023 WL 6226113, at *16 (citing *Brown*, 564 U.S. at 799). The State's interest in protecting children must be compelling <u>under the circumstances presented by the law</u>. "[A]mbiguous proof will not suffice." *Brown*, 564 U.S. at 800. And HB 359 cannot even rely on ambiguity. Legislators and proponents offered no evidence that drag story hours or non-obscene "sexually oriented performances" pose a risk to children.

First, the State's interest in protecting children has no meaningful relationship to HB 359 because the bill interferes with minors' protected First Amendment rights and regulates speech between adults. Governments do not possess "the free-floating power to restrict the ideas to which children may be exposed." *Id.* at 794; *Erznoznik*, 422 U.S.

at 212–13 ("[M]inors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them."). And HB 359 is not even limited to minors. When an entity receives state funds in "any form," it may <u>never</u> display "sexually oriented performances," even to an age-restricted audience. HB 359 § 3(3)(b). HB 359 has no relationship to the State's general interest in protecting children. And the State's actual interest—silencing drag performers—is not compelling.

Second, HB 359 is not narrowly tailored. HB 359 criminalizes broad but vaguely defined non-obscene conduct, including artistic speech and speech between adults, sweeping in speech that goes far beyond the law's intended target. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) ("Regardless of whether the [law] is so vague that it violates the Fifth Amendment, the many ambiguities concerning the scope of its coverage render [the law] problematic for purposes of the First Amendment."). In their eagerness to crack down on a purported "sick agenda" to "hypersexualize" children, SUF ¶ 4, legislators took a sledgehammer to citizens' First Amendment rights.

HB 359 contains no exception for parental consent, further evidencing overbreadth. *See HM Florida*, 2023 WL 4157542, at *8 ("[A]n exception for parental consent . . . is at least one less restrictive means through which the Legislature could have sought to further the state's compelling interest in protecting minors from obscene performances."); *see also Woodlands Pride*, 2023 WL 6226113, at *16 (drag ban not narrowly tailored where it "is completely silent on the role of a parent or the parent's ability to consent to and control their child seeing a performance that—while it may offend some—does not rise to the definition of obscenity as contemplated by *Miller*"). Additionally, HB 359 "does not distinguish children by the age of the child," treating seventeen-year-olds no different than six-year-olds. *Id.*

"If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy*, 529 U.S. at 813. The Montana Legislature deliberately rejected an alternative that would have alleviated many of HB 359's constitutional infirmities. SUF ¶¶ 16–20. HB 359 does not survive strict scrutiny and should be permanently enjoined.

### III.   HB 359 is unconstitutionally vague.

HB 359 is unconstitutional for a second, equally persuasive reason: it provides no articulable basis to gauge whether speech will trigger the bill's criminal provisions.  Its text raises more questions than answers. No one can know how to comply with it, and law enforcement officers and prosecutors cannot know how to enforce it fairly and constitutionally. HB 359 is void for vagueness under the Fifth Amendment.

"Vague laws . . . stand in basic opposition to the rule of law." *Butcher v. Knudsen*, 38 F.4th 1163, 1169 (9th Cir. 2022).  A law is impermissibly vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 254 (2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

Vague laws that criminalize speech are especially pernicious. "When a law implicating free speech is impermissibly vague, it risks repressing the very discourse that the First Amendment protects and encourages." *Butcher*, 38 F.4th at 1169 (citing *Fox*, 567 U.S. at 253–54). Thus, "a more stringent vagueness test should apply" when First

Amendment rights are implicated. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). A statute limiting speech must explain precisely what conduct it proscribes to "establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see HM Florida*, 2023 WL 4157542, at *8. If it fails the test, the law violates the Due Process Clause and is facially invalid. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

HB 359 does not meet this exacting standard. Casting a wide and amorphous net, HB 359 does not identify with reasonable clarity what citizens can and cannot say. Thus, to avoid violating the law, speakers must avoid speaking and engaging in expressive conduct that may not actually be proscribed. *See Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) ("Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries were clearly marked.").

