Rylee Sommers-Flanagan
Molly E. Danahy
Caitlin M. Cocilova
 UPPER SEVEN LAW
 P.O. Box 31
 Helena, MT 59624
 (406) 998-6067
 rylee@uppersevenlaw.com
 molly@uppersevenlaw.com
 caitlin@uppersevenlaw.com

Constance Van Kley
 VAN KLEY LAW PLLC
 P.O. Box 451
 Missoula, MT 59806
 (605) 517-0673
 constance@vankleylaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA, et al., <br><br> *Plaintiffs*, <br><br> vs. <br><br> AUSTIN KNUDSEN; SUSIE HEDALEN; and J.P. GALLAGHER, <br><br> *Defendants*. | Cause No. CV-23-50-BU-BMM <br><br> Hon. Brian Morris <br><br> **Brief in Support of Plaintiffs' Renewed Motion for Summary Judgment on Counts IV & V** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii
INTRODUCTION ........................................................................ 1
BACKGROUND........................................................................... 2
   I.     HB 359's Prohibition on Drag Story Hours ............................... 2
   II.    HB 359's Prohibition on "Sexually Oriented Performances"..... 3
   III.  Legislative History ........................................................ 6
   IV.  HB 359's Effect ............................................................ 9
LEGAL STANDARD.................................................................... 10
ARGUMENT ............................................................................. 10
   I.     Plaintiffs have standing ................................................ 10
   II.    HB 359 unconstitutionally abridges free speech. .................... 12
      A.    Plaintiffs appropriately bring a facial claim against HB
            359. ................................................................... 12
      B.    HB 359 imposes content- and viewpoint-based restrictions on
            speech and is therefore subject to strict scrutiny. .............. 13
            1.    HB 359 targets protected speech. .............................. 14
            2.    HB 359 restricts speech based on content and
                 viewpoint. ................................................... 15
                 i.     HB 359 is facially content- and viewpoint-
                      based. ................................................... 15
                 ii.    HB 359 is also content-based because it was
                      enacted to stifle lawful speech. ......................... 18
      C.    HB 359 fails strict scrutiny. ............................................. 19
            1.    HB 359 furthers no compelling state interest. ........... 20
            2.    Even if the State could identify a compelling interest,
                HB 359 is not narrowly tailored to that interest. ...... 23
III.   HB 359 is unconstitutionally vague, violating due process. ........ 25
CONCLUSION ........................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) ...................................14

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013) .............................................................22, 23

*Anderson v. City of Hermosa Beach*,
  621 F.3d 1051 (9th Cir. 2010) .......................................................14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................10

*Animal Legal Def. Fund v. Wasden*,
  878 F.3d 1184 (9th Cir. 2018) .......................................................15

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) .................. 16, 28

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) ................................19

*Butcher v. Knudsen*, 38 F.4th 1163 (9th Cir. 2022) .........................25, 26

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
  271 F.3d 1141 (9th Cir. 2001) .......................................................27

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975).................... 17, 23

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012).....................26

*Ginsberg v. New York*, 390 U.S. 629 (1968) .........................................20

*Hunt v. Los Angeles*, 638 F.3d 703 (9th Cir. 2001) ...............................27

*Iancu v. Brunetti*, 588 U.S. 388 (2019) ...............................................18

*Imperial Sovereign Ct. of Mont. v. Knudsen,*
  170 F.4th 820 (9th Cir. 2026)................................................... *passim*

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022)........................21

*Kolender v. Lawson*, 461 U.S. 352 (1983) ............................................30

*Lane v. Salazar*, 911 F.3d 942 (9th Cir. 2018)...........................26, 28, 31

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).....................................11

*Mahmoud v. Taylor*, 606 U.S. 522 (2025) ............................................25

*Brief in Support of Plaintiffs' Renewed*                                      ii
*Motion for Summary Judgment*

*Miller v. California*, 413 U.S 15 (1973) .................................................. 30

*Moody v. NetChoice*, 603 U.S. 707 (2024) ............................................... 12

*Pernell v. Fla. Bd. of Governors of State Univ.*,
    __ F.4th __, 2026 WL 1955783 (11th Cir. 2026) ............................ 26

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) ....................................................................... 13

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) .......................... 12, 13, 17

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015) ...................... *passim*

*Reno v. ACLU*, 521 U.S. 844 (1997) ....................................................... 24

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ................................................................ 15, 17

*Roth v. United States*, 354 U.S. 476 (1957) ........................................... 30

*Sable Commc'ns of Cal. v. FCC*, 492 U.S. 115 (1989) ........................... 20

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) ....................................................................... 18

*Smith v. California*, 361 U.S. 147 (1959) .............................................. 30

*Texas v. Johnson*, 491 U.S. 397 (1989) ................................................. 18

*Troxel v. Granville*, 530 U.S. 57 (2000) ................................................. 22

*United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000) ........ 15, 17

## Other Authorities

H. 359, 68th Leg., Reg. Sess. (2023) ............................................. *passim*

## INTRODUCTION

Passed in 2023, House Bill 359 ("HB 359") was in effect for just two months and six days before first being temporarily restrained and then preliminarily enjoined. HB 359's remarkable breadth and vague provisions immediately caused local governments to cancel events and speakers to self-censor. The law has not improved with age. HB 359 is more than just confusing—it is impossible to understand and impossible to apply, leaving Montanans to guess whether their speech might lead to jail time and criminal penalties. As the Ninth Circuit has already affirmed, HB 359 fails every free speech metric. It is a content- and viewpoint-based restriction on speech that remains both sinister and senseless. HB 359 cannot withstand constitutional review.

