Rylee Sommers-Flanagan
Molly E. Danahy
Caitlin M. Cocilova
  UPPER SEVEN LAW
  P.O. Box 31
  Helena, MT 59624
  (406) 998-6067
  rylee@uppersevenlaw.com
  molly@uppersevenlaw.com
  caitlin@uppersevenlaw.com

Constance Van Kley
  VAN KLEY LAW PLLC
  P.O. Box 451
  Missoula, MT 59806
  (605) 517-0673
  constance@vankleylaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA, et al., <br><br> *Plaintiffs*, <br><br> vs. <br><br> AUSTIN KNUDSEN; SUSIE HEDALEN; and J.P. GALLAGHER, <br><br> *Defendants.* | Cause No. CV-23-50-BU-BMM <br><br> Hon. Brian Morris <br><br> **Plaintiffs' Brief in Support of Motion for Protective Order** |

## INTRODUCTION

Plaintiffs ask this Court to bar Defendants Austin Knudsen and Susie Hedalen ("the State") from conducting 30(b)(6) depositions of the Imperial Sovereign Court of Montana, the Roxy Theater, the Myrna Loy, the Montana Book Company, the Great Falls LGBTQ+ Community Center, and the Western Montana Community Center. Alternatively, Plaintiffs ask the Court to impose reasonable limits on the depositions.

Plaintiffs' claims present pure questions of law and no disputes of material fact exist as to the merits. Instead, the proposed depositions seek to challenge Plaintiffs' standing, which the Ninth Circuit already resolved. *Imperial Sovereign Ct. of Mont. v. Knudsen,* 170 F.4th 820, 833 (9th Cir. 2026) ("Plaintiffs have standing to challenge H.B. 359.").

Each deposition notice identifies 19 topics. And they come on the heels of 234 Requests for Admission, 70 Interrogatories, and 46 Requests for Production the State served on just these six Plaintiffs.[1] Given the Ninth Circuit's ruling, the proposed depositions are oppressive, seek irrelevant information, and are not proportional to the needs of the case.

---

[1] These numbers reflect only the State's numbering of its requests and do not account for separate subparts.

*Plaintiffs' Brief in Support of Motion for Protective Order*　　　　1

## BACKGROUND

### I.   HB 359

In 2023, the Montana legislature passed HB 359, which prohibits "drag story hours" in a "school or library that receives any form of funding from the state . . . during regular operating hours or at any school-sanctioned extracurricular activity." HB 359 § 3(2). The bill defines "drag story hour" as "an event hosted by a drag queen or drag king who reads children's books and engages in other learning activities with minor children present." *Id.* § 1(3). A "drag king" or "queen" is "a male or female performer who adopts a flamboyant or parodic ['male' or 'feminine'] persona with glamorous or exaggerated costumes and makeup." *Id.* § 1(1)–(2).  HB 359 does not define "other learning activities," "flamboyant," "parodic," "glamorous," "exaggerated," "costumes," or "makeup." *Id.* § 1.

HB 359 also prohibits "sexually oriented performances," defined as

> a performance that, regardless of whether performed for consideration, is intended to appeal to the prurient interest and features:
>
> > (a) the purposeful exposure, whether complete or partial, of:
> >
> > > (i) a human genital, the pubic region, the human buttocks, or a female breast, if the breast is

*Plaintiffs' Brief in Support of Motion for Protective Order*          2

> exposed below a point immediately above the top
> of the areola; or
> (ii) prosthetic genitalia, breasts, or buttocks;
> (b) stripping; or
> (c) sexual conduct.

HB 359 § 1(10). Elsewhere, HB 359 defines "sexually oriented" as

> any simulation of sexual activity, stripping, salacious
> dancing, any lewd or lascivious depiction or description of
> human genitals or of sexual conduct as defined in 45-5-635.

*Id.* § 1(8). This definition is not incorporated into the definition of "sexually oriented performance."

The definition of "sexually oriented performance" is not limited to live events. HB 359 § 1. By definition, "stripping" is not limited to performances involving complete or partial nudity; it includes the "simulated removal" of clothing in a "sexual manner." *Id.* § 1(11) (emphasis added). HB 359 does not define "salacious dancing," "lewd," "lascivious," or "sexual manner." *Id.* § 1.

