Austin Knudsen
*Montana Attorney General*
Michael Russell
Thane Johnson
Alwyn Lansing
Michael Noonan
*Assistant Attorneys General*
MONTANA DEPARTMENT OF JUSTICE
PO Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
Michael.Russell@mt.gov
Thane.Johnson@mt.gov
Alwyn.Lansing@mt.gov
Michael.Noonan@mt.gov

*Attorneys for Austin Knudsen and Susie Hedalen*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, BUTTE DIVISION

THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA; ADRIA JAWORT; RACHEL CORCORAN; MONTANA BOOK COMPANY; IMAGINE BREWING COMPANY, LLC d/b/a IMAGINE NATION BREWING COMPANY; BUMBLEBEE AERIAL FITNESS; THE WESTERN MONTANA COMMUNITY CENTER; MONTANA PRIDE; THE GREAT FALLS LGBTQ+ COMMUNITY CENTER; THE ROXY THEATER, and THE MYRNA LOY,

Plaintiffs,

v.

AUSTIN KNUDSEN; SUSIE HEDALEN; and J.P. GALLAGHER,

Defendants.

Cause No. 2:23-cv-50-BMM

**AUSTIN KNUDSEN AND SUSIE HEDALEN'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

## INTRODUCTION

Attorney General Knudsen and Superintendent Hedalen (the "State Defendants") seek to depose six of the nine organizational Plaintiffs who brought this lawsuit. Yet Plaintiffs ask this Court to entirely exempt those six organizations from sitting for any deposition whatsoever. The Court should not grant Plaintiffs' request to handicap the State Defendants' ability to defend themselves in this lawsuit.

None of Plaintiffs' arguments justify excusing them from mine-run discovery obligations. They are simply wrong to suggest that the Ninth Circuit's preliminary-injunction decision decided their standing once-and-for-all. They must prove their standing during each successive phase of this lawsuit. And the State Defendants are thus entitled to muster evidence to attack Plaintiffs' standing on summary judgment and at trial. Plaintiffs otherwise rest on generic claims about the alleged "expense" or "burden" of preparing a witness to testify. But if courts credited such nonspecific claims, then essentially every party would be excused from participating in discovery. Plaintiffs offer no specific facts to support their alleged burdens. As a result, they have not shown good

cause that would warrant issuing a protective order. The Court should deny their motion.

## BACKGROUND

The Governor of Montana signed HB 359 into law on May 22, 2023. At a high level, that law places restrictions on sexually oriented businesses and designates locations where sexually oriented performances and drag story hours are prohibited. It also creates a private right of action for certain minors or their parents or legal guardians against a person who knowingly promotes, conducts, or participates as a performer in a performance that violates the law's other provisions.

Plaintiffs, a mix of individuals, businesses, and nonprofits, brought this action in July 2023, alleging that HB 359 is facially unconstitutional. This Court then conducted expedited proceedings, entered a temporary restraining order, and issued a preliminary injunction. The State Defendants timely appealed the preliminary injunction, and the Ninth Circuit affirmed.

In that interlocutory posture, the Ninth Circuit held that "at least one plaintiff" had "shown injury-in-fact for each statutory provision" sufficient to justify the preliminary injunction. *Imperial Sovereign Ct. of*

*Mont. v. Knudsen*, 170 F.4th 820, 835 (9th Cir. 2026). But as Judge Rawlinson emphasized in her concurrence, the Ninth Circuit's review at that time was "limited" given that it was in the preliminary-injunction phase of the case. *See id.* at 876 (Rawlinson, J., concurring).

Following remand, the parties have engaged in discovery to develop the factual record that was absent during the expedited preliminary-injunction proceedings. As part of the State Defendants' discovery efforts, on July 9, 2026—well in advance of the September 14 discovery deadline—they contacted Plaintiffs to confer about conducting depositions, including Rule 30(b)(6) depositions of the organizational Plaintiffs. (Doc. 83-2 at 16–18.) The parties met and conferred on July 17 but were unable to agree about the scope of the depositions. (*See id.* at 10–11.)

