Austin Knudsen
*Montana Attorney General*
Michael Russell
Thane Johnson
Michael Noonan
Assistant Attorneys General
Montana Department of Justice
PO Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Fax: (406) 444-3549
Michael.Russell@mt.gov
Thane.Johnson@mt.gov
Michael.Noonan@mt.gov

*Attorneys for Austin Knudsen and Susie Hedalen*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA; ADRIA JAWORT; RACHEL CORCORAN; MONTANA BOOK COMPANY; THE WESTERN MONTANA COMMUNITY CENTER; MONTANA PRIDE; THE GREAT FALLS LGBTQ+ COMMUNITY CENTER; THE ROXY THEATER, and THE MYRNA LOY,<br><br>Plaintiffs,<br><br>v.<br><br>AUSTIN KNUDSEN and SUSIE HEDALEN,<br><br>Defendants. | Cause No. 2:23-cv-50-BMM<br><br>**STATE DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT ON COUNTS IV & V** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

SUMMARY OF ARGUMENT .......... 1

LEGAL STANDARD .......... 3

ARGUMENT .......... 4

I. Plaintiffs lack standing to challenge Section 2 .......... 4

II. A narrowing construction and severance leave a valid restriction. .......... 7

A. The definition of "sexually oriented performance" is readily susceptible to a construction that reaches only a performance that is obscene as to a minor. .......... 8

B. The Court can sever the definition of "sexually oriented," and the provisions related to "drag story hour." .......... 13

*1. The definition of "sexually oriented" is severable.* .......... 13

*2. The "drag story hour" clause is severable.* .......... 15

III. The remaining performance restrictions are constitutional. .......... 17

A. The performance restriction narrowed to apply to obscenity only reaches what is obscene to minors. .......... 17

B. In the alternative, if the construction is rejected, the minor-present application of the restriction satisfies strict scrutiny .......... 21

IV. The remaining claims fail. .......... 22

A. Plaintiffs' overbreadth claim fails. .......... 22

B. The remaining restriction is not viewpoint discrimination. .......... 26

C. The remaining restriction is not void for vagueness. .......... 28

CONCLUSION .......... 31

CERTIFICATE OF COMPLIANCE .......... 32

CERTIFICATE OF SERVICE .......... 33

# Table of Authorities

## Cases

*Aleksich v. Indus. Accident Fund*, 116 Mont. 127, 151 P.2d 1016 (1944) 7

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020) .......... 13

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) .......... 19

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985) .......... 9

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) .......... 8

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) .......... 4, 28

*Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461 (2025) .......... passim

*GEFT Outdoor, LLC v. City of Evansville, Indiana*, 110 F.4th 935 (7th Cir. 2024) .......... 25

*Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886 (9th Cir. 2007) .......... 3, 7

*Ginsberg v. New York*, 390 U.S. 629 (1968) .......... passim

*GLBT Youth in Iowa Schs. Task Force v. Reynolds*, 114 F.4th 660 (8th Cir. 2024) .......... 25

*Hamad v. Gates*, 732 F.3d 990 (9th Cir. 2013) .......... 13

*Hamling v. United States*, 418 U.S. 87 (1974) .......... 9, 11, 29

*Imperial Sovereign Ct. of Montana v. Knudsen*, 170 F.4th 820 (9th Cir. 2026) .......... passim

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010) .......... 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 3, 5

*Miller v. California*, 413 U.S. 15 (1973)........................................ passim

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)............................. passim

*NetChoice v. Att'y Gen., Georgia*, No. 25-12436, 2026 WL 3079563 (11th Cir. Oct. 15, 2026)..........................................................25

*NetChoice, L.L.C. v. Paxton*, 121 F.4th 494 (5th Cir. 2024)..................24

*NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022)....................24

*NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092 (W.D. Tex. 2021).......24

*Osborne v. Ohio*, 495 U.S. 103 (1990).........................................9, 10, 11

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Department of Agriculture*, 499 F.3d 1108 (9th Cir. 2007)........5

*Sheehy v. Pub. Emps. Ret. Div.*, 262 Mont. 129, 864 P.2d 762 (1993).....4

*Stenberg v. Carhart*, 530 U.S. 914 (2000)..........................................3, 12

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........................7

*Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433 (2017)....................3

*United States v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123, 130 n.7 (1973)..........................................................................29

*United States v. Hansen*, 599 U.S. 762 (2023).......................................23

*United States v. Olson*, 856 F.3d 1216 (9th Cir. 2017)..........................12

*University of Texas v. Camenisch*, 451 U.S. 390 (1981)..........................5

