Rylee Sommers-Flanagan
Molly E. Danahy
Caitlin M. Cocilova
UPPER SEVEN LAW
P.O. Box 31
Helena, MT 59624
(406) 998-6067
rylee@uppersevenlaw.com
molly@uppersevenlaw.com
caitlin@uppersevenlaw.com

Constance Van Kley
VAN KLEY LAW PLLC
P.O. Box 451
Missoula, MT 59806
(605) 517-0673
constance@vankleylaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA, et al.,<br><br>*Plaintiffs*,<br><br>vs.<br><br>AUSTIN KNUDSEN; SUSIE HEDALEN; and J.P. GALLAGHER,<br><br>*Defendants*. | Cause No. CV-23-50-BU-BMM<br><br>Hon. Brian Morris<br><br>**Plaintiffs' Brief in Opposition to Defendants' Cross-Motion for Partial Summary Judgment on Counts IV & V** |

## INTRODUCTION

This Court and the Ninth Circuit have determined three separate times that Plaintiffs have standing to challenge HB 359's restrictions on sexually oriented performances. *See Imperial Sovereign Court of the State of Mont. v. Knudsen*, 699 F. Supp. 3d 1018, 1031–35 (D. Mont. 2023); *Imperial Sovereign Court of the State of Mont. v. Knudsen*, 170 F.4th 820, 835–36 (9th Cir. 2025); *see also* Doc. 99 at 8–10. The fourth time is not the charm. The State's latest attempt to avoid the merits of Plaintiffs' claims cannot succeed.

The State challenges Plaintiffs' standing only with respect to Section 2 of HB 359, which governs "sexually oriented businesses." The State asserts that no Plaintiff is a "sexually oriented business," and specifically that the Roxy Theater and the Myrna Loy (collectively, the "Theaters") do not meet that definition. This argument does not implicate Plaintiffs' standing to challenge the substance of HB 359—which broadly restricts "sexually oriented performances" in locations other than "sexually oriented businesses."

Even on its own terms, the State's argument fails, not least because it is refuted by its own evidence. In support of its motion, the State

affirmatively introduces evidence that its own licensing board considers the Roxy Theater to be a "TAVERN OR BAR," Doc. 107-3 at 4, 7, and offers an "ordinary meaning" of "bar" that both Theaters indisputably meet, Doc. 106 at 9. The Theaters are arguably "sexually oriented businesses" under HB 359, which is all that is required for standing.

But even if Plaintiffs did, in fact, need to tie standing to "sexually oriented businesses" and even if the State had shown that the Theaters do not meet the definition, Plaintiff Imperial Sovereign Court of the State of Montana ("Imperial Court") performs at and hosts events in bars and restaurants, and those events arguably qualify as "sexually oriented performances." They have standing to challenge the restrictions on such establishments because the prohibition of sexually oriented performances in sexually oriented businesses prohibits their own speech.

## LEGAL STANDARD

Rule 56 authorizes a party to move for summary judgment on "part of each claim or defense." Fed. R. Civ. P. 56(a). The motion should be denied unless "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

## ARGUMENT

The only question the State's motion raises is whether the undisputed facts establish that the Theaters inarguably do not qualify as sexually oriented businesses under HB 359. The State cannot meet its burden. Its position is immaterial to the outcome of the case, and its arguments are contradicted by the law and contrary to its own evidence. The Court should find that Plaintiffs have standing and deny the motion.

### I. If the State cannot ban "sexually oriented performances," Plaintiffs will fully succeed on Counts IV and V, regardless of whether any Plaintiff is a "sexually oriented business."

The State seeks partial summary judgment "on Counts IV and V to the extent those counts challenge Section 2" of HB 359. Doc. 106 at 2. Section 2 prohibits "sexually oriented performances" in "sexually oriented businesses." As defined in HB 359, § 1, a "sexually oriented business" is "a nightclub, bar, restaurant, or similar commercial enterprise" that allows consumption of alcohol and allows a "sexually oriented performance," which is separately defined in Section 1. Section 2 provides for criminal fines and business delicensure when a "sexually oriented business" allows a minor "to enter the premises of the business during a sexually oriented performance." HB 359, § 2(1), (2).

The State does not contend Plaintiffs lack standing under Section 3. Section 3 prohibits "sexually oriented performances" in various other locations, including "[a] library that receives any form of funding from the state," "[a] school . . . during regular operating hours or any school-sanctioned extracurricular activity," "on public property in any location where the performance is in the presence of an individual under the age of 18," and "in a location owned by an entity that receives any form of funding from the state." HB 359, § 3(1), (2), (3).

