**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>AUSTIN KNUDSEN; ELSIE ARNTZEN; J.P. GALLAGHER; and THE CITY OF HELENA,<br><br>Defendants. | **No. CV 23-50-BU-BMM**<br><br>**ORDER** |

## INTRODUCTION

The Montana legislature passed House Bill 359 ("H.B. 359") on May 11, 2023. Montana Governor Greg Gianforte signed H.B. 359 into law on May 22, 2023. The statute took immediate effect. H.B. 359 § 7. H.B. 359 criminalizes a wide range of conduct, including "drag story hours" in schools and libraries that receive any amount of state funding. *Id.* § 3(2). The statute prohibits minors from attending "sexually oriented shows" anywhere. *Id.* § 2(1). H.B. 359 proscribes all "sexually oriented" performances in libraries or schools that receive public funding, *id.* § 3(1)–(2), on public property "in the presence of" a minor, *id.* § 3(3)(a), and in any location owned by an entity that receives any state funding. *Id.* § 3(3)(b).

Plaintiffs, the Imperial Sovereign Court of the State of Montana ("Imperial Court"), Montana Pride, several individuals, including Adria Jawort ("Jawort"), a

transgender ("trans") and Two-Spirit journalist and author, businesses, and community groups (collectively "Plaintiffs") filed this litigation in July 2023. (Doc. 1.) Plaintiffs alleged five separate constitutional violations: 1) violation of free speech under the First Amendment as applied to Jawort; 2) violation of the equal protection clause under the Fourteenth Amendment as applied to Jawort; 3) violation of free speech under the First Amendment as applied to Montana Pride; 4) a facial challenge to the statute for violating free speech under the First Amendment; and 5) a facial challenge to the statute for violating the due process clause of the Fifth Amendment. (Doc. 3.) The Court dismissed Count III with prejudice in September 2023 pursuant to a stipulation by the parties. (Doc. 30.) The Court granted Plaintiffs a preliminary injunction in October 2023. (Doc. 33.) Defendants appealed. The Ninth Circuit upheld the Court's preliminary injunction. *Imperial Sovereign Ct. of Montana v. Knudsen,* 170 F.4th 820 (9th Cir. 2026).

The Court dismissed Jawort's claims, Counts I and II, with prejudice pursuant to a stipulation by the parties on September 14, 2026. (Doc. 98.) Plaintiffs now move the Court for summary judgment on Counts IV and V of the First Amended Complaint. (Doc. 79.) Plaintiffs challenge H.B. 359 on the basis that the law violates the First, Fifth, and Fourteenth Amendments of the U.S. Constitution. (Doc. 3 at 38–43.) Defendants Montana Superintendent of Public Instruction Susie Hedalen and Montana Attorney General Austin Knudson (collectively "Defendants") filed a cross

motion for partial summary judgment on Counts IV and V. (Doc. 105.) The Court conducted a hearing on the motions on November 5, 2026. (Doc. 118.)

## BACKGROUND

H.B. 359 prohibits "drag story hours" in "[a] school or library that receives any form of funding from the state . . . during regular operating hours or at any school-sanctioned extracurricular activity." H.B. 359 § 3(2). H.B. 359 defines "drag story hour" as "an event hosted by a drag queen or drag king who reads children's books and engages in other learning activities with minor children present." *Id.* § 1(3). The statute defines "drag king" and "drag queen" as "a male or female performer who adopts a flamboyant or parodic [male or female] persona with glamorous or exaggerated costumes and makeup." *Id.* § 1(1), (2).

H.B. 359 also restricts and prohibits "sexually oriented performances." H.B. 359 defines "sexually oriented performance" as "a performance that, regardless of whether performed for consideration, is intended to appeal to a prurient interest in sex and features" any of the following: "the purposeful exposure, whether complete or partial, of [] genital[ia], the pubic region, buttocks], or a female breast, if the breast is exposed below a point immediately above the top of the areola" or "prosthetic genitalia, breasts, or buttocks," "stripping," or "sexual conduct." *Id.* § 1(10). H.B. 359 defines "stripping" as the "removal or simulated removal of clothing in a sexual manner for the entertainment of one or more individuals," regardless of whether

nudity results. *Id.* § 1(11). The statute contains no definition for "sexual conduct." H.B. 359 instead cross-references the definition contained in Montana's criminal child abuse statute, Mont. Code Ann. § 45-5-625. H.B. 359 § 1(8). The definition of "sexually oriented" encompasses the undefined term "salacious dancing" in addition to "any lewd or lascivious depiction or description of human genitals or of sexual conduct[.]" *Id.* The law provides no definition of "lewd" or "lascivious." *Id.*