HB 359 does not define many of the terms necessary to determine its reach: "flamboyant," "exaggerated costumes and makeup," "salacious dancing," "performance," "lewd," "lascivious," and "sexual manner." "Drag story hours" and "sexually oriented performances are banned in "school[s] or librar[ies] that receive any form of funding from the state."

It is unclear whether schools, like libraries, must receive state funding to fall within HB 359's purview.  Nor can it be determined what it means for a school, library, or entity to receive "any form of funding from the state"—does this include, for example, state-administered federal funds?  County-administered state funds?  Must the funding stream be active?

And there's more.  The phrase "sexual conduct" is defined once, by cross-reference to Montana Code Annotated § 45-5-625, but that definition appears within the definition of "sexually oriented," which does not appear elsewhere as a stand-alone term; "sexually oriented performance" and "sexually oriented business" are defined separately without reference to the definition of "sexually oriented."  SUF ¶¶ 41–44, 51–52; *see generally* Ex. 4, HB 359.

Like other unconstitutionally vague "drag bans," HB 359 fails to incorporate the *Miller* test, sweeping in a wider—and unconstitutionally vague—range of speech and conduct.  *See, e.g.*, *Woodlands Pride*, 2023 WL 6226113, at *19 ("The express omission of the other prongs of the *Miller* test suggest that S.B. 12 is a wider interpretation of 'prurient sexual interest.'  Accordingly, it is not readily known to someone of 'ordinary intelligence' how S.B. 12 will be enforced."); *HM Florida*, 2023

WL 4157542, at *9 ("A fully clothed drag queen with cleavage-displaying prosthetic breasts reading an age-appropriate story to children may be adjudged 'wicked'—and thus 'lewd'—by some, but such a scenario would not constitute the kind of obscene conduct prohibited by the statutes in cases like *Miller*.").

Nor does HB 359 clarify whether provisions controlling the display of "prosthetic genitalia, breasts, or buttocks" are restricted only to drag performers. Judging by the language of the bill, a cancer survivor could find herself criminally prosecuted for spending the day at the swimming pool. *See HM Florida*, 2023 WL 4157542, at *9 ("Moreover, the Act's focus on 'prosthetic or imitation genitals or breasts' raises a host of other concerns not simply answered—what are the implications for cancer survivors with prosthetic genitals or breasts?"); *see also Woodlands Pride*, 2023 WL 6226113, at *20 ("[A]ny use of a 'packer' to simulate male genitalia could be seen as lewd by some demographic.").

In sum, the range of speech suppressed by HB 359 is unknowable. Without necessary definitions, each individual—and each police officer and each prosecutor—is left to define for herself what is forbidden. This is impermissible. "[I]t is . . . obvious opinions on what is lewd and

inappropriate is a matter of great divergence amongst the population."

*Woodlands Pride*, 2023 WL 6226113, at *20 (enjoining Texas drag ban

because, *inter alia*, "the vague language and seeming omission of clear

guidance makes S.B. 12 vague").  HB 359 is "dangerously susceptible to

standardless, overbroad enforcement which could sweep up substantial

protected speech." *HM Florida*, 2023 WL 4157542, at *9.

HB 359 is void for vagueness in violation of the Fifth Amendment.

## CONCLUSION

Plaintiffs ask the Court to grant their Motion for Summary

Judgment on Counts IV and V and to permanently enjoin its

enforcement.

Respectfully submitted this 28th day of November, 2023.

/s/ *Constance Van Kley*
Constance Van Kley
Rylee Sommers-Flanagan
Upper Seven Law

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(2)(E), I hereby certify that this brief includes 6,289 words, excluding caption, certificates, tables, and exhibit index.  The word count was calculated using Microsoft Word.

/s/ *Constance Van Kley*
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed in CM/ECF on November 28, 2023, and served upon all registered users.

/s/ *Constance Van Kley*
Attorney for Plaintiffs