The Court should grant Plaintiffs' renewed motion for summary judgment on Counts IV and V of the First Amended Complaint. HB 359 is not tailored to advance any compelling interest and in any case, the only interest it advances is animus. HB 359 is facially unconstitutional and the Court should permanently enjoin its enforcement.[1]

---

[1] Counts IV and V are facial challenges brought exclusively against Defendants Austin Knudsen and Susie Hedalen ("the State").

*Brief in Support of Plaintiffs' Renewed*        1
*Motion for Summary Judgment*

## BACKGROUND

### I.   HB 359's Prohibition on Drag Story Hours

HB 359 prohibits holding a "drag story hour" in "[a] school or library that receives any form of funding from the state . . . during regular operating hours or at any school-sanctioned extracurricular activity." Pls.' Statement of Undisputed Facts ("SUF") ¶ 31; Ex. 4, HB 359 § 3(2) ("HB 359"). The bill defines "drag story hour" as "an event hosted by a drag queen or drag king who reads children's books and engages in other learning activities with minor children present." SUF ¶ 8; HB 359 § 1(3). A "drag king" or "drag queen" is "a male or female performer who adopts a flamboyant or parodic ['male' or 'feminine'] persona with glamorous or exaggerated costumes and makeup." SUF ¶ 34; HB 359 § 1(1)–(2). HB 359 does not define "other learning activities," "flamboyant," "parodic," "glamorous," "exaggerated," "costumes," or "makeup." SUF ¶¶ 33, 35; HB 359 § 1.

Those who violate the prohibition face criminal, civil, and occupational penalties. SUF ¶¶ 36–40; HB 359 §§ 3–4. Upon conviction, "[a] library, a school, or library or school personnel, a public employee, [a state-funded entity], or an employee of the entity" "shall be fined" a

*Brief in Support of Plaintiffs' Renewed*                                                    2
*Motion for Summary Judgment*

criminal penalty of $5,000. SUF ¶ 54; HB 359 § 3(4). Any minor who attends a story hour—even with parental consent—may sue anyone who "knowingly promotes, conducts, or participates as a performer in" a drag story hour. SUF ¶ 55; HB 359 § 4(1). The statute of limitations is ten years, and prevailing plaintiffs are entitled to $5,000 in statutory damages, attorney's fees and costs, as well as "actual damages, including damages for psychological, emotional, economic, and physical harm." SUF ¶ 55; HB 359 § 4(2), (3). HB 359 also authorizes the suspension of educator certificates and, upon multiple violations, the permanent revocation of such certificates. SUF ¶ 54; HB 359 § 3(4).

## II.   HB 359's Prohibition on "Sexually Oriented Performances"

HB 359 also prohibits and restricts "sexually oriented performances." SUF ¶ 41; HB 359 § 1. As defined, a "sexually oriented performance" is

> a performance that, regardless of whether performed for consideration, is intended to appeal to the prurient interest and features:
>> (a) the purposeful exposure, whether complete or partial, of:
>>> (i) a human genital, the pubic region, the human buttocks, or a female breast, if the breast is exposed below a point immediately above the top of the areola; or

     (ii) prosthetic genitalia, breasts, or buttocks;
  (b) stripping; or
  (c) sexual conduct.

SUF ¶ 42; HB 359 § 1(10). Elsewhere, HB 359 defines "sexually oriented"

as

> any simulation of sexual activity, stripping, salacious dancing, any lewd or lascivious depiction or description of human genitals or of sexual conduct as defined in 45-5-635.

SUF ¶ 43; HB 359 § 1(8). This definition is not incorporated into the

definition of "sexually oriented performance."

The definition of "sexually oriented performance" is not limited to

live events. SUF ¶ 47; HB 359 § 1. By definition, "stripping" is not limited

to performances involving complete or partial nudity; it includes the

"<u>simulated removal</u>" of clothing in a "sexual manner." SUF ¶ 45; HB 359

§ 1(11) (emphasis added). HB 359 does not define "salacious dancing,"

"lewd," "lascivious," or "sexual manner." SUF ¶ 46; HB 359 § 1.

HB 359 prohibits "sexually oriented performances" "on public

property in any location where the performance is in the presence of an

individual under the age of 18." SUF ¶¶ 49–50; HB 359 § 3(3)(a). Even

when minors are not present, HB 359 prohibits "sexually oriented

performances" in schools "during regular operating hours or at any

*Brief in Support of Plaintiffs' Renewed*         4
*Motion for Summary Judgment*

school-sanctioned extracurricular activity," "librar[ies] that receive[] any form of funding from the state," and "location[s] owned by an entity that receives any form of funding from the state." SUF ¶ 49; HB 359 § 3.