HB 359 prohibits "sexually oriented performances" "on public property in any location where the performance is in the presence of an individual under the age of 18." HB 359 § 3(3)(a). Even when minors are not present, HB 359 prohibits "sexually oriented performances" in schools "during regular operating hours or at any school-sanctioned

*Plaintiffs' Brief in Support of Motion for Protective Order*           3

extracurricular activity," "librar[ies] that receive[] any form of funding from the state," and "location[s] owned by an entity that receives any form of funding from the state." *Id.* § 3.

HB 359 further restricts "sexually oriented performances" in "sexually oriented businesses" to adult-only audiences. HB 359 § 2(1). The definition of "sexually oriented business" is circular and includes "a nightclub, bar, restaurant, or similar commercial enterprise" that "authorizes on-premises consumption of alcoholic beverages" and provides "sexually oriented performances" (as previously defined) to "an audience of two or more individuals." *Id.* § 1(9).

HB 359 imposes criminal liability on violators, as well as civil and administrative penalties. HB 359 §§ 2–4. In addition, HB 359 imposes mandatory criminal fines from $1000 to $5000 on owners, operators, managers, and employees of "sexually oriented business[es]," which also risk delicensure. *Id.* §§ 3.

## II.    Procedural History

HB 359 went into effect immediately upon being signed on May 22, 2023. HB 359 § 7. Plaintiffs filed suit on July 6 and promptly sought a temporary restraining order ("TRO") and preliminary injunction. Dkt. 1,

Compl.; Dkt. 4, Mot. for Prelim. Inj. & TRO. The Court entered a TRO on July 28, 2023 and issued a preliminary injunction on October 13, 2023. Dkt. 12, Ord. Granting TRO; Dkt, 33, Ord. Granting Prelim Inj. The Ninth Circuit affirmed the preliminary injunction on March 13, 2026. *Imperial Sovereign*, 170 F.4th 820. Based on undisputed facts established by declaration during the preliminary injunction proceedings, the Ninth Circuit held that at least one Plaintiff has standing to challenge each contested provision. *Id.* at 834–39.[2]

Following remand, this Court issued a scheduling order as to Counts IV and V.[3] Dkt. 73, Scheduling Ord. as to Counts IV & V. Discovery closes on September 14, 2026, and dispositive motions are due before October 19. On July 24, 2026, Plaintiffs filed a renewed motion for summary judgment. Dkt. 79, Pls. Renewed Mot. for Summ. J.[4]

---

[2] Although these facts were established at the preliminary injunction stage, they are part of the record and need not be re-established. *Cf.* Fed. R. Civ. P. 65(a)(2) (evidence received on a preliminary injunction motion "is part of the trial record and need not be repeated at trial").

[3] Plaintiffs bring Counts IV and V against the State. Plaintiff Adria Jawort brings Counts I and II against Defendant J.P. Gallagher. Counts I and II are not at issue in this motion.

[4] Plaintiffs initially moved for summary judgment on Counts IV and V on November 28, 2023. Dkt. 54, Pls. Mot. for Summ. J. The motion was held in abeyance and the case stayed pending the Ninth Circuit ruling. Dkt. 58, Scheduling Ord. Staying Case.

### III.  The State's Discovery Requests

On May 8, 2026, the State issued its First Combined Discovery Requests to Plaintiffs. Ex. 1, State's First Comb. Disc. Reqs. These requests included roughly 40 Requests for Admission ("RFAs") for each of the six plaintiffs at issue here, as well as between eight and thirteen numbered Interrogatories ("ROGs") and between seven and nine Requests for Production ("RFPs"). The RFAs sought admissions such as "Admit that In the Presence of Minors, You do not provide Performances intended to Appeal to a Prurient Interest in Sex." Ex. 1, State's First Comb. Disc. Reqs., 12 (Imperial Court RFA 15); *cf. Imperial Sovereign*, 170 F.4th at 873–875 (holding that HB 359's definition of "intended to appeal prurient interest" is unconstitutionally vague because it does not contain "several critical limitations that are part of the *Miller* obscenity test" and does not "in itself, adequately clarify or narrow the scope of the sexually oriented performance restrictions").