Then, on July 24, rather than allow the State Defendants to complete the fact discovery they had already requested, Plaintiffs filed a renewed motion for summary judgment on Counts IV and V. (*See generally* Docs. 79–81.) Four days later, Plaintiffs filed this motion for a protective order seeking to bar or limit the six Rule 30(b)(6)

depositions that the State Defendants had noticed for the organizational Plaintiffs. (*See generally* Doc. 83 ("MPO Br.").)

## LEGAL STANDARD

If a party from whom discovery is sought moves for a protective order, "[t]he court *may*, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1) (emphasis added). "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). The moving party cannot meet that burden merely by "a showing that discovery may involve some inconvenience and expense." *Twin City Fire Ins. Co. v. Emps. Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989). Such a showing "does not suffice to establish good cause." *Id.*

## ARGUMENT

### I. Plaintiffs are incorrect that the Ninth Circuit's preliminary injunction ruling "conclusively resolved" standing in this case.

Plaintiffs primarily argue that the noticed depositions are "clearly disproportionate," because "standing is resolved." (MPO Br. 10–12; *see also id.* at 1, 18.) Plaintiffs base this argument on the Ninth Circuit's

holding that they had standing during the preliminary-injunction phase of this case. *See Imperial Sovereign Ct.*, 170 F.4th at 834–42. But that holding does not relieve Plaintiffs of the burden of proving their standing during each subsequent phase of the case.

As an initial matter, the Supreme Court has said that a standing determination at the preliminary-injunction phase is merely a prediction about the likelihood that a plaintiff will have standing during the merits phase—not a conclusive determination of standing for all phases of the case. A plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). At the preliminary-injunction phase of a case, a "plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." *Id.* at 58; *see also Am. Encore v. Fontes*, 152 F.4th 1097, 1110 (9th Cir. 2025). In contrast, at the summary-judgment phase, a plaintiff must show each element of standing by a preponderance of the evidence. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Determinations that Plaintiffs made a "clear showing" during the preliminary-injunction phase do not automatically satisfy the more stringent "preponderance of the evidence"

standard at the summary-judgment or merits phases, especially when discovery is still ongoing.

Additionally, the Ninth Circuit has made clear that its holdings during the preliminary-injunction phase do not conclusively resolve issues for all other phases in a case. Without expressly invoking the term, Plaintiffs appear to be arguing that the "law of the case" doctrine controls here as to standing—*i.e.*, the doctrine that "a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013) (citation modified).

However, decisions at the preliminary injunction stage generally "do not constitute the law of the case." *Id.* (citation modified); *see Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 499 F.3d 1108, 1114 (9th Cir. 2007) ("[T]he district court should abide by 'the general rule' that our decisions at the preliminary injunction phase do not constitute the law of the case."). "This rule acknowledges that decisions on preliminary injunctions are just that—preliminary—and must often be made hastily and on less than a full record." *Ranchers*, 499 F.3d at 1114 (citation modified). And this makes

sense, as "the fully developed factual record may be materially different" at a later stage in the case. *See Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982).

Plaintiffs' insistence (at 11) that the issue here is "purely legal and not factually complex" does not defeat the Ninth Circuit's general rule that preliminary-injunction decisions do not constitute the law of the case. Of course, any "conclusions on pure issues of law" in a preliminary-injunction decision become "binding" law of the circuit. *Ranchers*, 499 F.3d at 1114. But on remand from a preliminary-injunction appeal, "[t]he district court must apply this law to the facts anew with consideration of the evidence presented in the merits phase." *Id.* That presumes the parties will develop further evidence on remand—even regarding issues discussed in a preliminary-injunction appeal. In other words, far from "conclusively resolv[ing]" standing (MPO Br. 10), the Ninth Circuit remanded this case, among other reasons, for this Court to take additional evidence relevant to Plaintiffs' standing.

Finally, Plaintiffs' standing is the sort of "mixed question of law and fact" that cannot become law of the case in a preliminary-injunction appeal. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 n.5 (9th Cir.