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988)...................8

## Statutes

MCA § 1-2-101 ........ 12

MCA § 1-2-102 ........ 7

MCA § 1-2-107 ........ 6, 12

MCA § 16-4-420 ........ 6

MCA § 20-7-135 ........ passim

MCA § 45-2-101 ........ 30

MCA § 45-2-103 ........ 30

MCA § 45-5-622 ........ 30

MCA § 45-8-117 ........ passim

MCA § 45-8-118 ........ 14

MCA § 45-8-201 ........ passim

MCA § 45-8-205 ........ 10, 12, 27, 29

MCA § 50-40-103 ........ 6

## Rules

Fed. R. Civ. P. 56 ........ 3

## SUMMARY OF ARGUMENT

The Ninth Circuit based its prior opinion in this matter on a limited preliminary record. Standing remains disputed, and the evidence now before the Court shows that no remaining plaintiff is a sexually oriented business under Section 2 of HB 359. The statute can only reach a nightclub, bar, restaurant, or similar commercial enterprise that authorizes on-premises consumption of alcoholic beverages. Plaintiffs' own admissions and the licensing records of the Department of Revenue and the Department of Public Health and Human Services establish that none of the remaining Plaintiffs meets that definition. An overbreadth claim cannot create an injury the statute does not impose.

The definition of "sexually oriented performance" is readily susceptible to a construction that reaches only a performance that is obscene as to a minor. That construction simply applies the definitions of "prurient interest" and "obscene" the Legislature has already enacted to HB 359's terms. It is interpretation, not rewriting. Under this construction, the restriction applies to allegedly expressive conduct that is unprotected as to minors. The separate definition of "sexually oriented" is severable under the express severability clause and should be severed.

On appeal, the Ninth Circuit held that the "drag story hour" provisions are content-based restrictions that likely fail strict scrutiny. If this Court comes to the same conclusion at this stage, those provisions are also severable under the same severability clause. If both "sexually oriented" and the "drag story hour" provisions are invalid, the remainder of HB 359 can still be valid. Intermediate scrutiny applies, and the restriction survives because it advances the important interest in shielding minors from sexual content and does not burden substantially more speech than necessary. In the alternative, the minor-present application satisfies strict scrutiny.

Plaintiffs' remaining claims fail. They have not carried the burden *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) places on their facial challenge. The remaining restriction, as appropriately construed, is not viewpoint discrimination because it turns on the presence of a minor and the nature of the performance, not on the viewpoint expressed. It is not void for vagueness because the construction incorporates the ordinary-person standards of the *Miller* test, which supply the clarity the Ninth Circuit previously found lacking. The Court should grant State

Defendants' cross-motion on Section 2 and deny Plaintiffs' renewed motion for summary judgment on Counts IV and V.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

A plaintiff must establish standing for each claim and for each form of relief sought. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *Imperial Sovereign Ct. of Montana v. Knudsen*, 170 F.4th 820, 833 (9th Cir. 2026) ("Because each restriction has different elements, at least one plaintiff must have standing to challenge each restriction.") Standing is not settled by a preliminary-injunction holding on an undeveloped record. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Alleged overbreadth does not supply standing when no plaintiff is injured by the provision. *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891–92 (9th Cir. 2007).

A federal court should adopt a narrowing construction that is readily apparent when that construction avoids a constitutional difficulty. *Stenberg v. Carhart*, 530 U.S. 914, 944 (2000). When a

severability clause is present, the presumption it creates operates in support of the Legislature's intent that the remainder of the statute remain valid even where certain provisions are determined to be invalid. *Sheehy v. Pub. Emps. Ret. Div.*, 262 Mont. 129, 142, 864 P.2d 762, 770 (1993).

Speech that is obscene as to a minor is unprotected for the minor. *Ginsberg v. New York*, 390 U.S. 629, 636–37 (1968). A restriction limited to that speech, even if it incidentally burdens an adult's access to it, is subject to intermediate scrutiny. *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461, 478 (2025).

A statute is unconstitutionally vague only when it fails to provide fair notice of what is prohibited or is so standardless that it authorizes discriminatory enforcement. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

## ARGUMENT

### I. Plaintiffs lack standing to challenge Section 2.

Plaintiffs' standing section rests entirely on the Ninth Circuit's holding that they had standing to challenge HB 359 at the preliminary injunction stage. (Dkt. 80 at 10–11) (citing *Imperial Sovereign Court*, 170

F.4th at 833, 836–41. That holding does not control on this record. Standing is a continuing jurisdictional requirement that must be shown with the evidence the stage of litigation requires. *Lujan*, 504 U.S. at 561. Findings of fact and conclusions of law made at the preliminary-injunction stage are not binding at the merits stage. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Appellate decisions at that stage do not constitute the law of the case. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Department of Agriculture*, 499 F.3d 1108, 1114 (9th Cir. 2007). Conclusions on pure issues of law are binding, but the district court must apply those conclusions to the facts anew on the evidence presented at the merits stage. *Id.*