As the Ninth Circuit correctly determined—and the State does not dispute in its motion—at least one Plaintiff, the Roxy Theater, has demonstrated standing to challenge HB 359's restrictions on sexually oriented performances. *Imperial Sovereign Court*, 170 F.4th at 835–36. The Ninth Circuit based its decision not only on the Roxy Theater's status as a "sexually oriented business" but also on its "recei[pt of] state funding from the Montana Arts Council." *Id.* at 836; *see* HB 359, § 3(3)(b) ("A sexually oriented performance is prohibited . . . in a location owned by an entity that receives any form of funding from the state."). The State does not contest the Roxy Theater's funding. If Plaintiffs successfully demonstrate that the Constitution prohibits the State from banning

"sexually oriented performances," the State will be unable to constitutionally enforce the ban across the board, including against "sexually oriented businesses." Thus, as a practical matter, the State's motion can have no real effect—even if its arguments were persuasive.

The Court need not reach overbreadth, but the doctrine provides another reason why the State's motion has no impact. The State does not contest Plaintiffs' standing to challenge HB 359's bans on "sexually oriented performances" and "drag story hours." Thus, there is no question that Plaintiffs "demonstrate an injury in fact to invoke a federal court's jurisdiction" over their facial challenge. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 999 (9th Cir. 2004)); *see, e.g.*, *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 954–58 (1984) (for-profit fundraising corporation subject to one statute within scheme could challenge restriction that operated directly on charities). If the overbreadth doctrine's requirements are satisfied—that is, if HB 359's "unconstitutional applications . . . [are] substantially disproportionate to [its] lawful sweep"—then the appropriate remedy is invalidation of HB 359. *United States v. Hansen*, 599 U.S. 762, 770 (2023).

## II. Plaintiffs the Roxy Theater and the Myrna Loy arguably fall within HB 359's definition of "sexually oriented business."

The Roxy Theater and the Myrna Loy are community-centered arts organizations, but under HB 359's terms, they arguably qualify as "sexually oriented businesses." This is enough for standing. *See Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) ("In the free speech context, . . . a fear of prosecution will only inure if the plaintiff's intended speech arguably falls within the statute's reach.").

A plaintiff has standing to bring a pre-enforcement First Amendment challenge where it faces "'a credible threat of enforcement'": "(1) a plaintiff must allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) a plaintiff's intended future conduct must be 'arguably . . . proscribed by [the] statute' it wishes to challenge, and (3) the threat of future enforcement must be 'substantial.'" *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59 (9th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–62, 164 (2014)). The State's arguments center exclusively on the second requirement—whether any Plaintiff <u>arguably</u> falls within the statutory definition of "sexually oriented business." *See id.* at 60.

The Theaters sell alcohol to patrons who attend "sexually oriented performances" as defined by HB 359. *See Imperial Sovereign Court*, 170 F.4th at 836 (reaching only the Roxy Theater's allegations because no more is required to show standing). Accordingly, they are "sexually oriented businesses" if they are "nightclub[s], bar[s], restaurant[s], or similar commercial enterprise[s]." HB 359, § 1(9). Because both Theaters arguably are bars, restaurants, or similar businesses, they have standing to challenge the restrictions on sexually oriented businesses. *See Am. Encore v. Fontes*, 152 F.4th 1097, 1116 (9th Cir. 2025) ("[F]or the purposes of standing, [the Court] accept[s] Plaintiffs' interpretation of the statute so long as it is an arguable interpretation.").

### A. The Roxy Theater and the Myrna Loy are arguably "bars" for purposes of HB 359.

The State contends that the ordinary meaning of "bar"— "a room or establishment where alcoholic drinks and sometimes food are served"— controls. Doc. 106 at 9 (citing Merriam-Webster's Dictionary). Plaintiffs agree. The Theaters are indisputably establishments where alcoholic drinks and food are served. Thus both Plaintiffs are bars under the State's ordinary meaning definition. This should end the analysis.

To avoid this inevitable conclusion, the State asserts that the Theaters both admitted to not being bars in response to its Requests for Admission ("RFAs"). But the State omits that its RFAs specifically incorporated the Montana Clean Indoor Air Act's definition of a "bar," and not the ordinary meaning it cites here. *See* Doc. 83-1, 2 ("'Bar' has the meaning given in Mont. Code Ann. § 50-40-103(1)"). Regardless, these admissions are irrelevant for two reasons.