H.B. 359 restricts "sexually oriented performances" hosted by "sexually oriented business[es]" to adult-only audiences. *Id.* at § 2. H.B. 359 defines a "sexually oriented business" as "a nightclub, bar, restaurant, or similar commercial enterprise" that "provides for an audience of two or more individuals live nude entertainment or live nude performances or a sexually oriented performance and authorizes on-premise consumption of alcoholic beverages." *Id.* §§ 9(a)(i-ii), 9(b) (cleaned up). The definition of a "sexually oriented business" is not by its terms limited to establishments that provide live performances.

Owners, operators, managers, and employees of "sexually oriented" businesses convicted under H.B. 359 face fines from $1,000 to $10,000 and, for a third or subsequent offense, mandatory revocation of business licenses. *Id.* § 2(2). Libraries, schools, public employees, and entities that receive any state funding face fines of $5,000 and mandatory suspension (first offense) or permanent revocation (subsequent offenses) of an applicable teaching, administrative, or specialist

certificate if convicted of violating H.B. 359. *Id.* § 3(4). In addition to imposing criminal liability, H.B. 359 provides for a private right of action. *Id.* § 4. A minor who attends a drag story hour or "sexually oriented performance" in violation of H.B. 359 § 2, or the minor's parent, may bring a civil action up to ten years after an alleged violation against any "person who knowingly promotes, conducts, or participates as a performer." *Id.* § 4(1), (3).

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

### I. Standing

Standing is jurisdictional and must be maintained at each stage of litigation. "Where, as here, [P]laintiffs bring a pre-enforcement challenge, they satisfy the injury-in-fact requirement by alleging 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder'" *Imperial Sovereign*

*Ct.,* 170 F.4th at 834 (quoting *Spokeo, Inc. v. Robinz,* 578 U.S. 330, 339 (2016)). Plaintiffs conduct need only be "'arguably proscribed'" by the challenged law. *Imperial Sovereign Ct.,* 170 F.4th at 834 (quoting *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 162 (2014)). The Ninth Circuit determined that Plaintiffs had standing to challenge each provision of H.B. 359 at the preliminary injunction phase. *Imperial Sovereign Ct.,* 170 F.4th at 842.

Defendants now argue that the development of the record since the preliminary injunction phase shows that Plaintiffs lack standing to challenge Section 2. (Doc. 106 at 3-4.) Section 2 applies by its terms to "sexually oriented business[es]." H.B. 359 § 2(1). H.B. 359 defines a "sexually oriented business" as "a nightclub, bar, restaurant, or similar commercial enterprise" that "provides for an audience of two or more individuals live nude entertainment or live nude performances or a sexually oriented performance and authorizes on-premise consumption of alcoholic beverages." *Id.* §§ 9(a)(i-ii), 9(b) (cleaned up). Defendants allege that evidence has entered the record since the Ninth Circuit's ruling that demonstrates that no Plaintiff qualifies as a "sexually oriented business" because no Plaintiff qualifies as "a bar, restaurant, club, or similar commercial enterprise." (Doc. 106 at 3-4.) Therefore, Plaintiffs cannot establish the injury-in-fact required to challenge Section 2. (*Id.*) The Court disagrees.

The Ninth Circuit relied on the Roxy Theater to establish standing to

challenge Section 2. *Imperial Sovereign Ct.,* 179 F.4th at 835-837. The Roxy Theater has no liquor license, but it does sell beer and wine. Defendants identify, and Plaintiffs agree, the ordinary meaning of "bar" as "a room or establishment where alcoholic drinks and sometimes food are served." (Doc. 106 at 9 (citing *Definition of "bar,"* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/bar).) Defendants call this ordinary meaning "dispositive." (Doc. 106 at 9.) The Roxy Theater meets that definition. Additionally, the State of Montana's own licensing board issued the Roxy Theater a food license labeling it a "TAVERN OR BAR." (*Id.* at 8; Doc. 114 at 3.) The Roxy Theater at least arguably qualifies as a bar or a similar commercial enterprise.