HB 359 further restricts "sexually oriented performances" in "sexually oriented businesses" to adult-only audiences. SUF ¶ 51; HB 359 § 2(1). The definition of "sexually oriented business" is circular and includes "a nightclub, bar, restaurant, or similar commercial enterprise" that "authorizes on-premises consumption of alcoholic beverages" and provides "sexually oriented performances" (as previously defined) to "an audience of two or more individuals." SUF ¶ 52; HB 359 § 1(9).

Violators of the provisions governing "sexually oriented performances" face various civil, criminal, and administrative penalties. SUF ¶¶ 53–55; HB 359 §§ 2–4. The same civil enforcement scheme applies to those involved in "sexually oriented performances" as "drag story hours," and school personnel and publicly funded entities face the same criminal fines. SUF ¶¶ 53–55; HB 359 §§ 2–4. In addition, HB 359 imposes mandatory criminal fines from $1000 to $5000 on owners, operators, managers, and employees of "sexually oriented business[es]," which also risk delicensure. SUF ¶¶ 54; HB 359 §§ 3.

*Brief in Support of Plaintiffs' Renewed*                                    5
*Motion for Summary Judgment*

## III.  Legislative History

Representative Braxton Mitchell introduced HB 359 on January 31, 2023. SUF ¶ 1. Both the original and final versions of HB 359 were calculated to prevent minors from attending drag performances or drag story hours. *Id.* ¶¶ 2–7.

Over the course of the legislative session and many amendments, a single motivation emerged—to stamp out what Representative Mitchell described as a "sick agenda" to expose children to drag. *Id.* ¶ 4. Proponents claimed, without evidence, that drag performers and their supporters were on a mission to expose children to "hypersexualized" content. *Id.* Proponent Jeff Laszloffy testified, "[T]here are no little kids out there begging to be told a story by a drag queen. But suddenly, for some strange reason, drag queens are begging to tell stories to little kids." *Id.* ¶ 5. Jessie Browning added, "Drag queens have been inserting themselves in areas children frequent," and suggested that exposure to drag increases mental health disorders, sex addiction, and early onset of sexual activity. *Id.* ¶ 6. And another citizen proponent, Kathy Butterfield, made the case that parents should not be able to choose to bring their children to drag performances: "Parents that support bringing their

*Brief in Support of Plaintiffs' Renewed*                                    6
*Motion for Summary Judgment*

minors to these events are just as liable as the performers and should be held accountable. . . . Adults that support subjecting their minors to these shows are fulfilling their own dreams and affecting minors in a very, very negative and profound way for life." *Id.* ¶ 7.

Legislators and other proponents claimed that interacting with drag performers endangers children. They cited no evidence of inappropriately sexual events occurring in Montana. *Id.* ¶ 8. Representative Mitchell explained that the bill was motivated by fear that exposure to nonconforming gender presentations would cause children to question gender norms:

> [C]hildren may adopt and accept certain stereotypes or attitudes that could lead to social, psychological, linguistic difficulties. Children may also create an inadequate understanding of gender roles and experiences, which is damaging to their long-term social and emotional development.

*Id.* ¶ 9.

Shortly before the end of the legislative session, the Senate passed an amendment intended to alleviate concerns about the bill's unconstitutionality. *Id.* ¶¶ 13–18, 22. Senator Chris Friedel, who introduced the amendment, explained, "I can tell you right now, if that

*Brief in Support of Plaintiffs' Renewed*                                           7
*Motion for Summary Judgment*

bill goes as [it was written], even the most conservative judge will strike it down for unconstitutionality." *Id.* ¶ 17.

The amendment removed references to drag and instead focused on "adult-oriented performances." *Id.* ¶¶ 14–15. Senator Karl Glimm argued that the amendment was "not friendly" because it "completely derails the intent of the legislation" by "allow[ing] all these [drag performances] under art, so it completely guts the bill." *Id.* ¶ 20. Senator Brad Molnar agreed. Noting that a drag queen story hour at ZooMontana (a private business) motivated legislators to bring the bill, he was concerned with the attempt to incorporate constitutional standards for obscenity. *Id.* ¶ 21. He argued that the amendment failed to target drag with specificity because drag story hours are not obscene in the constitutional sense:

> I don't know that a story hour for children, though performed by people in full drag, would actually be covered by this bill if it were amended in this form. In the first place I'm not sure with a six-year-old if there is a prurient interest, and I'm positive that reading to children, even in drag, would not be considered an adult-oriented performance.

*Id.*

*Brief in Support of Plaintiffs' Renewed*
*Motion for Summary Judgment*

8

Ultimately, the amendment failed in the House and a free conference committee (comprising members of both chambers) passed the final version. *Id.* ¶¶ 23–29; *see* HB 359.