The State's first ROG for each Plaintiff sought to identify facts, legal theories, evidence, exhibits, and witnesses for every RFA not admitted in full, such that the State immediately exceeded the 25-ROG limit set forth in Federal Rule of Civil Procedure 33(1) for each of the six

Plaintiffs at issue here. *Browne v. Clark,* No. 2:21-CV-02840-AB-AJR, 2024 WL 4738210, at \*7 (C.D. Cal. Oct. 29, 2024) (single Interrogatory seeking separate responses for each of 82 RFAs exceeded Rule 33(1)'s limit because it constituted 82 Interrogatories.).

Plaintiffs expended considerable resources responding to the written discovery requests and, pursuant to the parties' agreement, timely provided objections and responses on June 29, 2026. The State has not sought to meet and confer on Plaintiffs' objections, nor sought additional information responsive to its written requests.

Instead, on July 9, 2026, counsel for the State sought Plaintiffs' consent to conduct 17 depositions. Ex. 2, M. Noonan & M. Danahy Emails, 16 (Jul. 9–27, 2026) ("Emails"); *cf.* Fed. R. Civ. P. 30(a)(2)(A)(i) (setting a ten-deposition limit per party). The State next provided draft 30(b)(6) notices for seven Plaintiffs. Emails, 15. Plaintiffs declined to stipulate to more than the ten depositions allowed by rule, objected to the scope of the proposed topics, and requested reasonable limits on any depositions to ensure that the burden of the depositions was proportional to the needs of the case. Emails, 9.

*Plaintiffs' Brief in Support of Motion for Protective Order*          7

The parties met and conferred on July 17, 2026. The State declined to agree to any time limits, declined to remove or limit any of the topics, and proceeded with noticing 30(b)(6) depositions for each of the six Plaintiffs described herein. Emails, 10; Ex. 3, State's 30(b)(6) Dep. Notices ("Dep. Notices"). The State reasoned it could not limit the time or topics because something could come up that piqued the State's "curiosity" and required further follow up. Plaintiffs informed the State they would seek a protective order barring or limiting the proposed depositions, which the State opposed. Emails, 7–8.

Should this Court allow depositions to proceed either pending or after resolving this motion, Plaintiffs have provided their availability to the State. While the State has not yet confirmed any dates, the earliest proposed deposition date is August 19, 2026. Emails, 1–2.

## LEGAL STANDARD

Rule 26(c)(1) authorizes courts "to protect a party from annoyance, embarrassment, oppression, or undue burden or expense" related to discovery. Fed. R. Civ. P. 26 (c)(1)(C), (D); *Anderson v. Boyne USA, Inc.*, No. CV-21-95-BU-BMM, 2024 WL 5700204, *2 (D. Mont. May 3, 2024). A protective order may "forbid[]" discovery or certain inquiries, or "limit

limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D); *Anderson* 2024 WL 5700204, *2.

The party seeking the protective order bears the burden of proving good cause. *Anderson*, 2024 WL 5700204, *2 (citing *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011)). "That burden is met by demonstrating a particular need for protection supported by specific facts as opposed broad allegations of harm." *Alvarado-Herrera v. Acuity*, 344 F.R.D. 103, 106 (D. Nev. 2023).

With respect to 30(b)(6) depositions, courts "have a duty to protect a party from being needlessly burdened." *Id.* at 107. "Pertinent circumstances for consideration include the number of topics, the scope of information sought by the topics, the complexity of the case, the amount of time allotted for the Rule 30(b)(6) deposition, the nature of the subject matter addressed in the topics (e.g., whether preparation may require expert or attorney input), and whether the information can be obtained more efficiently through other means." *Id.* at 108.

## ARGUMENT

Good cause exists to bar or limit the proposed depositions here. The Federal Rules of Civil Procedure must be "construed, administered, and

employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. And Rule 26 sets forth reasonable limits on the scope of discovery and empowers this Court to protect Plaintiffs from the undue burden, annoyance, and expense of discovery that is not proportional to the needs of the case.