2015). On appeal, the Ninth Circuit extensively considered Plaintiffs' factual allegations related to standing, and its fact-based ruling is (at most) based on a mixed question of law and fact. *See, e.g.*, *Imperial Sovereign Ct.*, 170 F.4th at 836 (considering that "the Roxy Theater also *attests* that it has presented, and intends to continue presenting, films and live performances that are not rated by the MPAA but appear to qualify as sexually oriented performances for the same reasons as the MPAA-rated PG-13 and R films" (emphasis added)); *id.* at 838 (considering that "Imperial Court *attests* that it regularly produces drag performances at 'public spaces across the state,' including public parks and schools" (emphasis added)).

During discovery and summary judgment, the State Defendants are entitled to test Plaintiffs' assertions related to standing and seek a merits ruling from this Court that Plaintiffs lack standing. *See Ranchers*, 499 F.3d at 1114. Contrary to Plaintiffs' repeated assertions, the Ninth Circuit's preliminary injunction does not "resolve" standing for Plaintiffs.

## II. Plaintiffs have not shown good cause to warrant this Court granting Plaintiffs' motion for protective order.

As already stated, Plaintiffs rely heavily throughout their brief on their view that the Ninth Circuit's prior opinion on standing should

relieve them from depositions. In Plaintiffs' view, because of that opinion, "the proposed depositions are oppressive, seek irrelevant information, and are not proportional to the needs of the case." (MPO Br. 1, 12.) But as discussed above, that reasoning falls flat.

Without that argument, Plaintiffs have failed to meet their heavy burden of showing that they should be excused from depositions. *See Sequoia Prop. & Equip. Ltd. P'ship v. United States*, 203 F.R.D. 447, 451 (E.D. Cal. 2001) (quoting *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975)) ("[A] party seeking a protective order has a 'heavy burden' to show why discovery should be denied and a strong showing is required before a party will be denied the right to take a deposition."). Generally, "courts will not grant protective orders that prohibit the taking of deposition testimony." *U.S. EEOC v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006). But that is exactly what Plaintiffs ask this Court to do.

Plaintiffs want to shirk their basic discovery obligations and prevent the State Defendants from fully developing the factual record in the normal course of discovery. This is not a case of requests for subsequent depositions or even extensions on standard limits. The State

Defendants simply seek to depose the organizational Plaintiffs who brought this case.

Plaintiffs have failed to allege any "specific facts which indicate the nature and extent of the burden" they would incur if deposed. *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) ("[I]t has long been clear that a party claiming that discovery imposes an undue burden must 'allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'"). Plaintiffs allege (at 13) that preparing deponents "would require extensive time and resources." But such conclusory allegations are insufficient. *See Nationstar*, 316 F.R.D. at 334 ("Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient."); *Solida v. U.S. Dep't of Fish & Wildlife*, 288 F.R.D. 500, 503 (D. Nev. 2013) ("A showing that discovery may involve some inconvenience and expense does not suffice to establish good cause for issuance of a protective order. … Rather, a party seeking a protective order must show a particular and specific need for the protective order, and broad or conclusory statements concerning the need for protection are insufficient."). And a discovery request does not become

"unduly burdensome" just because complying with it "will involve expense or may be time consuming." *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 529 (D. Nev. 1997).

Beyond their generalized "expense" allegations, Plaintiffs' only other contention (at 13) is that the topics are "exceptionally broad" and not proportional to the case.[1] To the contrary, the topics are all within the same general category: what does each Plaintiff do and how does HB 359 affect it? For example, most of the topics concern the organizations' regular activities and how they might be affected by HB 359. (*See, e.g.*, Doc. 83-3 at 4–6 (Topics 1–3, 10–11, 14–16).) Several of the topics concern details of the organizations' performances and policies surrounding those performances. (*See, e.g.*, *id.* at 4–5 (Topics 4–8).) Some topics concern the organizations' operations. (*See, e.g.*, *id.* at 5 (Topics 9, 12–13).) And the remaining topics concern this case. (*See, e.g.*, *id.* at 6 (Topics 17–19).)