State Defendants' cross-motion demonstrates that no remaining Plaintiff is a sexually oriented business under Section 2. (Dkt. 106.) Section 2 applies only to a "nightclub, bar, restaurant, or similar commercial enterprise" that "authorizes on-premises consumption of alcoholic beverages." MCA § 45-8-117(9). Department of Revenue records show no on-premises alcohol license for Imperial Sovereign Court, Montana Book Company, Western Montana Community Center, or Great Falls LGBTQ+ Center. (Dkt. 109-1 at ¶¶ 34, 44, 54, 63.) Montana Pride

admitted it is not a nightclub, a bar, a restaurant, or similar to any of those. (*Id.* at ¶¶ 19–22.) Jawort and Corcoran are individuals. (*Id.* at ¶¶ 89–90.) The Roxy Theater and the Myrna Loy hold only nonprofit-arts beer-and-wine licenses, admitted they are not bars, and admitted that alcohol is not 60 percent of annual gross income.[1] (*Id.* at ¶¶ 66, 69, 71–72, 78, 81, 83–84.) Neither is a restaurant under the Code's definition of a public eating place that prepares and serves individually priced meals and derives at least 65 percent of gross from food prepared on the premises.[2] MCA § 16-4-420(4); (*Id.* at ¶¶ 74–76, 86–88.) "Similar

---

[1] The 60 percent figure is material because the Montana Code defines a "bar" as an establishment with a Title 16, chapter 4 license that is "devoted to serving alcoholic beverages for consumption by guests or patrons on the premises." MCA § 50-40-103(1). The Code further provides that an establishment is devoted to alcohol when "at least 60%" of annual gross income comes from alcohol or gambling, or both. *Id.* § 50-40-103(6). A definition in any part of the Code applies wherever the word occurs "except where a contrary intention plainly appears." MCA § 1-2-107. No contrary intention appears here. Section 2 uses "bar" for the same establishment the Code has already defined. An admission that alcohol is not 60 percent of gross income is therefore an admission that the plaintiff is not a bar under the statute that Section 2 incorporates.

[2] The 65 percent figure is material because the Montana Code defines a "restaurant" as a public eating place where "individually priced meals are prepared and served for on-premises consumption" and where "at least 65%" of annual gross income is "from the sale of food prepared on the premises and not from the sale of alcoholic beverages." MCA § 16-4-420(4). Section 2 uses "restaurant" for the establishment that authorizes on-premises consumption of alcoholic beverages. MCA § 45-8-117(9). An

commercial enterprise" does not reach a concession stand incidental to a film screening or live event. MCA § 1-2-102; *Aleksich v. Indus. Accident Fund*, 116 Mont. 127, 151 P.2d 1016, 1020 (1944).

Alleged overbreadth does not supply the missing injury. A pre-enforcement plaintiff must show an intention to engage in conduct the statute arguably covers. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). No such injury exists where the statute clearly fails to cover the plaintiff's conduct. *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010). Overbreadth does not confer standing on a plaintiff the statute does not reach. *Get Outdoors II, LLC*, 506 F.3d at 891–92.

No Plaintiff has standing to challenge Section 2. The Court should grant State Defendants' cross-motion and dismiss the challenge to Section 2.

## II. A narrowing construction and severance leave a valid restriction.

The Court should adopt a narrowing construction and sever any portions of HB 359 it deems invalid. "It has long been a tenet of First

---

admission that the plaintiff does not derive 65 percent of gross from food prepared on the premises is therefore an admission that it is not a restaurant under the statute that Section 2 incorporates.

Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975).) Once the construction is adopted, the invalid portions are severed under the express severability clause. What remains is a prohibition on the presentation of a performance that is obscene as to a minor. That prohibition is constitutional.

### A. The definition of "sexually oriented performance" is readily susceptible to a construction that reaches only a performance that is obscene as to a minor.

The Ninth Circuit did not reject a narrowing construction; it held that none had been identified, and it declined to speculate about one. *Imperial Sovereign Ct.*, 170 F.4th at 875 n.32. In her concurrence, Judge Rawlinson would not have stopped there. She wrote that the limited review of a preliminary injunction had kept the panel from examining "the portions of the legislation designed to shield children from vulgarities," that "portions of the challenged legislation could have well been salvaged," and that she "would also have pursued more assiduously

a narrowing construction of the legislation." *Id.* at 877–78 (Rawlinson, J., concurring).