First, the question of whether the Theaters are "sexually oriented businesses" is a wholly legal one, relevant to the threat of future enforcement. *See Seattle Pac. Univ.*, 104 F.4th at 59; *Am. Encore*, 152 F.4th at 1116 ("A plaintiff must only show that their 'future conduct is arguably proscribed by the statute it wishes to challenge.'") (alterations omitted) (quoting *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 489 (9th Cir. 2024)); *Imperial Sovereign Court*, 170 F. 4th at 835–36 (finding standing to challenge Section 2(1) where State Defendants have not disavowed enforcement against the Roxy Theater). It is at least "arguable" that the State considers the Roxy Theater a bar for purposes of enforcing HB 359 because the State designates the Roxy Theater as a "TAVERN OR BAR" under its licensing scheme. Doc. 107-3 at 7.

The State asserts that its own designation of the Roxy Theater as a "TAVERN OR BAR" is irrelevant because "[i]t is a Title 50 sub-type describing a food operation." Doc. 106 at 8. But the State offers no explanation for what that means, or why the designation is irrelevant. Indeed, the operative state regulations define "bar" consistently with its ordinary meaning. *See* Mont. Admin. R. 37.110.261 ("'Tavern, bar, brewery, winery, distillery, or saloon' means the sale of alcoholic beverages with or without beverage ice"). The State views the Roxy Theater as a "bar" for some purposes, which indicates that it is arguably a "bar" subject to enforcement under HB 359.

Second, there is no indication that the legislature sought to incorporate the Montana Clean Indoor Air Act's specific definition of "bar" into HB 359. Whether a specific statutory definition applies more broadly depends on context. *State v. Pinder*, 350 P.3d 377, 379–82 (Mont. 2015) (rejecting reflexive application of term throughout the Code in the face of statutory schemes with disparate purposes). HB 359 makes no mention of the Montana Clean Indoor Air Act or its provisions. And that Act limits its definitions to the Act itself. Mont. Code Ann. § 50-40-103, MCA (setting forth definitions that apply "as used in this part"). There is

no basis to apply its definitions to a separate statutory scheme serving a wholly disparate purpose. *See Pinder*, 350 P.3d at 379–82.

The purpose of the Montana Clean Indoor Air Act, Mont. Code Ann. § 50-40-101 *et seq.*, is to preserve indoor air quality by limiting exposure to secondhand smoke, Mont. Code Ann. § 50-40-102. Before 2005, the Act also served the purpose of "provid[ing] for reserved areas in some public places for those who choose to smoke." *See* Mont. Code Ann. § 50-40-102 (West 2003); H.B. 643 (2005), 2005 Mont. Laws Ch. 268. In 2005, the legislature prohibited smoking in all enclosed public establishments, but it exempted bars, as defined in the Act, from that prohibition until September 30, 2009. H.B. 643 (2005), 2005 Mont. Laws Ch. 268. The definition of "bar" within the Act thus operated to carve out a limited category of establishments where smoking would be allowed until 2009. *Id.* The definition no longer applies to any establishment because the exemption terminated over seventeen years ago. *See id.* The Act's definition of "bar" served a purpose wholly unrelated to screening minors out of "sexually oriented performances." *See Richter v. Rose*, 962 P.2d 583, 587 (Mont. 1998); *Pinder*, 350 P.3d at 381–82.

The State misunderstands *Dollar Plus Stores, Inc. v. R-Montana Associates*, which construed the phrase "bar or tavern" as used in a lease agreement. 209 P.3d 216 (Mont. 2009). One party claimed that "bar or tavern" did not include "casino." *Id.* at 220. The Montana Supreme Court disagreed, finding that the district court correctly applied a more expansive definition of the phrase, which was consistent not only with § 50-40-103 but also with Webster's Dictionary definitions of "bar" and "tavern." *Id.* at 219–22. The Court did not hold that § 50-40-103 provides a conclusive definition for all purposes but only that, consistent with ordinary usage, the definition properly extended to include casinos. *Id.* Here, the disparate purposes of the Clean Indoor Air Act and HB 359 render the former inapplicable. *See Pinder*, 350 P.3d at 381–82.

Plaintiffs and the State agree that the ordinary meaning of "bar" controls. Both Theaters are "establishment[s] where alcoholic drinks and sometimes food are served." Doc. 106 at 9 (quoting *Bar*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/bar); *see* Pls.' Statement of Disputed Facts, Doc. 113, at ¶¶ 91–94 ("SDF"). Thus, they are arguably "bars" for purposes of HB 359.