Defendants' arguments to the contrary do not change this conclusion. First, Defendants cite the Montana Code's definition of bar as an establishment that has "a Title 16, chapter 4 license, is 'devoted to serving alcoholic beverages for consumption by guests or patrons on the premises,' and serve food only incidentally to that service." (Doc. 106 at 6 (citing Mont. Code Ann. § 50-40-103(1).) Food is incidental when "at least 60%" of annual gross income comes from alcohol or gambling, or both. (Doc. 106 at 6 (citing Mont. Code Ann. § 50-40-103(6).) Defendants argue that Plaintiffs have admitted to not meeting this definition. (Doc. 106 at 7.) The statutory definition cited by Defendants comes from the Montana Clean Indoor Air Act. (Doc. 114 at 9.) Plaintiffs argue that

nothing in H.B. 359 indicates that the Montana legislature intended to incorporate the Montana Clean Indoor Air Act's definition of "bar" in H.B. 359. (*Id.* at 10.)

Montana law stipulates that "[w]henever the meaning of a word or phrase is defined in any part of the code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." Mont. Code Ann. § 1-2-107. The beginning of the Montana Clean Indoor Act includes the language "[a]s used in this part." Mont. Code Ann. § 50-40-103. The Montana Supreme Court has "taken disparate approaches to whether such prefatory phrases . . . satisfy the 'contrary intention' language of §1-2-107, [Mont. Code Ann.]" *State v. Pinder,* 350 P.3d 377, 380 (Mont. 2015).

The Montana Supreme Court determined in *Pinder* that it did not need to resolve that ambiguity. *Pinder* instead held that "whether or not a 'contrary intention' to using a given definition plainly appears must be considered according to context." *Id.* at 381. *Pinder* determined that the definition of "drug" in the context of pharmaceutical regulation was not transferable to the DUI statute because "the legislature [did not] intend[] to limit the scope of the DUI statute by applying it only to drivers who may have diminished their driving ability by ingesting a substance regulated by pharmacists." *Id.* at 382. *Pinder* concluded that the ordinary meaning of "drug" proved consistent with the legislature's objectives in this context. *Id.*

The same reasoning applies here. The Montana Clean Indoor Air Act defines "bar" for the sake of delineating exemptions to a law that prohibits smoking in public places. Mont. Code Ann. § 50-40-107. When crafting an exemption, legislatures often have an incentive to apply a narrower definition of "bar" than the ordinary meaning to limit the number of establishments to which the law does not apply. Nothing in the language of H.B. 359 indicates that the Montana legislature sought to narrowly tailor this definition of "bar." The addition of the words "similar commercial enterprise" indicates that the Montana legislature intended to cast a wide net over establishments that arguably may fall under the ambit of H.B. 359. The ordinary meaning of "bar" proves more consistent with the Montana legislature's objectives even if the prefatory phrase "[a]s used in this part" does not restrict the definition to its title.

Defendants argue that the Montana Supreme Court already has applied the Title 50 definition of "bar" to another section of the code. (Doc. 106 at 7 (citing *Dollar Plus Stores, Inc. v. R-Montana Assocs., L.P.,* 209 P.3d 216 (Mont. 2009).) Defendants contend that *Dollar Plus Stores* describes "bar" as an establishment that serves alcohol under a state liquor license. (Doc. 106 at 9 (citing *Dollar Plus Stores*, 209 P.3d at 219-220).) *Dollar Plus Stores* is not so definitive.