## IV.  HB 359's Effect

HB 359 immediately led to self-censorship and fear. Plaintiff Imperial Sovereign Court of the State of Montana ("Imperial Court")—a Montana-based, drag-focused nonprofit organization—restricted all-ages drag shows and chose not to advertise its drag performances. SUF ¶¶ 65–80. Plaintiffs the Great Falls LGBTQ+ Community Center, The Western Montana LGBTQ+ Community Center, and Montana Pride modified activities or faced pressure to do so. *Id.* ¶¶ 81–88, 121–124. Plaintiff businesses—the Montana Book Company, the Roxy Theater, and The Myrna Loy—are either "sexually oriented businesses" under HB 359 or are unable to determine whether they are because of the bill's confusing language. *Id.* ¶¶ 101, 113, 120. Thus, they risk violating the bill's penalty provision and must choose between complying with the law and exercising their free speech rights. *Id.*

HB 359 also directly affects both individual Plaintiffs, Adria Jawort and Rachel Corcoran. Adria was scheduled to give an informative lecture

*Brief in Support of Plaintiffs' Renewed*                              9
*Motion for Summary Judgment*

about the history of LGBTQ+ Montanans at the Butte-Silver Bow Public Library, but the County cancelled her event out of concern that it would violate HB 359. *Id.* ¶¶ 57–60. Rachel, a Billings public school instructor, regularly dresses in gendered costumes while engaging her students in learning activities. *Id.* ¶ 63. Because this innocent educational activity falls within the definition of "drag story hours," Rachel fears civil, criminal, and occupational penalties. *Id.* ¶ 64.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law . . . identif[ies] which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

### I.   Plaintiffs have standing

"Plaintiffs have standing to challenge H.B. 359." *Imperial Sovereign Ct. of Mont. v. Knudsen,* 170 F.4th 820, 833 (9th Cir. 2026). To

*Brief in Support of Plaintiffs' Renewed*                                      10
*Motion for Summary Judgment*

establish standing, a plaintiff must suffer or face imminently a concrete and particularized injury, fairly traceable to a defendant's actions, that will likely be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs meet each element.

The Ninth Circuit held that at least one Plaintiff has suffered an injury-in-fact for each challenged statutory provision. *Imperial Sovereign Ct.*, 170 F.4th at 836–838. And Plaintiffs have "shown a credible threat of future enforcement, which 'is all that is needed to show imminent injury to a constitutional interest in a pre-enforcement challenge.'" *Id.* at 840 (quoting *Matsumoto v. Labrador*, 122 F.4th 787, 798 (9th Cir. 2024)).

The Ninth Circuit also held that Plaintiffs' injuries are fairly traceable to HB 359. *Id.* at 840 (Plaintiffs have "demonstrate[d] the requisite casual connection for standing purposes[.]" (quoting *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 839 (9th Cir. 2024))). And it held that an injunction preventing HB 359's enforcement sufficiently redresses Plaintiffs' injuries. *Id.* at 841 ("[A] plaintiff need not sue every defendant that may cause her harm . . . . [P]artial amelioration of a harm . . . suffices for redressability." (quoting *Matsumoto*, 122 F.4th at 801–802)). Plaintiffs have standing.

*Brief in Support of Plaintiffs' Renewed*                                    11
*Motion for Summary Judgment*

## II.   HB 359 unconstitutionally abridges free speech

HB 359 facially violates the First and Fourteenth Amendments, and the Court should permanently enjoin its enforcement.

HB 359's speech restrictions fall squarely within the First Amendment. The State has conceded that the bill is not limited to obscenity, Doc. 33 at 21, and because it regulates speech based on content and viewpoint, the bill is "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). The State cannot rebut the presumption— HB 359 advances no compelling interest; even if it did, it is not narrowly tailored. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

### A.   Plaintiffs appropriately bring a facial claim against HB 359

Since this Court ruled on Plaintiffs' motion for a preliminary injunction, the Supreme Court clarified the standard for facial challenges under the First Amendment. Under *Moody v. NetChoice, LLC*, a law is facially unconstitutional only if "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." 603 U.S. 707, 723 (2024) (quoting *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)).

HB 359 meets this standard because each component is a content-based restriction of speech that triggers and fails strict scrutiny. "*Moody* . . . did not displace the longstanding and myriad precedents setting forth the tiered scrutiny analysis [the Ninth Circuit] appl[ies] to a facial claim challenging a law on the ground that it is an unconstitutional content-based restriction on speech." *Imperial Sovereign Ct.*, 170 F.4th at 845. "[I]f a court concludes that a content-based speech restriction fails strict scrutiny, the analysis ends. The law is facially invalid and cannot be enforced against anyone." *Id.* The Ninth Circuit confirmed that Plaintiffs' facial challenge is proper and that the familiar tiered scrutiny approach applies. *Id.* at 844–855.

Even if HB 359 had <u>any</u> permissible application, it would be vastly overshadowed by the act's unconstitutional provisions, which are outlined below. Plaintiffs easily satisfy *Moody*.