The State here seeks to conduct up to 42 hours of 30(b)(6) depositions on 19 topics ostensibly related to standing—an issue the Ninth Circuit already conclusively resolved. These depositions follow extensive, unduly burdensome written discovery requests that appeared calculated to harass Plaintiffs rather than to obtain facts relevant to the State's defenses. The designated topics are largely irrelevant to Plaintiffs' standing given the exceedingly narrow legal issues remaining and—like the written discovery requests—appear intended to harass Plaintiffs for seeking to vindicate their constitutional rights. Because the State has failed to identify any actually disputed facts as to standing that depositions might elucidate, the Court should bar the depositions.

## I.    Plaintiffs' standing is resolved.

The Ninth Circuit has already held that at least one Plaintiff has standing to challenge each provision of HB 359 based on undisputed

facts. *Imperial Sovereign,* 170 F.4th at 833 ("Plaintiffs have standing."); *see* Fed. R. Civ. P. 65 (a)(2) (evidence received at preliminary injunction stage "is part of the trial record and need not be repeated at trial"). No reasonable dispute exists that at least one Plaintiff has standing to challenge each provision. *Imperial Sovereign,* 170 F.4th at 833.

Moreover, Plaintiffs' claims are purely legal and not factually complex. Even if standing were still at issue, Plaintiffs' burden is minimal. *Id.* at 834 ("because Plaintiffs claim that H.B. 359 restricts their First Amendment right to freedom of expression, we 'appl[y] the requirements of ripeness and standing less stringently'") (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022); *see Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) ("Particularly in the First Amendment-protected speech context, [courts] [have] dispensed with the rigid standing requirements"). To establish standing, Plaintiffs need only assert an intent to engage in conduct arguably criminalized under HB 359, for which the State does not disavow enforcement. *Imperial Sovereign*, 140 F.4th at 834. Alternatively, they may show that "the challenged prohibition is causing them to self-censor." *Id.*

*Plaintiffs' Brief in Support of Motion for Protective Order*          11

In light of the circumstances, subjecting six Plaintiffs to the burden of preparing for extensive 30(b)(6) depositions is clearly disproportionate.

## II. The State's proposed topics are irrelevant, unduly burdensome, and not proportional to the needs of this case.

Because no reasonable dispute exists as to Plaintiffs' intent to engage in conduct arguably proscribed by each challenged provision, *Imperial Sovereign*, 140 F.4th at 835–38, the State's 30(b)(6) topics are unduly burdensome, largely irrelevant, and not proportional to the needs of the case. *Alvarado-Herrera*, 344 F.R.D. at 107 ("The reasonableness of the length and scope of a Rule 30(b)(6) deposition notice turns on the circumstances of each case."). The State has offered no clarity regarding the additional evidence it seeks to uncover, or how the depositions are proportional to the case.

Instead, the State asserts simply that it is entitled to conduct up to ten seven-hour depositions under Rule 30, and that its broad topics are necessary to satisfy the State's curiosity. Emails, 8. This is insufficient to show proportionality or relevance, and falls far short of showing importance to resolve any dispute, or benefit that outweighs the significant burden and expense on all parties. Fed. Rule Civ. P. 26(b)(1); *see Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 865 (7th Cir.

*Plaintiffs' Brief in Support of Motion for Protective Order*          12

2005) (parties need not be forced to sit for depositions premised on speculation that deposition will reveal some "smoking gun").

Moreover, the topics themselves are also unduly burdensome. *Cf. Alvarado-Herrera*, 344 F.R.D. at 107 ("Given the obligation imposed on the noticed party to educate the witness, there is a reciprocal obligation imposed on the deposing party to draft the Rule 30(b)(6) notice with care."). The remaining issues are not factually complex but the scope and number of noticed topics are exceptionally broad and largely cumulative of existing record evidence. Preparing designees for each Plaintiff on all nineteen noticed topics (which are precisely the same for each Plaintiff) would require extensive time and resources. Plaintiffs have repeatedly offered to provide the State with specific facts via less burdensome means, but the State has declined to identify with specificity what facts it seeks. Instead, during the meet and confer, the State admitted that the topics were designed to allow the State to follow up on any issue that piques its curiosity. In other words, the State seeks a fishing expedition. And requiring Plaintiffs to prepare for topics the State knows it may not address is unduly, excessively burdensome. *Alvarado-Herrera*, 344 F.R.D. at 109 (finding 30(b)(6) notice improper where "it is plain that

*Plaintiffs' Brief in Support of Motion for Protective Order*          13

much of the preparation of a corporate deponent would almost certainly be wasted on matters not actually covered during the deposition").