"[T]he concepts of burdensomeness and proportionality," including in the context of topics for a Rule 30(b)(6) deposition, "incorporate a

[1] Plaintiffs' contention (at 10) that State Defendants' discovery requests "appear intended to harass Plaintiffs" are unfounded and unsupported. They offer no support for this contention beyond bare assertion.

healthy dose of common sense." *Alvarado-Herrera v. Acuity A Mut. Ins. Co.*, 344 F.R.D. 103, 108 (D. Nev. 2023). And the State Defendants' deposition notices include only "common sense" topics that are well within the normal scope of questioning by a defendant regarding a plaintiff's standing. *Id.*

Plaintiffs' allegation (at 13) that this is a "fishing expedition" are entirely misplaced. Courts have sought to limit "fishing expeditions" when a *plaintiff* is attempting to bolster their own pleadings and standing. *See, e.g.*, *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1383 (D.C. Cir. 1984) (discussing jurisdictional discovery and "a fishing expedition of the most obvious kind, undertaken in the hope that some cause of action might be uncovered") (citation modified). The State Defendants are not "fishing" for information but rather conducting normal, permissible discovery in defending Montana's duly enacted law.

Plaintiffs' repeated reliance on *Alvarado-Herrera* is also unavailing. There, the plaintiff included ***68 topics*** in a Rule 30(b)(6) deposition notice. 344 F.R.D. at 110. Those 68 topics "attempt[ed] to cover nearly every conceivable facet of th[e] litigation, making the preparation of a thoroughly educated witness infeasible." *Id.* For example, one of the

topics concerned the details of every lawsuit within a similar category that had been filed against the defendant insurance company over a several year range. *Id.* at 109. And the defendant there was not wholly refusing to sit for the noticed Rule 30(b)(6) deposition. *Id.* at 108.

Here, by contrast, Plaintiffs object to sitting for any deposition at all. And the State Defendants' noticed topics (which are far fewer than the 68 in *Alvarado-Herrera*) all relate to the organization and its standing. The State Defendants are not asking Plaintiffs to prepare for deposition on topics well beyond their normal activities. Most of the topics should already be well within each Plaintiff's knowledge and should not require extensive preparation.

Further, to the extent Plaintiffs rely (at 1, 6, 13) on the fact that they have produced written discovery, such production is not a tradeoff for depositions. *See James Lee Constr., Inc. v. Gov't Emps. Ins. Co.*, 339 F.R.D. 562, 569 (D. Mont. 2021) ((“As argued by Plaintiffs, the simple fact they can obtain the information by other means of discovery does not prohibit them from doing so through a 30(b)(6) deposition”) (citing *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506–07 (D.S.D. 2009) (“Producing documents and responding to written discovery is not a

substitute for providing a thoroughly educated Rule 30(b)(6) deponent.")). Indeed, "[i]t has long been clear that written discovery and depositions are not equivalent forms of discovery that may be easily substituted for one another." *Colony Ins. Co. v. Sanchez*, No. 2:18-CV-01950-JCM-NJK, 2019 WL 3241160, at *3 (D. Nev. July 18, 2019). Plaintiffs cannot refuse to sit for depositions merely because they prefer to offer the information in a different format.

* * *

Plaintiffs have provided no adequate reason to exempt them from depositions. The Court should deny Plaintiffs' motion outright. Alternatively, at most, the Court should provide guidance about appropriate deposition topics and allow the State Defendants to reissue notices in accordance with that guidance. *See Alvarado-Herrera*, 344 F.R.D. at 108 ("[C]ourts generally issue a protective order precluding enforcement of the notice as currently drafted without prejudice to the issuance of a new notice with appropriately narrowed topics.").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a protective order. Alternatively, if the Court grants the motion, it

should allow the State Defendants to reissue notices in accordance with the Court's guidance.

DATED this 20th day of August 2026.

Austin Knudsen
*Montana Attorney General*

/s/Michael Russell
Michael Russell
Thane Johnson
Alwyn Lansing
Michael Noonan
*Assistant Attorneys General*
MONTANA DEPARTMENT OF JUSTICE
PO Box 201401
Helena, MT 59620-1401

*Attorneys for Austin Knudsen and Susie Hedalen*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2026, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

*/s/Michael Russell*
Michael Russell

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that the foregoing brief is printed with proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word, is 2,765 words, excluding the Caption and Certificates of Service and Compliance.

*/s/Michael Russell*
Michael Russell