Federal courts have repeatedly adopted narrowing constructions that confine a statute to obscenity when the statute is readily susceptible to that limitation. In *Hamling v. United States*, the Supreme Court construed the federal obscenity statute's broad terms—"obscene, lewd, lascivious, indecent, filthy or vile"—to reach only "patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller v. California*, [413 U.S. 15 (1973)]." 418 U.S. 87, 112–14 (1974). The Court treated *Miller* as a "clarifying gloss" that made the statute's meaning more definite rather than expanding its reach. *Id.* at 116. In *Brockett v. Spokane Arcades, Inc.*, the Court reversed facial invalidation of a state statute and held that the word "lust" in the definition of prurience should be narrowed or severed so the remainder could operate as a valid regulation of obscenity. 472 U.S. 491, 504–05 (1985). The Court emphasized that partial invalidation, not facial invalidation, is the required course when a statute is overbroad only at its margins. *Id.* at 506–07. In *Osborne v. Ohio*, the Court approved a state court's narrowing construction of a child-pornography statute to "lewd

exhibition or graphic focus on the genitals," noting that the limiting language tracked *Miller*'s own examples of permissibly proscribable conduct. 495 U.S. 103, 112–15 (1990).

This case presents the same situation. Subsection (10) reaches a performance "intended to appeal to a prurient interest in sex" that features the listed conduct. MCA § 45-8-117(10). The Code already defines those terms. Section 45-8-117(5) (HB 395 § 1(5)) incorporates the definition of "prurient interest in sex" in § 45-8-205 and describes it as "a shameful or morbid interest in sex or excretion." Section 45-8-117(7) (HB 395 § 1(7)) incorporates the definition of "obscene" in § 45-8-201. As defined:

> (2) A thing is obscene if:
>
> (a) (i) it is a representation or description of perverted ultimate sexual acts, actual or simulated;
> (ii) it is a patently offensive representation or description of normal ultimate sexual acts, actual or simulated; or
> (iii) it is a patently offensive representation or description of masturbation, excretory functions, or lewd exhibition of the genitals; and
>
> (b) taken as a whole the material:
> (i) applying contemporary community standards, appeals to the prurient interest in sex;
> (ii) portrays conduct described in subsection (2)(a)(i), (2)(a)(ii), or (2)(a)(iii) in a patently offensive way; and

> (iii) lacks serious literary, artistic, political, or scientific value.

MCA § 45-8-201(2).

The Court should therefore construe "sexually oriented performance" in MCA § 45-8-117(10) to reach only a performance that is obscene as to a minor. Under that construction, a performance is covered only if, taken as a whole, it appeals to a shameful or morbid interest in sex, portrays sexual conduct in a patently offensive way, lacks serious literary, artistic, political, or scientific value, and features the conduct listed in § 45-8-117(10). Those three elements—prurient interest, patently offensive portrayal of sexual conduct, and lack of serious value—are the same three elements the Supreme Court identified in *Miller* and the same three elements already present in MCA § 45-8-201(2). The construction therefore fully incorporates the three-part *Miller* test. It applies the definitions of "prurient interest in sex" and "obscene" the Legislature has already enacted for the words the statute uses. This would be the same step the Supreme Court took in *Hamling* when it limited broad statutory language to *Miller* hard-core sexual conduct, and the same step the Court approved in *Osborne* when it confined a statute

to the lewd-exhibition category *Miller* had already identified as permissibly proscribable.

A narrowing construction must be both (1) reasonable and (2) readily apparent. *Stenberg*, 530 U.S. at 944. When a term used in a statute is defined by that statute or by any other relevant statutory provision, courts generally presume that definition applies to the statute's use of the term. *United States v. Olson*, 856 F.3d 1216, 1223 (9th Cir. 2017). Applying the definitions of "prurient interest in sex" and "obscene" that the Legislature enacted in MCA §§ 45-8-205 and -201 to the words subsection (10) already uses is interpretation, not rewriting. The reading is therefore reasonable because it confines the statute to the category of speech the Supreme Court has already held is unprotected, and it is readily apparent from the text because it is the limitation the statute's own terms make available. Montana law requires that statutes be read together, and the definitions are not imported from outside the Code—they are the definitions the Legislature enacted for the words the statute uses. MCA §§ 1-2-101, 1-2-107. The statute is readily susceptible to a construction that reaches only a performance that is obscene as to a minor, and the construction should be adopted.

### B. The Court can sever the definition of "sexually oriented," and the provisions related to "drag story hour."

When a statute contains an express severability clause, the Court adheres to its text absent extraordinary circumstances. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 624 (2020). The clause creates a "strong presumption" that the legislature did not intend the validity of the act to depend on any single provision. *Id.* at 624-27; *Hamad v. Gates*, 732 F.3d 990, 1001 (9th Cir. 2013). The presumption is overcome only if the text or historical context makes it evident that the legislature would have preferred no statute at all to a statute with the invalid part excised. *Hamad*, 732 F.3d at 1001.

The retained portions must be (1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with the legislature's basic objectives. *Id.* HB 359 contains an express severability clause. (Dkt. 107-1, § 6.) The remaining provisions meet the test.