### B. The Roxy Theater and the Myrna Loy are arguably "restaurants" for purposes of HB 359.

The State offers two proposed definitions of "restaurant": a plain language definition from the online Merriam-Webster Dictionary, and a statutory definition that traces to Montana Code Annotated § 16-4-420. Doc. 106 at 13–14. The dictionary definition plainly encompasses both the Roxy Theater and the Myrna Loy, which are "business establishment[s] where meals or refreshments may be purchased." Doc. 106 at 13 (quoting *Restaurant*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/restaurant); *see also* State's Revised SUF, Doc. 108-1, ¶¶ 71–76 (Roxy Theater sells beer, wine, popcorn, and candy); ¶¶ 83–88 (Myrna Loy sells beer, wine, kombucha, charcuterie, popcorn, and candy).

The State nonetheless argues that "restaurant" is limited by the statutory definition of the term found in Montana Code Annotated § 16-4-420. Doc. 106 at 13–14. The statute gives a definition of "restaurant" "[f]or purposes of this section," and the section governs restaurant beer and wine licenses. Mont. Code Ann. § 16-4-420(4)(a). The statutory definition is patently narrower than the ordinary meaning of "restaurant," as it "does not mean a fast-food restaurant" or any

"restaurant" with a license prior to April 9, 2009, even if that license had subsequently been renewed. Mont. Code Ann. § 16-4-420(4)(b), (c). In other words, on its face, the statute provides for "restaurants" that do not meet its definition of a "restaurant."

Section 16-4-420's definition of "restaurant" is not a general definition that applies throughout the Code but instead a term of art the State uses when considering an application for a beer or wine license. The context confirms this. *See Pinder*, 350 P.3d at 381; *see also Inquiry Concerning Complaint of Judicial Standards Comm'n v. Not Afraid*, 245 P.3d 1116, 1123 (Mont. 2010) (under the circumstances, phrase "[a]s used in this title" did not "clear[ly] indicat[e] that the statutory definition . . . cannot be referenced for issues arising outside" the title). Where, as here, a definition "is limited to use 'in this section'" and clearly indicates legislative intent that a term be "limited in [its] application," the definition does not carry throughout the entire statutory scheme. *Richter*, 962 P.2d at 587 (district court erroneously applied statutory definition of "farm" to incongruous statutory scheme), *abrogated on other grounds by Watson v. Dundas*, 136 P.3d 973 (Mont. 2006).

Indeed, if the State's argument were correct, HB 359 would allow "sexually oriented performances" in a fast food restaurant or a restaurant that opened in 2008 and maintained its beer and wine license because such establishments are not "restaurants." Similarly, if the State's interpretive method were strictly followed, McDonald's would be free to violate the Montana Human Rights Act. *See* Mont. Code Ann. § 49-2-101(20)(a) (defining "public accommodation" to include "restaurant"). This definition is absurd when applied to HB 359 because it contravenes the ordinary meaning of "restaurant" and would frustrate HB 359's purpose of preventing minors from seeing "sexually oriented performances." *See, e.g.*, *Crone v. Crone*, 77 P.3d 167, 171 (Mont. 2003) (Montana Supreme Court "must reasonably and logically interpret statutory language in a manner giving words their usual and ordinary meaning."); *Mydlarz v. Palmer/Duncan Constr. Co.*, 682 P.2d 695, 701 (Mont. 1984) (Montana's statutory construction rules "require that determination of the meaning of a phrase or word be made according to the purpose of the statute."); *State v. Moody*, 230 P. 575, 579 (Mont. 1924) (statutory construction must avoid "absurdity").

Returning, then, to the State's own dictionary definition because it is all that is left, the Roxy Theater and the Myrna Loy are at least arguably "restaurants" within the ordinary meaning of the term.

**C. The Roxy Theater and the Myrna Loy are arguably "similar commercial enterprises."**

Even if the Roxy Theater and the Myrna Loy were not arguably "nightclubs, bars, [or] restaurants," they are certainly at least arguably "similar commercial enterprises." While Plaintiffs do not claim to fall within the definition of "nightclub," its inclusion confirms that the legislature did not intend HB 359 to be construed according to existing statutory definitions, as no such definition exists for "nightclub."

The State's line—between businesses that make the majority of their money from alcohol and food, on the one hand, and those that offer those items alongside other services—is inconsistent with the inclusion of the term "nightclub." Contrary to the State's position, a "nightclub" is not necessarily "in the business of alcohol or meals." Doc. 106 at 9. Merriam-Webster defines "nightclub" as "a place of entertainment open at night usually serving food or liquor and providing music and space for dancing and often having a floor show." *Nightclub*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/

nightclub; *see also Nightclub*, American Heritage Dictionary of the English Language, https://www.ahdictionary.com/word/search.html?q=nightclub ("[a]n establishment that stays open late at night and provides food, drink, entertainment, and music for dancing"); *Nightclub*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/nightclub ("a place that is open late into the night, where people can go to drink and dance and often see some type of entertainment"). Entertainment is central to a nightclub's business, and the drinks and food are secondary.