The plaintiff in *Dollar Plus Stores* sought to enforce a provision in its lease that "[n]o part of the Shopping Center other than the Leased Premises shall be used

for [a] bar or tavern." *Dollar Plus Stores*, 209 P.3d at 218. Another tenant transferred its Montana alcoholic beverage license to a card room and casino when its lease expired. *Id.* The plaintiff complained to the landlord that the new tenant was a "bar or tavern." *Id.* The plaintiff argued that new tenant's operation of a "bar or tavern" in the shopping center would violate the lease agreement. *Id.* The landlord ignored the plaintiff's complaint and the plaintiff filed an action seeking specific performance of the "bar or tavern" provision of the lease. *Id.*

The district court granted the plaintiff's motion for summary judgment on the basis that the card room and casino fell under the common and ordinary understanding of "bar or tavern." *Id.* The district court determined that the landlord had failed to provide reasonable or logical definitions, or persuasive legal authority, for the proposition that the common and ordinary understanding of the term "bar or tavern" would not include a gambling establishment. *Id.* The district court noted that the card room and casino served beer or wine pursuant to a Montana beer and wine license for on-premises consumption. *Id.*

The Montana Supreme Court in *Dollar Plus Stores* merely upheld the district court's consideration of these three different definitions of "bar," including the statutory definition, as not creating an ambiguity. *Id.* at 219-220. The Montana Supreme Court determined that a card room and casino operating with a state liquor license falls within all three definitions of "bar" that the district court

considered. *Id.* at 220. *Dollar Plus Stores* neither selected a definitive definition of "bar" under Montana law nor limited that definition to establishments with state liquor license. *Id.*

The applicability of "sexually oriented business" to the Roxy Theater does not need to be definitively settled in this case. As Plaintiffs point out, a pre-enforcement challenge such as the case before us only requires that the statute "arguably proscribes" speech for Plaintiffs to have standing. *Imperial Sovereign Ct.,* 170 F.4th at 834. The ordinary meaning of "bar" and the language on the Roxy Theater's state food license provide strong evidence that the establishment could be considered a "bar" or similar establishment under the statute. The evidence to the contrary proves ambiguous, not dispositive. The statutory definition at Mont. Code Ann. § 50-40-103(1) and Montana Supreme Court precedent may create ambiguity as to whether the Roxy Theater qualifies as a "bar" under Montana law on an enforcement challenge. In this challenge, however, the ambiguity of the evidence proves dispositive: it is at least arguable that the Roxy Theater qualifies as a "bar" or "similar commercial enterprise" for the purposes of H.B. 359.

## II. First Amendment Facial Claim.

Both the Court (Doc. 33 at 49) and the Ninth Circuit, *Imperial Sovereign Ct.,* 684 F.Supp.3d at 875-876, determined that Plaintiffs had a likelihood of success on the merits of their First Amendment facial challenge at the preliminary injunction

phase. The Ninth Circuit determined that a facial challenge remained appropriate under the U.S. Supreme Court's recent holding in *Moody. Imperial Sovereign Ct.*170 F.4th at 845 (evaluating *Moody v. NetChoice, LLC,* 603 U.S. 707 (2024)). The Ninth Circuit concluded that "H.B. 359's drag-story-hour and sexually-oriented-performance provisions restrict protected speech based on content." *Imperial Sovereign Ct.,* 684 F.Supp.3d at 875. The Ninth Circuit further determined that "[a]s such, they are subject to strict scrutiny." *Id.* Finally, the Ninth Circuit reasoned that Defendants had failed to meet their burden to show that the Montana legislature narrowly tailored H.B. 359 to advance a compelling government interest. *Id.* Defendants have alleged no additional compelling government interests on summary judgment that the Ninth Circuit failed to evaluate during the preliminary injunction phase.

The merit of this claim presents a pure question of law. Appellate conclusions on pure issues of law at the preliminary injunction phase remain binding. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dept. of Agr.,* 499 F.3d 1108, 1115 (9th Cir. 2007). There have been no additions to the factual record since the preliminary injunction phase that would change the validity of the Ninth Circuit's legal conclusions. The Court determines that H.B. 359's drag-story-hour and sexually-oriented-performance provisions impose unconstitutional content-based restrictions that facially violate the First and

Fourteenth Amendments. These unconstitutional content-based restrictions support the Court's decision to grant Plaintiff's motion for summary judgment on Plaintiff's free speech challenge in Count IV.