## B. HB 359 imposes content- and viewpoint-based restrictions on speech and is therefore subject to strict scrutiny

Content-based restrictions on speech are "presumptively invalid" and must pass strict scrutiny. *R.A.V.*, 505 U.S. at 382, 395; *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

Because HB 359's restrictions on "drag story hours" and "sexually oriented performances" target speech based on its content, HB 359 is subject to strict scrutiny.

### 1.   HB 359 targets protected speech

"All manner of speech—from 'pictures, films, paintings, drawings, and engravings,' to 'oral utterance and the printed word'—qualify for the First Amendment's protections." *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023) (citation omitted). Both drag story hours and "sexually oriented performances" are protected speech.

HB 359's restrictions on "drag story hours" and "sexually oriented performances" regulate speech and purely expressive activities, which are treated as protected speech under the First Amendment. *Imperial Sovereign Ct.,* 170 F.4th at 855, 868; *see also Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1059 (9th Cir. 2010) (purely expressive activities are "entitled to full First Amendment protection"). The bill does not target, nor is it limited to, obscenity. *Imperial Sovereign Ct.*, 170 F.4th at 851 (noting that "Defendants could not defend H.B. 359 on [obscenity] ground[s]" for minors). Thus, HB 359's speech restrictions fall outside the obscenity exception to First Amendment protection.

### 2.   HB 359 restricts speech based on content and viewpoint

A speech regulation is content-based when it "draws a distinction 'on its face' regarding the message . . . or 'when the purpose and justification for the law are content based.'" *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018) (quoting *Reed*, 576 U.S. at 166). HB 359 facially discriminates against the messages conveyed by drag story hours and "sexually oriented performances," and "the purpose and justification for the law" is to stifle those particular messages. *Id.* Moreover, it targets disfavored speech because of the message it conveys. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (describing particular harms of viewpoint discrimination). Thus, HB 359 must pass strict scrutiny.

### i.   HB 359 is facially content- and viewpoint-based

HB 359's regulation of "drag story hours" and "sexually oriented performances" "focuses only on the content of the speech and the direct impact that speech has on [viewers]." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 811 (2000) (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988)). Its application "depend[s] entirely on the communicative

content" of the speech it attempts to regulate." *Reed*, 576 U.S. at 164. Both restrictions are content-based.

First, there is no reasonable argument that the "drag story hour" ban is content-neutral. The ban draws an unmistakable distinction between learning activities based exclusively on whether the performer wears a gendered costume. The law's enforcement hinges on investigating the message of the protected speech—*i.e.*, whether the speaker is reading "children's books" as opposed to other content. *Imperial Sovereign Ct.*, 170 F.4th at 856. And "[b]ecause H.B. 359's facial speaker preference reflects a content preference, it is content based on its face." *Imperial Sovereign Ct.*, 170 F.4th at 856.

Second, HB 359's restrictions on "sexually oriented performances" are no less content-based. "A regulation is content-based if . . . the regulation, by its very terms, singles out particular content for differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009). HB 359 defines "sexually oriented performances" to include non-obscene, protected speech—notwithstanding that "sexually oriented speech is still speech." *Imperial Sovereign Ct.*, 170 F.4th at 869. And it dictates when, where, and to whom that speech is allowed. "The

*Brief in Support of Plaintiffs' Renewed*
*Motion for Summary Judgment*

restrictions . . . thus depend entirely on the communicative content of the [expression]." *Reed*, 576 U.S. at 164. This is the definition of content-based discrimination. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 211 (1975) (restriction on films with particular content at a drive-in theater "discriminates among movies solely on the basis of content"); *Playboy*, 529 U.S. at 811–12 (statute imposing particular requirements on "sexually explicit adult programming or other programming that is indecent" is "the essence of content-based regulation").

Worse still, HB 359 targets speech based on viewpoint. Indeed, "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. Viewpoint discrimination is "an egregious form of content discrimination," *id.*, one that "raise[s] the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace," *R.A.V.*, 505 U.S. at 387 (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991)).

HB 359 intentionally targets drag because the State disapproves of the message that drag conveys about gender. The law singles out particular speakers—drag queens and drag kings—simply because

*Brief in Support of Plaintiffs' Renewed*                                     17
*Motion for Summary Judgment*

lawmakers find their expressions of gender offensive or inappropriate. *See* SUF ¶ 9; *Iancu v. Brunetti*, 588 U.S. 388, 396 (2019) ("a law disfavoring 'ideas that offend' discriminates based on viewpoint" (quoting *Matal v. Tam*, 582 U.S. 218, 223 (2017))). The use of State power to suppress disfavored speakers goes to the very heart of the First Amendment: "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

### ii.   HB 359 is also content-based because it was enacted to stifle lawful speech

The Court need not reach legislative intent where, as here, a law facially discriminates against speech based on content and viewpoint. *See Reed*, 576 U.S. at 166–167; *see also Simon & Schuster, Inc.*, 502 U.S. at 117. But even a facially neutral law—which HB 359 decidedly is not— triggers strict scrutiny "when the purpose and justification for the law are content based." *Reed*, 576 US. at 166.