For example, rather than investigating Plaintiffs' intent to engage in conduct arguably proscribed by the law—which is well established— the State plans to inquire into their missions; their understanding of drag and drag shows; the role and necessity of costuming, prosthetics, nudity, and simulated nudity in drag performances; the expressive value of drag; drag's importance to Plaintiffs' missions; their understanding of why it is necessary, beneficial, or important for minors to attend performances involving drag; and their policies and practices around age restrictions. Dep. Notices (Topics 1, 4–6, 8). None of these topics is relevant or proportional to the needs of the case.[5] *See Alvarado-Herrera*, 344 F.R.D. at 109 (deposition notice unreasonable where "rather than targeting those issues where corporate testimony is truly needed, the deposition notice tries to cover nearly every conceivable facet of the case").

The State also seeks to investigate Plaintiffs' leadership, board of directors, members, and participants. Dep. Notices (Topic 16). But

---

[5] This is particularly so because HB 359 includes no carve-out for events or performances that have "serious literary, artistic, political, or scientific value." *Imperial Sovereign*, 170 F.4th at 871–72.

membership and participation are First Amendment protected activities. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 462 ("This Court has recognized the vital relationship between freedom to associate and privacy in one's associations."). And regardless, the State offers no basis to invade the privacy of Plaintiffs' staffs, boards, members, and participants. *Cf. Centro de la Communidad Hispana de Locust Valley v. Town of Oyster Bay*, 954 F.Supp.2d 127, 140, 144 (E.D.N.Y. 2013) (protective order appropriate where defendants failed to show any need to invade members' privacy).

Next, the State seeks to investigate Plaintiffs' understanding of their discovery responses, including the factual basis for answers; the pleadings filed, including specific factual allegations supporting claims that HB 359 is unconstitutional; and any witnesses or exhibits Plaintiffs believe support their claims or positions. Dep. Notices (Topic 17–19). These types of topics unreasonably conflate a 30(b)(6) designee's obligation to testify as to facts reasonably known to the organization with the understanding of legal objections, responses, pleadings, and arguments. *See, e.g.*, *Alvarado-Herrera*, 344 F.R.D. at 107 (finding 30(b)(6) notice prejudicial where it sought testimony on "responses to . . .

*Plaintiffs' Brief in Support of Motion for Protective Order*      15

interrogatories, requests for production, and requests for admission" and "the factual basis for [defendant's] answer and affirmative defenses").

The State also seeks to investigate matters that are properly the subject of legal argument, not depositions. For example, the State wants to ask about Plaintiffs' understanding of HB 359 and its definitions, communications regarding internal, non-privileged analysis of their legal risk or compliance under HB 359, or any complaints or confusion received regarding events or programming related to HB 359. Dep. Notices (Topics 2–3, 11, 14). But Plaintiffs' subjective understanding of the law, its definitions, their legal risk, and any complaints or confusion are irrelevant. At issue is whether Plaintiffs intend to engage in activities that are arguably subject to the law's provisions, regardless of their subjective understanding of its text. *Imperial Sovereign*, 140 F.4th at 834. Moreover, Plaintiffs' subjective understanding of legal risk and efforts to comply with the law are likewise irrelevant because the State has not disavowed enforcement against them. *Id.*

Finally, the State seeks testimony from all six Plaintiffs regarding "Any events or programming [Plaintiff] has hosted, sponsored, or participated in since January 1, 2023 featuring costuming, prosthetics,

nudity, simulated nudity, or performances that could be described as featuring exposure of human genitals, buttocks, breast, or simulation of sexual activity," Dep. Notices (Topics 7); "Any service or sale of alcoholic beverages at events or premises since January 1, 2023, including any liquor licenses or permits held by [Plaintiff] and whether [Plaintiff] considers itself . . . a bar, nightclub, restaurant, or similar commercial enterprise," *id.* (Topic 9); "Any modifications, cancellations, postponements, or other changes to events, programming, or operations made or considered because of HB 359," *id.* (Topic 10); "Any state or local government funding received by [Plaintiff], including the source, amount, purpose, and duration of such support," *id.* (Topic 12); "The ownership, lease, or control of any property or premises upon which [Plaintiff] hosts events, and whether any such property or premises is considered public property," *id.* (Topic 13); and "Any evidence [Plaintiff] has that HB 359 has affected or will affect its events, programming, membership, participation, or ability to carry out its mission, as well as [Plaintiff's] current and future plans regarding events and programming (including any intent to host events that could arguably be subject to HB 359)," *id.* (Topic 15). While these topics at least bear some relevance to Plaintiffs'