#### *1. The definition of "sexually oriented" is severable.*

The definition of "sexually oriented" in MCA § 45-8-117(8) is severable. Section 45-8-117(10) independently defines a "sexually oriented performance" by reference to a prurient interest in sex and the listed conduct. As the Ninth Circuit observed, "H.B. 359's definition of

'sexually oriented' does not include a comparable intent requirement, § 1(8)," as such "some performances arguably would qualify as sexually oriented performances despite the absence of any intent to appeal to a prurient interest." *Imperial Sovereign Ct.*, 170 F.4th at 839. Severance of "sexually oriented" removes that problem while leaving subsection (10) intact.

After severance, the remainder is constitutionally valid. Section 45-8-117(10) continues to identify a performance intended to appeal to a prurient interest in sex that features the listed conduct. As construed above, that performance is one that is obscene as to a minor. A restriction limited to speech that is unprotected as to the minor is not a content-based ban on protected expression.

The remaining portions can function independently. Section 45-8-117(10) does not depend on subsection (8). It contains its own definition of the conduct it reaches. The restrictions in §§ 45-8-118 and 20-7-135 (Sections 2 and 3 of HB 359) that regulate a sexually oriented performance continue to operate by reference to MCA § 45-8-117(10) alone.

The severance is consistent with the legislature's basic objectives. HB 359's title and operative provisions address sexually oriented performances. The separate definition of "sexually oriented" is not required for those provisions to function.

### *2. The "drag story hour" clause is severable.*

The "drag story hour" clause in MCA § 20-7-135(2) is discrete. It is the only provision in the act that uses the term "drag story hour." The definitions of "drag king," "drag queen," and "drag story hour" appear only in MCA § 45-8-117(1)–(3) and support that single clause. Subsections (1) and (3) of MCA § 20-7-135 prohibit a sexually oriented performance without any reference to a drag story hour.

The Ninth Circuit held that the "drag story hour" provisions are content-based restrictions that fail strict scrutiny. *Imperial Sovereign Ct.*, 170 F.4th at 855–66. Those holdings are pure issues of law and are binding on this Court.[3] Assuming the Court applies the Ninth Circuit's holdings, the provisions should be severed under the express severability

[3] While Defendants disagree with these holdings, they do not reargue these issues here in light of the law of the case doctrine. Defendants do not waive these issues for any future appeal.

clause. The clause and its related provisions are severable because the remainder of HB 359 can exist on its own.

First, the remaining performance restrictions are constitutionally valid for the reasons set out in Section III. They reach only a performance that is obscene as to a minor, or, in the alternative, they satisfy strict scrutiny when a minor is present. Second, the remaining portions are capable of functioning independently. Subsections (1) and (3) of § 20-7-135 already prohibit a sexually oriented performance on school and library premises and at school-sanctioned activities without any reference to a drag story hour. MCA § 20-7-135(1), (3). The definitions of "drag king," "drag queen," and "drag story hour" have no application outside the single clause that uses them. MCA § 45-8-117(1)–(3). Third, the remaining portions are consistent with the legislature's basic objectives. The Act's purpose is to restrict inappropriate sexual conduct in the presence of minors and in certain locations. The drag-story-hour clause is one means of achieving that purpose. It is not the purpose itself. The remaining restrictions advance the same objective without the clause.

The clause is therefore severable. If found invalid, it does not take the remainder of the statute with it. If the Court finds the clause unconstitutional, it should sever the clause and enforce the remainder.

## III. The remaining performance restrictions are constitutional.

The restrictions before the Court are those that remain after the construction of "sexually oriented performance" and the severance of the definition of "sexually oriented" and the "drag story hour" provisions. What remains is a prohibition on the presentation of a performance that is obscene to a minor. Plaintiffs cannot establish that this prohibition is invalid in all possible applications. *Moody*, 603 U.S. at 723.

### A. The performance restriction narrowed to apply to obscenity only reaches what is obscene to minors.

Speech that is obscene is not protected by the First Amendment. *Miller*, 413 U.S. at 23. When the audience is a minor, the line is drawn further. *Imperial Sovereign Ct*, 170 F.4th at 850–53 (explaining obscenity for minors.) Material that is not obscene for an adult may be obscene as to a minor, and a state may prevent children from accessing it. *Ginsberg*, 390 U.S. at 636–37. "The First Amendment leaves undisturbed States' traditional power to prevent minors from accessing speech that is obscene from a minor's perspective." *Free Speech Coal., Inc.*, 606 U.S. at 478

(citing *Ginsberg*, 390 U.S., at 641.) A law that exercises that power and only incidentally burdens adults' access to speech that is obscene only to minors is subject to intermediate scrutiny. *Id.* at 478–82. Presenting an obscene performance to a minor is already an offense. MCA § 45-8-201(1)(b).

The obscenity construction places the restriction inside that rule. The performance it covers is obscene as to a minor. The applications the Ninth Circuit treated as covered are outside it. What remains is unprotected as to the minor. The restriction applies only when a minor is present, and its effect on adult speech is incidental. Strict scrutiny does not apply. *Free Speech Coalition, Inc.*, 606 U.S. at 478–82. Intermediate scrutiny does. A law survives if it "advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Id.* at 495–96 (cleaned up). It need not be the least restrictive means, and the First Amendment "imposes no freestanding underinclusiveness limitation." *Id.* at 493.