Like restaurants, the Theaters sell food to patrons to eat on-site and are open to the general public, including minors. Doc. 108-1, ¶¶ 74–76, 86–88; SDF, Doc. 113, ¶ 93. Like bars, they sell alcoholic beverages for on-premises consumption and are open in the evenings. SDF, Doc. 113, ¶ 94. And like nightclubs, they sell entertainment, offer food and drinks, and are open at night. SDF, Doc. 113, ¶ 95. If a theater is not "similar" to a "nightclub, bar, [or] restaurant," it is hard to imagine what might be. And the State's assertion that an establishment must meet the definition of a bar or restaurant to be "a similar commercial enterprise" would render HB 359's text superfluous and violate basic

rules of statutory construction. *See, e.g.*, *Burke v. Sullivan*, 265 P.2d 203, 205 (Mont. 1954) (doctrine of *ejusdem generis* "does not warrant . . . subverting or defeating the legislative will by confining the operation of a statute within narrower limits than intended by lawmakers"); *Briese v. Mont. Publ. Empl. Ret. Bd.*, 285 P.3d 550, 556 (Mont. 2012) ("We construe a statute to give effect to all of its provisions.").

In construing Montana statutory law, "the goal . . . is to give effect to the legislature's intent." *Rupnow v. Mont. State Auditor & Comm'r of Ins.*, 542 P.3d 384, 388 (Mont. 2024) (quoting *Westview Mobile Home Park, LLC v. Lockhart*, 538 P.3d 1, 3 (Mont. 2021)). The State offers no explanation for why the legislature would be concerned with "sexually oriented performances" only in businesses that receive most of their revenue from on-premise food and alcohol sales. And none comes to mind. Are we to believe that the legislature intends for a club that receives most of its money from a cover charge, for example, to be free to allow minors to attend "sexually oriented performances"? That a marijuana dispensary, comedy club, or theater may do so because it is not technically a "bar" or "restaurant"? Of course not. The Theaters are at

least arguably similar enough to "nightclub[s], bar[s], [and] restaurant[s]" to trigger potential enforcement under HB 359.

Plaintiffs present several "arguable interpretation[s]" of HB 359 under which they may be subject to penalties as "sexually oriented businesses." *Am. Encore*, 152 F.4th at 1116. This is enough "for the purposes of standing." *Id.*

## III. Plaintiffs Imperial Court separately has standing to challenge the prohibition of "sexually oriented performances" in "sexually oriented businesses" because the prohibition targets its speech.

Even if the Theaters could not challenge HB 359's application to "sexually oriented businesses," Plaintiff the Imperial Court has standing. The Imperial Court performs throughout Montana, including in "restaurants" and "bars." SDF, Doc. 113, ¶¶ 99–100. These performances arguably are "sexually oriented performances." During the brief period between HB 359's effective date and the temporary restraining order issued by this Court, the Imperial Court was forced to make significant changes to its operations due to host businesses' concerns about liability. SDF, Doc. 113, ¶ 101.

The Imperial Court has standing to challenge HB 359's restrictions on "sexually oriented businesses" because these restrictions target their

speech, even if they are not the direct target of enforcement under Section 2. *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (publishers had standing to challenge ban on books, even though enforcement was threatened against distributors not publishers); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1153–54 (9th Cir. 2000) (organization that hosts annual erotic art exhibition had standing to challenge state action directed at "licensees whose facilities [the organization] must rent in order to hold its shows"). Section 2 coerces businesses, including bars and restaurants, to disallow Plaintiffs' performances, independently injuring Plaintiffs' "own constitutional rights." *LSO, Ltd.*, 205 F.3d at 1154.

## CONCLUSION

Plaintiffs ask the Court to deny State Defendants' Cross-Motion for Partial Summary Judgment on Counts IV and V.

DATED this 30th day of October, 2026.

*/s/ Constance Van Kley*
Constance Van Kley
VAN KLEY LAW PLLC

Rylee Sommers-Flanagan
Molly E. Danahy
Caitlin M. Cocilova
UPPER SEVEN LAW

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I hereby certify that this brief includes 3,748 words, excluding caption, certificates, tables, and exhibit index. The word count was calculated using Microsoft Word.

/s/ *Constance Van Kley*

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed in CM/ECF on October 30, 2026, and served upon all registered users.

/s/ *Constance Van Kley*