### III. Fifth Amendment Facial Claim

Plaintiffs argue that H.B. 359 proves unconstitutionally vague. (Doc. 80 at 29.) H.B. 359 subjects violators to criminal and civil penalties. H.B. 359 §§ 3, 4. The Fifth Amendment requires that no person "be held criminally responsible for conduct which [they] could not reasonably understand to be proscribed." *United States v. Harriss,* 347 U.S. 612, 617 (1954). A statute or regulation is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012). "Although 'perfect clarity is not required even when a law regulates protected speech,' 'vagueness concerns are more acute when a law implicates First Amendment rights, and, therefore, vagueness scrutiny is more stringent.'" *Butcher v. Knudsen,* 38 F.4th 1163, 1169 (9th Cir. 2022) (quoting *Cal. Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1150 (9th Cir. 2001)).

Plaintiffs allege that H.B. 359 fails to define "the exact terms central to its application[.]" (Doc. 80 at 31.) Plaintiffs point to the lack of definitions for "lewd," "lascivious," "flamboyant," "parodic," "salacious dancing," "exaggerated

costumes and makeup," and "sexual manner." (*Id.*) Plaintiffs argue that even when H.B. 359 includes definitions, those definitions and their relationships to each other remain ambiguous. (*Id.* at 32.) Plaintiffs highlight the definition of "sexually oriented," and its unclear interaction with the separately defined terms "sexually oriented business" and "sexually oriented performance," which share similar but not identical concepts. (*Id.*) Finally, Plaintiffs contend that "H.B. 359's failure to incorporate the *Miller* standard for obscenity triggers additional vagueness red flags." (*Id.* at 33.)

H.B. 359 fails to provide adequate notice of what it prohibits. *F.C.C. v. Fox,* 567 U.S. at 253. As this Court observed at the preliminary injunction phase, H.B. 359's missing definitions and its related definitions for "drag king," "drag queen," "drag story hour," "nude," "public property," "sexually oriented," "sexually oriented performance," "sexually oriented business," and "stripping" run a significant risk of creating impermissible vagueness. H.B. 359 § 1(1)–(4), (6), (8)–(11). For example, H.B. 359 § 1(2) defines "drag queen" as "a male or female performer who adopts a flamboyant or parodic feminine persona with glamorous or exaggerated costumes and makeup." H.B. 359 § 1(2). This definition could include any number of theatrical or artistic performances. It could include a performer portraying a character like Ursula from The Little Mermaid. It could have included Dolly Parton herself. A performer has no way of knowing whether their costume

choices will be considered “flamboyant” or “parodic.” In the same vein, the definition of “nude” in H.B. 359 could include someone fully clothed, with a portion of the buttock visible through partially sheer fabric, or a shirt that reveals the bottom portion of a breast. *Id.* § 1(4)(b). A performer who removes no clothing or who removes only outer layers still might fall within H.B. 359's definition of “[s]tripping” if someone subjectively believes that the removal was done “in a sexual manner” *Id.* § 1(11). This problem proves pervasive throughout H.B. 359.

Defendants have made the argument throughout this case that these definitions should not matter because Plaintiffs themselves understand what “drag” means. (Doc. 80 at 31.) As Plaintiffs suggest, this point is of “no moment” because what matters is a person’s ability to understand and conform their behavior to what *the State of Montana* considers prohibited under the law. (*Id.*) The ambiguous and absent definitions in H.B. 359 undercut a person’s ability to understand what the law prohibits. *F.C.C. v. Fox,* 567 U.S. at 253.

H.B. 359 “authorizes or encourages seriously discriminatory enforcement.” *Id.* Vagueness proves especially problematic for a law with expansive criminal and civil sanctions. H.B. 359 not only allows state officials to decide what these definitions mean, but authorizes a private right of action that can be used by “any minor who attends a performance in violation of [section 2] or [section 3]” or “[t]he minor’s parent or legal guardian[.]” *Id.* § 4(1). This private right authorizes

and encourages members of the public to make individual judgments as to who qualifies a "drag queen" or "drag queen" based on personal, subjective decisions about what qualifies as "flamboyant," "parodic," and "glamourous or exaggerated" clothes and makeup. In other words, it authorizes a significant portion of the public to impose their ideas about appropriate gender expression on their fellow citizens. An enforcement mechanism this broad, paired with definitions that are absent or ambiguous, creates substantial risk of "seriously discriminatory enforcement." *F.C.C. v. Fox,* 567 U.S. at 253.