The Montana legislature's discriminatory intent could not be clearer: it enacted HB 359 to target drag performers and speech that

challenges gender norms. Doc. 33 at 38 ("Legislative history of H.B. 359 evinces an overt and impermissible purpose to target the speech and expression of LGBTQ+ community members, particularly trans, Two-Spirit, and gender non-conforming people."). Bill sponsor Representative Braxton Mitchell openly stated his goal to shield children from "the mature themes surrounding drag shows and the exposure to inappropriate activities," claiming that drag performances may "create an inadequate understanding of the gender roles and experiences" for children. SUF ¶ 9. And legislators ultimately rejected a more neutral amendment specifically because it was insufficiently focused on drag. *Id.* ¶¶ 20-21, 25-29. Motivated by moral panic, legislators took aim at drag performers and the LGBTQ+ community.

## C.    HB 359 fails strict scrutiny

Laws that discriminate based on content and viewpoint must pass strict scrutiny. *See, e.g.*, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). The State must show that the law is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (quoting *R.A.V.*, 505 U.S. at 395). HB 359 fails at both steps of the strict scrutiny analysis and thus violates the First Amendment.

### 1.    HB 359 furthers no compelling state interest

In response to Plaintiffs' motion for a preliminary injunction, the State claimed two compelling interests: (1) to protect the well-being of minors by preventing their exposure to speech that is "indecent and potentially harmful to minors" and (2) to "prevent [public funds] from being used to support or subsidize the presentation of [speech] that is indecent and potentially harmful to minors." Doc. 17 at 12, 14. Neither of these interests are compelling given the context of HB 359.

First, the State's interest in protecting children from gendered personas during a story hour "go[es] too far." *Imperial Sovereign Ct.*, 170 F.4th at 859. The drag-story-hour provision bears little relation to the obscene content regulations for minors tolerated by the First Amendment. *See, e.g.*, *Sable Commc'ns of Cal. v. FCC*, 492 U.S. 115, 117 (1989) (upholding prohibition on obscene "dial-a-porn" communications but striking prohibition on merely "indecent" communications); *Ginsberg v. New York*, 390 U.S. 629, 637 (1968) (upholding restriction on sale of "girlie" magazines to minors under the age of 17). The State's purported interest in shielding minors from gender-critical expression merely serves to reinforce that its interest is in suppressing speech. *See Kennedy*

*Brief in Support of Plaintiffs' Renewed*                    20
*Motion for Summary Judgment*

*v. Bremerton Sch. Dist.*, 597 U.S. 507, 534 (2022) (First Amendment prevents targeting protected activity "based on 'perceptions' or 'discomfort.'" (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 119 (2001))). "[T]he state does not have free license to label expression 'indecent' and restrict it in the name of protecting children." *Imperial Sovereign Ct.*, 170 F.4th at 861.

The State's interest in protecting children from "sexually oriented performances" is similarly uncompelling. "[T]he Supreme Court has strongly suggested that the government does not have a broad and undifferentiated interest in shielding all minors from any non-obscene protected speech that the government deems 'indecent,' regardless of their parents' views." *Id.* at 860 (citing *Reno v. ACLU*, 521 U.S. 844, 878 (1997); *Playboy*, 529 U.S. at 811). HB 359's liability provisions apply even where a parent chooses to share specific content with their child, in blatant disregard of the "presumption that fit parents act in the best interests of their children."[2] *Troxel v. Granville*, 530 U.S. 57, 68 (2000)

---

[2] What's more, HB 359 actually encourages parents who view drag content as unfit for children to intentionally subject their children to that content in order to punish performers and extract a financial windfall. *See* SUF ¶ 55; HB 359 § 4(1)–(3).

*Brief in Support of Plaintiffs' Renewed*                    21
*Motion for Summary Judgment*

(O'Connor, J., joined by Rehnquist, C.J., and Ginsburg & Breyer, J.J.) (striking Washington law that allowed nonparents the right to petition for visitation over the objection of parents); *see also id.* at 68–69 ("so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children").

Second, the State's purported interest in avoiding subsidizing conduct it considers indecent and potentially harmful is not compelling because HB 359 does not apply to government subsidized speech. While the government has some authority to set conditions for a spending program, it may not "seek to leverage funding to regulate speech outside the contours of the program itself." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214–15, 217 (2013). The State fails to tie story hours or "sexually oriented performances" to any government-funded program. *Imperial Sovereign Ct.*, 170 F.4th at 867. Because the ban extends to "sexually oriented performances" on non-public property owned by an entity receiving funding by the state, SUF ¶ 49; HB 359 § 3(3)(b), the ban covers performances in non-public locations, financed

by private means, if the host receives any government support—no matter how minimal the funding, its relevance, or when it was issued. Thus, application of this interest within HB 359 violates the unconstitutional conditions doctrine: "the Government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit.'" *Agency for Int'l Dev.*, 570 U.S. at 214 (quoting *Rumsfeld v. F. for Acad. and Institutional Rts.*, 547 U.S. 47, 59 (2006))

HB 359 furthers no compelling government interest.