standing, they are vastly overbroad given that the two organizational Plaintiffs the Ninth Circuit identified—Imperial Court and the Roxy Theater—have already provided sufficient evidence to establish standing to challenge HB 359's provisions.

That is, the record shows HB 359 immediately impacted Imperial Court by causing event organizers to "cancel[] Imperial Court's shows, refrain[] from advertising them, place[] them on hold indefinitely, or require[] modifications in response to H.B. 359." *Imperial Sovereign*, 170 F.4th at 837. Imperial Court has established self-censorship to avoid prosecution under Section 3(1). *Id.* It has modified performance content, adopted new costume restrictions, and limited advertising. *Id.* The State does not dispute that "some of Imperial Court's drag shows could qualify as sexually oriented performances under H.B. 359," and Imperial Court faces a credible threat of prosecution because the State has not disavowed enforcing HB 359 against them. *Id.*[6]

---

[6] The Ninth Circuit also held that individual plaintiffs Adria Jawort and Rachel Corcoran have standing to challenge Sections 3(2) and 3(4). *Imperial Sovereign*, 170 F.4th at 838–39. Importantly, because the Imperial Court produces drag shows at public libraries, it also has standing to challenge these provisions. *Id.* at 835–39.

*Plaintiffs' Brief in Support of Motion for Protective Order*          18

Similarly, the Roxy Theater has established an intent to engage in First Amendment protected activities that arguably fall within HB 359's scope, as well as a credible fear of prosecution. *Imperial Sovereign*, 170 F.4th at 835–36. The Roxy "is a nonprofit theater that receives state funding from the Montana Arts Council, authorizes alcohol consumption and hosts events for audiences of two or more." *Id.* at 836 (cleaned up). It "attests that it has presented, and intends to continue presenting, films and live performances that are not rated by the MPAA but appear to qualify as sexually oriented performances." *Id.* The State does not assert "that such unrated films and live performances are exempt from the definition of 'sexually oriented performances'" and thus they are "arguably proscribed by Section 2(1)." *Id.* Nor does the State disavow enforcement against the Roxy. *Id.*

\* \* \*

"Courts 'have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices.'" *Alvarado-Herrera*, 344 F.R.D. at 108 (quoting *Wieland v. Bd. of Regents of Nev. System of Higher Education*, No. 2021 WL 4443683, \*2 (D. Nev. Sept. 28, 2021)). Because the State's

30(b)(6) notices fall outside the scope of reasonable discovery, the Court should grant Plaintiffs' motion for protective order and prohibit the noticed depositions. *See, e.g.*, *id.* at 110 (issuing protective order against excessive and improper 30(b)(6) deposition notice).

## CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that the Court grant a protective order and bar the State from conducting the noticed 30(b)(6) depositions.

DATED this 28th of July, 2026.

/s/ *Molly E. Danahy*
Rylee Sommers-Flanagan
Molley E. Danahy
UPPER SEVEN LAW

Constance Van Kley
VAN KLEY LAW PLLC

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(2)(E), I hereby certify that this brief includes 3,858 words, excluding the caption and certificates. The word count was calculated using Microsoft Word.

/s/ *Molly E. Danahy*
Rylee Sommers-Flanagan
Molly E. Danahy
Caitlin M. Cocilova
UPPER SEVEN LAW

Constance Van Kley
VAN KLEY LAW PLLC

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed in CM/ECF on July 28, 2026, and served upon all registered users.

/s/ *Molly E. Danahy*
Rylee Sommers-Flanagan
Molly E. Danahy
Caitlin M. Cocilova
UPPER SEVEN LAW

Constance Van Kley
VAN KLEY LAW PLLC

*Attorneys for Plaintiffs*