The interest is important, and the Ninth Circuit treated it as compelling. The panel identified the State's interest in protecting minors

from exposure to sexualized performances as a compelling one and faulted the unconstrued statute only on tailoring. *Imperial Sovereign Ct.*, 170 F.4th at 870. The construction remedies that flaw. Shielding minors from material that is obscene as to them is the interest *Ginsberg* recognized and the interest *Paxton* described as "important." *Ginsberg*, 390 U.S. at 639–40; *Free Speech Coalition, Inc.*, 606 U.S. at 496 ("…shielding children from sexual content is important, even 'compelling.'") Judge Rawlinson identified the same interest when she wrote that speech protected before adults need not be protected before children, and that a school has an "interest in protecting minors from exposure to vulgar and offensive spoken language." *Imperial Sovereign Ct.*, 170 F.4th at 876–78 (Rawlinson, J., concurring) (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986)).

Dr. Geeta Nangia supplies the developmental facts that support the interest. Childhood and adolescence are high-plasticity windows in which novel sexual stimuli and repeated observation of sexualized or exaggerated gender performance can shape arousal templates, gender schemas, and what the child treats as normal adult conduct more readily than the same exposure in adulthood. *See State Defendants' Statement of*

*Disputed Facts* Ex. A, ¶¶ 22–23. Complete nudity is not required: prosthetic breasts or genitals, G-string or strap-on presentation, stripping or simulated stripping, grinding, or other overtly sexual movement still present adult sexual anatomy and signaling, and a child lacks the developmental capacity to file that presentation under "art" or "parody" the way an adult can. *Id.* ¶ 25. A costumed adult receiving applause, laughter, tips, or approval is a salient, reinforced model, and exaggerated gender presentation, costume, mannerism, and movement are the kind of visible conduct children copy. *Id.* ¶ 21. In middle childhood and early adolescence, identity and sexual development are unfinished, and children are highly sensitive to what the environment treats as approved. *Id.* ¶ 30. Exposure to that conduct in a performance that is obscene as to the minor is not the same as exposure to a reading or to expressive dress that does not feature the listed conduct.

The restriction does not burden substantially more speech than necessary. It applies only to a performance that is obscene as to a minor, and only when a minor is present. Intermediate scrutiny is satisfied.

### B. In the alternative, if the construction is rejected, the minor-present application of the restriction satisfies strict scrutiny.

If the Court declines the obscenity construction, the remaining restriction is still not facially invalid. For purposes of this alternative, the restriction in MCA § 45-8-117(10) is treated as content-based and "drag story hour," if found unconstitutional, is severed and removed from the analysis. Section 45-8-117(10) nevertheless satisfies strict scrutiny when a minor is present. The compelling interest is the one identified above.

The restriction is narrowly tailored to that interest in the minor-present application. After severance of subsection (8) and the drag-story-hour provisions, the restriction reaches only a performance that is intended to appeal to a prurient interest in sex and that features the purposeful exposure of specified anatomy or a prosthetic, stripping, or sexual conduct. MCA § 45-8-117(10). It does not reach a performance that lacks that intent or that does not feature that conduct.

A less restrictive alternative would not serve the interest as directly. An age-verification requirement would keep a minor from entering a venue. It would not reach a performance that occurs in a public place, on public property, or in a school or library where the minor is

already present. A parental-consent requirement would require a parent to approve the minor's attendance. It would not prevent the minor from seeing the performance once the parent has consented or once the minor is present without consent. A restriction limited to performances presented for a minor audience would leave a performance that is open to the public, or that is presented in a school or library during regular hours, outside its reach. The State's interest is in preventing the minor from being exposed to harmful conduct. The restriction serves that interest by prohibiting the performance when a minor is in the audience. No narrower prohibition would prevent the exposure in the settings the statute reaches, including public property, schools, and libraries where a minor is already present and where age verification or parental consent cannot prevent the minor from seeing the performance. The minor-present application of the remaining restriction is narrowly tailored. Strict scrutiny is thus satisfied.

## IV. The remaining claims fail.

### A. Plaintiffs' overbreadth claim fails.

Plaintiffs allege that "HB 359's unconstitutional applications are realistic, not fanciful, and their number is disproportionate to the bill's

lawful sweep," and that the statute's "overbreadth" chills speech. (Dkt. 3 at ¶¶ 132–33.) They renew the claim in their latest motion for summary judgment, arguing that the statute is facially invalid under *Moody*. (Dkt. 80 at 12–13.) Their claim fails.