This vagueness creates significant risk of arbitrary enforcement against people who are not drag performers, but who do not conform to traditional gender norms. The definition of "sexually oriented performance" rests in part upon a distinction between "female" and "prosthetic" breasts. H.B. 359 §§ 1(4)(b); (10)(a)(i)–(ii). A transman who has undergone surgery to remove breast tissue, and who therefore has no breasts, could nonetheless be subject to enforcement on the basis that the state considers his bare chest "female" breasts. Similarly, a transwoman who has received breast implants could be subject to enforcement on the basis that her breasts are "prosthetic." To authorize members of the public and state authorities alike to draw such a distinction with respect to the bodies of other people would all but require them to engage in identity-based discrimination and gender-based discrimination. *Id.* §§ 1(4)(b); (10)(a)(i)–(ii).

H.B. 359 "fails to provide a person of ordinary intelligence fair notice of what is prohibited" and "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *F.C.C. v. Fox,* 567 U.S. at 253. Plaintiffs have demonstrated that H.B. 359 violates the due process clause of the Fifth Amendment by failing to provide notice of the conduct that it proscribes. The Court concludes that H.B. 359 proves unconstitutionally vague and facially violates the Fifth Amendment and Fourteenth Amendment. The Court deems it appropriate to grant Plaintiff's motion for summary judgment on Count V.

## IV. Severability and Narrowing Construction

Defendants ask the Court to preserve H.B. 359 by severing unconstitutional portions and applying a narrowing construction to the remaining provisions. (Doc. 111.) This construction would cabin those provisions to the constitutional regulation of obscenity. (*Id.*) "[B]efore invalidating a state statute on its face, a federal court must determine whether the statute is readily susceptible to a narrowing construction." *California Teachers Ass'n v. State Bd. Of Educ.*, 271 F.3d 1141, 1147 (9th Cir. 2001) (citations and internal quotations omitted). Federal courts are not "authorized to rewrite the law so it will pass constitutional muster." *Id.* (citations omitted). The Court can apply a narrowing construction "only if [the statute] is readily susceptible to such a construction." *Doe v. Harris,* 772 F.3d 563, 578 (9th Cir. 2014) (quoting *Reno v. Am. Civil Liberties Union,* 521 U.S. 844, 844

(1997) (citations and internal quotations omitted)).

The Court acknowledges that H.B. 359 contains an express severability clause. H.B. 359 § 6. Defendants ask the Court to sever the "drag story hour" provisions and related definitions. These definitions includes the definition of "drag queen," "drag king," and "drag story hour," as well as the provision banning "drag story hours" in "[a] school or library that receives any form of funding from the state[.]" H.B. 365 §§ 1(1)-(3); 3(2). This change would be straightforward. H.B. 359 contains only one reference to a "drag story hour" and it could be severed while leaving the provision largely intact.

Defendants also ask the Court to sever the definition of "sexually oriented" in Mont. Code Ann. § 45-8-117(8) and apply a narrowing construction to the definition of "sexually oriented performance" as to render it constitutionally permissible. H.B. 365 §§ 1(4), (8). Defendants argue that the Ninth Circuit determined the definition of "sexually oriented" to be problematic in its reference to a prurient interest in sex because it "does not include a[n] . . . intent requirement." (Doc. 111 at 20-21 (citing *Imperial Sovereign Ct.*, 170 F.4th at 839).) The definition of "sexually oriented performance" includes such an intent requirement. H.B. 356 § 1(10). Defendants argue that the definition of "sexually oriented" could be severed without impacting the remainder of the statute. This change also would prove straightforward. The words "sexually oriented" also

appear within "sexually oriented performance" and "sexually oriented business," allowing the definition of "sexually oriented" to be severed without leaving a term undefined. H.B. 356 § 1(8)-(10).

Defendants next ask the Court to adopt a narrowing construction of "sexually oriented performance" that limits the term to the constitutionally permissible regulation of obscenity as to a minor. The standard for obscenity is "(a) whether the average person, applying contemporary community standards would find that work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. Calfornia,* 413 U.S. 15, 24 (1973) (citations and internal quotation omitted). States are permitted to "broaden *Miller*'s definition of obscenity to cover that which is obscene from a child's perspective." *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461, 474 (2025) (citations and internal quotation omitted).