### 2.    Even if the State could identify a compelling interest, HB 359 is not narrowly tailored to that interest

Only in "relatively narrow and well-defined circumstances" may the government restrict minors' access to protected ideas. *Erznoznik*, 422 U.S. at 212–14. HB 359 both over- and undershoots its purported objectives, failing strict scrutiny. *See Imperial Sovereign Ct.*, 170 F.4th at 862–863.

HB 359's drag story hour ban sweeps far beyond sexualized content to target both gender-conforming and gender-critical performance—from a person dressing up as Mulan (a woman in men's clothing) to Dolly

Parton touring libraries to read to children in glamorous costume. *See Imperial Sovereign Ct.*, 170 F.4th at 861–863. The act therefore fails entirely to hit its target.

Nor does HB 359 achieve its stated objective with regard to "sexually oriented performances." It extends to speech between adults on public property merely because "an individual under the age of 18" is present. And it extends to the same speech in schools, libraries, and "location[s] owned by an entity that receives any form of funding from the state" even when no minor is present. HB 359 §§ 2, 3(a), (b); *see Reno*, 521 U.S. at 846 (regulation swept too broadly "by suppressing a large amount of speech that adults have a constitutional right to send and receive"). HB 359 also fails to make any carveout for performances with serious artistic, literary, scientific, or political value. *Reno*, 521 U.S. at 879 (concluding the regulation was not narrowly tailored when it did not make exceptions for artistic or educational messages). And, ironically, HB 359 is also underinclusive: it makes no restrictions on the actual content read aloud to children. *Imperial Sovereign Ct.*, 170 F.4th at 863.

HB 359's nullification of parental decision-making further demonstrates the availability of less-restrictive alternatives, proving its

*Brief in Support of Plaintiffs' Renewed*                    24
*Motion for Summary Judgment*

overbreadth. It contains no exception for parental consent, for example. Nor does it include an opt-out option, allowing parents to decide whether their children should attend. *Mahmoud v. Taylor*, 606 U.S. 522, 567 (2025) (holding a school board's refusal to allow for opt-outs from LGBTQ+-positive instructional activities failed strict scrutiny because "[i]f the Board can structure [other] curriculum[s] to more easily accommodate opt outs, it could structure instruction concerning the 'LGBTQ+-inclusive' storybooks similarly" so as to avoid the constitutional infringement).

HB 359 does not survive strict scrutiny and therefore unconstitutionally restricts speech in violation of the First and Fourteenth Amendments.

## III.    HB 359 is unconstitutionally vague, violating due process

HB 359 is unconstitutional for a second reason: it provides no articulable basis to gauge whether speech will trigger the bill's criminal provisions, and compliance is impossible. HB 359 is void for vagueness under the Fifth and Fourteenth Amendment.

"Vague laws . . . stand in basic opposition to the rule of law." *Butcher v. Knudsen*, 38 F.4th 1163, 1169 (9th Cir. 2022). "Courts have

*Brief in Support of Plaintiffs' Renewed*                                     25
*Motion for Summary Judgment*

reasoned that vague statutes and regulations should be held void because: (1) individuals should not be punished for behavior they could not have known was illegal; (2) vague laws allow arbitrary and discriminatory enforcement; and (3) vague laws may have a chilling effect on free speech." *Lane v. Salazar*, 911 F.3d 942, 950 (9th Cir. 2018). A law is impermissibly vague in violation of due process when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 254 (2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

Vague laws criminalizing speech are especially pernicious. "When a law implicating free speech is impermissibly vague, it risks repressing the very discourse that the First Amendment protects and encourages." *Butcher*, 38 F.4th at 1169. And viewpoint-discrimination laws are even worse: "Viewpoint-based restrictions designed to compel or ban a set of beliefs are dangerous in any setting," but "[t]hat goes double for broadly worded yet imprecise regulations." *Pernell v. Fla. Bd. of Governors of State Univ.*, __ F.4th __, 2026 WL 1955783, at *5 (11th Cir. 2026).

Thus, "where criminal sanctions are involved and/or the law implicates First Amendment rights . . . , a 'more demanding' standard of scrutiny applies." *Hunt v. Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2001) (citation omitted). Though statutory clarity need not be "perfect" and deterrent effects may not hinge on unrealistic hypotheticals, speech regulations must "provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149–1151 (9th Cir. 2001).

HB 359 does not meet this standard. HB 359 fails to define the exact terms central to its application: "flamboyant," "parodic," "exaggerated costumes and makeup," "salacious dancing," "lewd," "lascivious," and "sexual manner." This is not "uncertainty at the statute's margins." *Id.* at 1151. These undefined terms cut to the heart of the statute's substance, making it unclear how to apply the statute "in the vast majority of its intended applications." *Id.* (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)).