A plaintiff who seeks facial invalidation must show that the statute "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *Moody*, 603 U.S. at 723 (quoting *United States v. Hansen*, 599 U.S. 762, 770 (2023)). "Even in the First Amendment context, facial challenges are disfavored," and "neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications." *Id.* at 744. The plaintiff must determine the full scope of the law's coverage, including all of its applications, decide which of those applications are constitutional and which are not, and then weigh the one against the other. *Id.* That burden is the price of a facial challenge. *Id.*

Plaintiffs have not satisfied that burden. In their brief, they quote the *Moody* standard and then assert that the statute meets it "because each component is a content-based restriction of speech that triggers and fails strict scrutiny." (Dkt. 80 at 13.) They quote the Ninth Circuit's statement that if a content-based restriction fails strict scrutiny, "the

analysis ends" and the law is facially invalid, and they conclude that they "easily satisfy *Moody*." *Id.* They do not identify the full set of applications of the statute as written. They do not describe the different ways the restrictions can apply, separate any constitutional applications from the ones they claim are unconstitutional, or perform any weighing. They treat the failure of strict scrutiny as automatically satisfying the inquiry *Moody* requires. It does not.

The Fifth, Seventh, Eighth and Eleventh Circuits have required *Moody*'s overbreadth inquiry for First Amendment facial challenges even when the challenge involved an alleged content-based and/or viewpoint-based speech restriction. In the Fifth, and on remand from *Moody*, the Court required the district court to employ *Moody*'s two-step facial framework, observing that the burden was on the plaintiffs to develop the factual record. *NetChoice, L.L.C. v. Paxton*, 121 F.4th 494, 498–500 (5th Cir. 2024). Like here, the plaintiffs had alleged that the challenged law imposed a "content-based [and] viewpoint-based . . . restriction[]. *NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092, 1114 (W.D. Tex. 2021) *vacated and remanded sub nom. NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), *vacated and remanded sub nom. Moody v. NetChoice,*

*LLC*, 603 U.S. 707, 144 S. Ct. 2383, 219 L. Ed. 2d 1075 (2024). In the Seventh and involving another content- and viewpoint-based discrimination challenge, the Court faulted the plaintiffs for failing to demonstrate under *Moody* that a substantial portion of the law's applications are unconstitutional. *GEFT Outdoor, LLC v. City of Evansville, Indiana*, 110 F.4th 935, 937 (7th Cir. 2024). In the Eighth, the Court led the inquiry *Moody*'s two-step test, again, even though the matter involved the same discrimination claim as here. *GLBT Youth in Iowa Schs. Task Force v. Reynolds*, 114 F.4th 660, 669 (8th Cir. 2024). And more recently, in the Eleventh Circuit, the same result in the same type of challenge occurred. *NetChoice v. Att'y Gen., Georgia*, No. 25-12436, 2026 WL 3079563, at *2, 7–8 (11th Cir. Oct. 15, 2026). In each of these cases, the Circuit Courts interpreted *Moody* as requiring an overbreadth analysis even when the plaintiffs brought a content-based and/or viewpoint-based claim under the First Amendment.

The Ninth Circuit took a different view of sequencing. It held that if a court concludes a content-based speech restriction fails strict scrutiny, the analysis ends and the law is facially invalid without a separate *Moody* weighing. *Imperial Sovereign Court*, 170 F.4th at 844–

45. While that holding is the law of this Circuit on the order of analysis for a content-based claim, it should not relieve Plaintiffs of the burden *Moody* places on them, and it does not supply the missing facts and weighing of the law's applications. Plaintiffs have not performed that work on the statute as written. Their overbreadth claim fails.

### B. The remaining restriction is not viewpoint discrimination.

Plaintiffs argue that HB 359 targets "drag" because the State disapproves of "the message that drag conveys about gender," and that it "singles out particular speakers—drag queens and drag kings—simply because lawmakers find their expressions of gender offensive or inappropriate." (Dkt. 80 at 17–18.) They point to the bill sponsor's comments about gender roles and the rejection of a more neutral amendment. (*Id.* at 18–19.) The claim is that the statute is aimed at drag as a viewpoint about gender.

The provisions that name drag are the drag-story-hour ban and its related definitions. MCA §§ 45-8-117(1)–(3), 20-7-135(2). Those provisions can be severed and have no bearing on sexually oriented performances in any event. Indeed, the restrictions on sexually oriented performances make no mention of drag, drag kings, or drag queens.

As construed, a sexually oriented performance is one that, taken as a whole, appeals to a shameful or morbid interest in sex, portrays sexual conduct in a patently offensive way, lacks serious literary, artistic, political, or scientific value, and features the listed conduct in subsection (10). MCA §§ 45-8-117(10), 45-8-201, 45-8-205. The restriction applies only when a minor is present. It regulates speech that is unprotected as to a minor. *Ginsberg*, 390 U.S. at 636–37; *Free Speech Coal., Inc.*, 606 U.S. at 478. The restriction reaches that conduct whether or not the performer is in drag. Such a performance is implicated regardless of any supposed expression of a view about gender. A performance that does not meet it is not covered, even if the performer is in drag.