The *Miller-Ginsberg* standard as enunciated in *Free Speech Coalition, Inc. v. Paxton* proves substantially similar to the *Miller* standard, with the additions "of" or "for" minors to each prong. *Free Speech Coalition, Inc.*, 606 U.S. at 474. The Ninth Circuit noted that "Montana already prohibits the display or dissemination of material that is obscene for minors under a different statute,

Mont. Code Ann. § 45-8-206, and Defendants do not contend that H.B. 359 restricts only obscenity for minors." *Imperial Sovereign Ct.,* 170 F.4th at 851. In either case, an obscenity regulation must incorporate the prongs required by *Miller.*

The Ninth Circuit acknowledges that even assuming that the "prurient interest" element is required, the "sexually oriented performance" definition of H.B. 359 fails to incorporate the *Miller* standard. *Id.* at 874. First, the first "prurient interest" prong is not met because the definition does not require that the work be considered "as a whole" or that it is assessed by "applying contemporary community standards." H.B. 359 § 1(10). Second, the law contains no restriction that the work "taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* Due to these deficiencies, "H.B. 359's inclusion of a 'prurient interest' requirement does not, in itself, adequately clarify or narrow the scope of the sexually-oriented-performance restrictions." *Imperial Sovereign Ct.,* 170 F.4th at 874. These deficiencies would require that the Court not just apply a reasonable construction, but would require the Court to add language into the definition of "sexually oriented performance" to cure the fact that H.B. 359 "omits several critical limitations that are part of the *Miller* obscenity test[.]" *Id.*

Defendants appear to argue that because H.B. 359 incorporates the definitions of "prurient interest in sex" and "obscene" into the statute from elsewhere in the code, "sexually explicit performances" can be construed to reach

only a performance that is obscene as to a minor. (Doc. 17 at 16-17.) As discussed above the Ninth Circuit held that the inclusion of the "prurient interest" element in the definition of "sexually explicit performance" proves insufficient to render that definition permissible under the *Miller* standard. *Imperial Sovereign Ct.,* 170 F.4th at 851. The incorporation of this definition would not solve the overbreadth problem for Defendants.

H.B. 359 indeed incorporates the definition of "obscene" in Mont. Code Ann. § 45-9-201(2). H.B. 359 § 1(7). This definition of "obscene" incorporates the *Miller* factors. *Id.* The word "obscene" does not appear, however, in the definition of "sexually oriented performance." H.B. 359 § 1(10). The requirement that the performance be "obscene" would need to appear in H.B. 359's text for "sexually oriented performance" to comply with *Miller*. As the statute is written, the definition of "obscene" is not associated with "sexually oriented performance." The Court declines to read "obscene" into that definition where it does not exist.

Evidence of legislative intent also counsels against applying the requested construction. The legislative and litigation history demonstrates that this construction deviates significantly from the intended goal of this legislation. The Montana legislature considered and ultimately rejected an incorporation of the *Miller* test during the amendment process. H.B. 359.3 § 1(7). Defendants have maintained throughout this case that the language and legislative intent of H.B. 359

extends to performances that are not obscene. (Doc. 117 at 9-10.)

H.B. 359 does not cabin the definition of "sexually oriented performances" to obscenity. To construct it as doing so would require the Court to add language to the law that does not currently exist, and that the Montana legislature previously rejected. Applying that construction would be impermissibly "rewrit[ing] the law to pass constitutional muster." *California Teachers Ass'n v. State Bd. Of Educ.*, 271 F.3d 1141, 1147 (9th Cir. 2001) (citations omitted). The Court declines to do so. The Court's decision to decline to apply the requested construction eliminates the need for the Court to evaluate whether H.B. 359 would be constitutional with the requested construction. The Court determines that H.B. 359 proves unconstitutional under the First, Fifth, and Fourteenth Amendments.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

- Plaintiff's Renewed Motion for Summary Judgment (Doc. 79) is **GRANTED** with respect to Counts IV and V.
- Defendant's Cross Motion for Summary Judgment (Doc. 105) is **DENIED** with respect to Count IV and V.

DATED this 25th day of November 2026.

Brian Morris, Chief District Judge
United States District Court