Before the Ninth Circuit, the State argued that such definitions should not matter because, for example, Plaintiffs themselves understand what constitutes "drag." State Defs.' Reply Br., 11, *Imperial*

*Brief in Support of Plaintiffs' Renewed*                                    27
*Motion for Summary Judgment*

*Sovereign Ct.*, No. 23-3581 (Ninth Cir. Feb. 9, 2023), Doc. 28.1 at 23. But that is of no moment when Plaintiffs' understanding of drag conflicts with the statutory definition. Moreover, the law's enforcement depends not on the Plaintiffs' personal understanding of drag but on prosecutors' and police officers' interpretations of the statutory terms. *Berger*, 569 F.3d at 1048 (noting a chilling effect on speech when a performer would have to evaluate the subjective perspective of an officer). Thus, HB 359's failure to define key terms risks the "arbitrary and discriminatory enforcement" against which due process guards. *Lane*, 911 F.3d at 950.

Further, even when HB 359 includes definitions, those definitions are ambiguous. Section 1(8) defines "sexually oriented," but it is entirely unclear how the definition interacts with separately defined terms in Section 1(9) ("sexually oriented business") and Section 1(10) ("sexually oriented performance"). *See Imperial Sovereign Ct.*, 170 F.4th at 873. The relationship between "sexually oriented" and "sexually oriented performance" is especially confusing, as the two share some similar concepts (stripping, sexual conduct, exposure of genitals), but not all (salacious dancing, descriptions of genitals). *See* SUF ¶¶ 43–46; HB 359

§ 1(8), 1(10). It is thus unclear if "sexually oriented performance" is meant to encompass only its own list or also the additional Section 1(8) terms.

HB 359 also fails to clarify its scope. HB 359 bans drag story hours and "sexually oriented performances" in locations "receiv[ing] any form of funding from the state." HB 359 §§ 3(2), 3(3)(b). Does this include, for example, state-administered federal funds? County-administered state funds? Must the funding stream be active? HB 359 does not say.

Nor does the bill explain what it means for a performance to be "in the presence of an individual under the age of 18"—could a minor be "present" even if they happen to walk past an outdoor event on the sidewalk, out of earshot? *See* Doc. 33 at 47. The bill also does not state that provisions controlling the display of "prosthetic genitalia, breasts, or buttocks" are restricted only to drag performers, such that a Community Theater production of "Calendar Girls" starring a cancer survivor apparently violates the law.

Finally, HB 359's failure to incorporate the *Miller* standard for obscenity triggers additional vagueness red flags. The *Miller* test asks "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals

to prurient interest." *Roth v. United States*, 354 U.S. 476, 489 (1957). Community standards are critical for protecting speech so that "[material] will be judged by its impact on an average person, rather than a particularly susceptible or sensitive person—or indeed a totally insensitive one." *Miller v. California*, 413 U.S 15, 33 (1973). Worse still, HB 359 neither sets forth an objective standard for assessing violations nor incorporates any *mens rea* requirement. *See Smith v. California*, 361 U.S. 147, 150–154 (1959) (obscenity statute unconstitutional when it imposed strict liability, creating enhanced risk of self-censorship, even of constitutionally protected speech).

Rife with undefined terms and unbridled in its application, HB 359 "encourage[s] arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The range of speech suppressed by HB 359 is unknowable. Without necessary definitions, each individual—and each police officer and prosecutor—is left to define for herself what is forbidden. The District Court has already aptly noted how this may extend beyond drag performers to also impact "trans, Two-Spirit, non-binary, intersex, and gender-nonconforming people, as well as others who dress or present in ways different from the gender assigned to them at

birth." Doc. 33 at 48. HB 359 therefore risks punishing "individuals . . . for behavior they could not have known was illegal," "allow[s] arbitrary and discriminatory enforcement," and chills protected speech and expression. *Lane*, 911 F.3d at 950.

HB 359 is void for vagueness in violation of due process.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Summary Judgment on Counts IV and V and permanently enjoin HB 359's enforcement

Respectfully submitted this 24th day of July, 2026.

/s/*Molly E. Danahy*
Rylee Sommers-Flanagan
Molly E. Danahy
Caitlin M. Cocilova
UPPER SEVEN LAW

Constance Van Kley
VAN KLEY LAW PLLC

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(2)(E), I hereby certify that this brief includes 5,974 words, excluding the caption, certificates, and tables. The word count was calculated using Microsoft Word.

/s/ *Molly E. Danahy*
Rylee Sommers-Flanagan
Molly E. Danahy
Caitlin M. Cocilova
UPPER SEVEN LAW

Constance Van Kley
VAN KLEY LAW PLLC

*Attorneys for Plaintiffs*

*Brief in Support of Plaintiffs' Renewed*                                      32
*Motion for Summary Judgment*

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed in CM/ECF on July 24, 2026, and served upon all registered users.

/s/ *Molly E. Danahy*
Rylee Sommers-Flanagan
Molly E. Danahy
Caitlin M. Cocilova
UPPER SEVEN LAW

Constance Van Kley
VAN KLEY LAW PLLC

*Attorneys for Plaintiffs*