The legislative history Plaintiffs point to repeatedly does not change the result. (Dkt. 80 at 6–9, 18–19.) The sponsor's comments and the rejection of a different amendment concern the provisions addressing drag. They do not rewrite the remaining restriction into a ban on a viewpoint about gender. The restriction, as construed herein, reaches conduct that is obscene as to a minor. That is not viewpoint discrimination.

### C. The remaining restriction is not void for vagueness.

Plaintiffs argue that HB 359 is void for vagueness because it fails to define terms central to its application, leaves the relationship between its definitions unclear, and does not incorporate the *Miller* standard. (Dkt. 30 at 27–30.) A law is impermissibly vague when it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement. *Fox Television Stations, Inc.*, 567 U.S. at 253. The remaining restriction, as properly construed, is not impermissibly vague.

The terms Plaintiffs identify as undefined—"flamboyant," "parodic," "exaggerated costumes and makeup," "salacious dancing," "lewd," "lascivious," and "sexual manner"—appear in the drag-story-hour definitions and the related ban. (Dkt. 80 at 27); MCA §§ 45-8-117(1)–(3), 20-7-135(2). As argued, *supra*, those provisions can be severed if the Court finds the restrictions on "drag story hour" to be unconstitutional. Should they be severed, the terms that form the core of the vagueness claim are no longer part of the statute that remains.

What remains is the sexually oriented performance restriction. As properly construed, that restriction fully incorporates the three-part

*Miller* test. A sexually oriented performance is one that, taken as a whole, applying contemporary community standards, appeals to the prurient interest in sex; portrays the specified sexual conduct in a patently offensive way; and lacks serious literary, artistic, political, or scientific value; and features the listed conduct in subsection (10). MCA §§ 45-8-117(10), 45-8-201(2), 45-8-205; *Miller*, 413 U.S. at 24. The Supreme Court has held that a statute construed to incorporate the complete *Miller* framework provides fair notice and cannot be void for vagueness. *Hamling*, 418 U.S. at 112–16; *United States v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123, 130 n.7 (1973). The construction also eliminates the ambiguity Plaintiffs identify between the definition of "sexually oriented" in subsection (8) and the definition of "sexually oriented performance" in subsection (10). (Dkt. 80 at 28–29.) Once subsection (8) is severed, only the construed subsection (10) remains. Because the restriction reaches only a performance that meets the full *Miller* test and features the listed conduct, it does not authorize enforcement against a person who simply dresses or presents in a non-conforming way.

The residual questions do not change the result. "Any form of funding from the state" means funds the State provides. (Dkt. 80 at 29.) Whether a particular grant qualifies is a question of application, not of the statute's meaning. "In the presence of" a minor means the minor is in the audience. A minor walking past an outdoor event out of earshot is not in the presence of the performance. See, *e.g.* MCA § 45-5-622(4)(b)(ii) ("'In the presence of a child' means in the physical presence of a child or having knowledge that the child may see or hear an act. . .[.]") The Calendar Girls hypothetical is answered by the proper construction. A production that does not meet the full *Miller* standard and does not feature the listed conduct in MCA § 45-8-117(10) is not covered. Montana law supplies a mental state. A person acts "knowingly" with respect to the result of conduct when the person is aware that it is highly probable that the result will be caused by the conduct, and acts "purposely" when it is the person's conscious object to engage in the conduct or cause the result. MCA §§ 45-2-101(35); (65), -103; 45-8-201(1) ("A person commits the offense of obscenity when, with knowledge of the obscene nature of the material, the person purposely or knowingly:") The remaining restriction does not impose strict liability.

The remaining restriction, as properly construed, provides fair notice. It is not void for vagueness.

## CONCLUSION

The Court should grant State Defendants' cross-motion for summary judgment on Section 2 and deny Plaintiffs' renewed motion for summary judgment on Counts IV and V.

DATED this 30th day of October 2026.

Austin Knudsen
Montana Attorney General

/s/ Michael Noonan
Michael Noonan
Michael Russell
Thane Johnson
Assistant Attorneys General
Montana Department of Justice
PO Box 201401
Helena, MT 59620-1401

*Attorneys for Austin Knudsen and Susie Hedalen*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that the foregoing brief is printed with proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word, is 5,828 words, excluding the Caption and Certificates of Service and Compliance.

*/s/ Michael Noonan*
Michael Noonan

## CERTIFICATE OF SERVICE

I certify that on October 30, 2026, I served an accurate copy of the foregoing document electronically on registered counsel through the Court's CM/ECF system.

Dated: October 30, 2026

*/s/ Michael Noonan*
Michael Noonan